No. 26-10335

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**C.J. GRISHAM,**

PLAINTIFF-APPELLANT,

V.

**Tim O'Hare, In his personal and official capacities; Chief Deputy Craig Driskell, In his supervisory, official, and personal capacities; Chief Deputy Jennifer Gabbert, In her personal and official capacities; Sergeant Orville George, In his personal and official capacities; Sergeant Michael Jauss, In his personal and official capacities; Tarrant County,**

DEFENDANTS-APPELLEES

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Civil Action No. 4:25-CV-716-Y
The Honorable Terry R. Means, United States District Judge

## BRIEF OF APPELLANT CJ GRISHAM

**CJ GRISHAM**
Texas State Bar No. 24124533
Law Offices of CJ Grisham PLLC
3809 S. General Bruce Dr., Ste 103-101
Temple, Texas 76502
Telephone: (254) 405-1726
cj@cjgrisham.com
*PRO SE COUNSEL FOR APPELLANT*

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel certifies that the following persons and entities have an interest in the outcome of this case:

1. CJ Grisham — Plaintiff-Appellant
2. Tim O'Hare — Defendant-Appellee, Tarrant County Judge, sued in his individual and official capacities
3. Tarrant County, Texas — Defendant-Appellee, a governmental entity
4. Chief Deputy Craig Driskell — Defendant-Appellee, in his supervisory, official, and personal capacities
5. Sergeant Orville George — Defendant-Appellee, in his personal and official capacities
6. Sergeant Michael Jauss — Defendant-Appellee, in his personal and official capacities
7. Chief Deputy Jennifer Gabbert — Defendant-Appellee, in her personal and official capacities
8. Katherine E. Owens — Counsel for Defendant-Appellees
9. Craig M. Price — Counsel for Defendant-Appellees
10. Phil Sorrells, Criminal District Attorney — Tarrant County, Texas

Tarrant County, Texas is a governmental entity and is not a publicly traded corporation. No publicly traded entity has a financial interest in the outcome of this appeal.

Respectfully submitted,

**/s/ CJ Grisham**
CJ Grisham

*Pro Se Counsel for Appellant*

# STATEMENT ON ORAL ARGUMENT

Appellant does not request and hereby waives oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................i

STATEMENT ON ORAL ARGUMENT ...........................................................i

TABLE OF CONTENTS...............................................................................ii

TABLE OF AUTHORITIES .........................................................................v

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...............................2

STATEMENT OF THE CASE........................................................................5

   I. Factual Background..........................................................................5

   II. Procedural History ..........................................................................7

SUMMARY OF THE ARGUMENT ................................................................9

ARGUMENT .............................................................................................12

   I. Standard of Review ........................................................................12

   II. The District Court Erred in Dismissing Appellant's First Amendment Claim Against O'Hare.............................................................................12

      A. The TCCC Meeting Is a Limited Public Forum..........................12

      B. The Prohibition on Profanity Is a Content-Based Restriction .....13

C.  O'Hare's Removal Constituted Viewpoint Discrimination..........14

D.  The District Court Improperly Considered Pre-Meeting Conduct14

E.  Texas Government Code §§ 551.007 and 551.042 Independently
Establish the Violation..................................................................................15

F.  The District Court Fundamentally Mischaracterized the TCCC
Meeting as a "Juridical Forum" ................................................................15

III. The District Court Erred in Granting Qualified Immunity to O'Hare ..20

A.  The Right to Use Profanity in Public Comment Was Clearly
Established.......................................................................................................20

B.  O'Hare's Conduct Was Objectively Unreasonable .......................20

IV. The District Court Erred in Dismissing the Claims Against the Deputies
..........................................................................................................................................21

A.  The January 14 Second Amendment Claim — The Firearms
Analysis Was Premature and Factually Incomplete.................................21

B.  The January 14 First and Fourth Amendment Claims — Probable
Cause for Disorderly Conduct Was Not Established on These Facts ......25

C.  The District Court Erred in Relying on Grisham v. Valenciano and
Improperly Questioned Appellant's Candor Under Footnote 6................27

D.  The January 28 Second and Fourth Amendment Claims — Jauss's Forcible Restraint and the Unlawful Detention Remain Viable ..............31

V.  The District Court Erred in Dismissing the Section 1985 Conspiracy Claim....................................................................................................33

VI. The District Court Erred in Dismissing the Monell Claims Against O'Hare and Tarrant County ...................................................................34

    A.  The County's Dismissal Was Entirely Derivative ........................34

    B.  Grisham Independently Pleaded a Viable Monell Claim ............34

    C.  The District Court's Reliance on *Grisham v. Valenciano* Was Misplaced......................................................................................35

VII. The Court Should Grant Leave to Amend ..........................................36

CONCLUSION .........................................................................................37

CERTIFICATE OF SERVICE ..................................................................39

CERTIFICATE OF COMPLIANCE..........................................................40

# TABLE OF AUTHORITIES

## **<u>CASES</u>**

*Abrams v. State*, 563 S.W.2d 610 (1978) ................................................................31

*Anderson v. Wood*, 137 Tex. 201, 152 S.W.2d 1084, 1087-88 (1941) ..................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................... 15

*Avery v. Midland County*, 390 U.S. 474 (1968) ................................................20

*Beckerman v. City of Tupelo, Miss.*, 664 F.2d 501 (5th Cir. 1981)........................17

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)..................................... 15

*Canales v. Laughlin*, 147 Tex. 169, 214 S.W. 2d 451, 453 (1948) .......................21

*Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)........................................17

*Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330 (5th Cir. 2001)............................ 16

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)....................................... 43

*City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175-176 (1976) ..............................................................23

*Cohen v. California*, 403 U.S. 15 (1971)...............................................passim

*Dist. Of Columbia v. Heller*, 554 U.S. 570 (2008) .............................................32, 33

*Eaton v. Tulsa*, 415 U.S. 697 (1974).................................................passim

*FCC v. Pacifica Foundation*, 438 U.S. 726 (1978) ...............................................25

*Grisham v. Valenciano*, 93 F.4th 903 (5th Cir. 2024)........................................passim

*Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017)....................................16, 17, 24

*Honeycutt v. State*, 627 S.W.2d 417, 420 (Tex. Crim. App. 1981) ........................31

*Houston v. Hill*, 482 U.S. 451 (1987)..............................................3, 17, 34, 38

*Iancu v. Brunetti*, 588 U.S. 388 (2019)…............................................... 16

*Illinois v. Allen*, 397 U.S. 337 (1970) ...............................................24, 25

*Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270-71 (9th Cir. 1995) ......24

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ...............................................32

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)......................................passim

*Morrow v. Meacham*, 917 F.3d 870 (5th Cir. 2019)..................................... 26

*NY State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).3, 12, 29, 30, 32, 33

*Norse v. City of Santa Cruz*, 629 F.3d 966, 975-76 (9th Cir. 2010) ......................24

*Pearson v. Callahan*, 555 U.S. 223 (2009)..............................................15, 26

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983).............. 16

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001)............................... 45

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992)...................................... 17

*Ramirez v. Guadarrama*, 3 F.4th 129 (5th Cir. 2021)................................... 26

*Reza v. Pearce*, 806 F.3d 497, 504-05 (9th Cir. 2015) ............................................24

*Richardson v. Responsible Dog Owners*, 794 S.W.2d 17 (1990) ...........................31
*Sauceda v. City of San Benito*, 78 F.4th 174, 184 (5th Cir. 2023) ...........................12
*Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673 (5th Cir. 2007)....... 15, 18
*Tennessee v. Garner*, 471 U.S. 1 (1985)…..................................................... 4, 42
*United States v. Alvarez*, 567 U.S. 709 (2012)........................................... 17
*United States v. Rahimi*, 602 U.S. 680, 691-92 (2024) ...........................................30
*United States v. Stevens*, 559 U.S. 460 (2010)........................................... 17
*Virginia v. Black*, 538 U.S. 343, 155 L. Ed. 535, 123 S. Ct. 1536, 1547 (2003) ...12
*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)..................................... 17
*White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990) ..............................24

## STATUTES AND RULES

18 U.S.C. § 926C (Law Enforcement Officer Safety Act / LEOSA) ............2, 6, 12, 27, 28, 29
28 U.S.C. § 1291 ........................................................................................ 1
28 U.S.C. § 1331 ........................................................................................ 1
28 U.S.C. § 1343 ........................................................................................ 1
42 U.S.C. § 1983 .................................................................................... 1, 48
42 U.S.C. § 1985 ............................................................................. 1, 4, 43, 48
Tex. Gov't Code § 111.0035................................................................20
Tex. Gov't Code § 411.205 ................................................................ 42
Tex. Gov't Code § 551.007 ........................................................19, 22, 23
Tex. Gov't Code § 551.042 ................................................................ 19
Tex. Loc. Gov't Code § 81.001................................................................20
Tex. Loc. Gov't Code § 236.002................................................................31
Tex. Pen. Code § 30.06 ................................................................ 3, 12, 29
Tex. Pen. Code § 30.07 ................................................................ 3, 12, 29
Tex. Pen. Code § 42.01 ................................................................ 12, 33
Tex. Const. art. V, § 18(b) ................................................................ 20, 45
Fed. R. App. P. 4(a)(1)(B) ................................................................ 1
Fed. R. App. P. 32 ........................................................................ 51
5th Cir. R. 28.2.1 ........................................................................ i
Tex. Disciplinary Rules of Prof'l Conduct R. 3.03(a)(4) ...................... 3, 10, 36, 39

# JURISDICTIONAL STATEMENT

The district court had original jurisdiction over Appellant's federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1983 and 1985, and supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Three orders collectively disposed of all claims: (1) Order Granting Defendant Tim O'Hare's Motion to Dismiss (Doc. 27, April 6, 2026), dismissing all federal claims against O'Hare with prejudice and state-law claims without prejudice; (2) Order Granting Defendant Deputies' Motion to Dismiss (Doc. 28, April 8, 2026), dismissing all federal claims against Deputies Driskell, Gabbert, George, and Jauss with prejudice and state-law claims without prejudice; and (3) Order Granting Tarrant County's Motion to Dismiss (Doc. 29, April 8, 2026), dismissing all claims against Tarrant County with prejudice. Together these constitute a final disposition of all claims.

This appeal is timely filed within thirty (30) days of entry of the last of the final judgments, pursuant to Fed. R. App. P. 4(a)(1)(B), because Appellees include governmental officials and a governmental entity.

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

**I.** Whether the district court erred in dismissing Appellant's First Amendment claim against Appellee O'Hare when it concluded that a presiding officer may remove a citizen speaker from a limited public forum within thirty seconds of beginning to speak — before completing a single substantive point — based solely on the speaker's use of one expletive, without conducting the required analysis of whether the restriction was viewpoint-neutral and narrowly tailored, and without identifying a recognized category of unprotected speech.

**II.** Whether the district court erred in granting qualified immunity to Appellee O'Hare when clearly established Supreme Court and Fifth Circuit precedent placed beyond debate that profanity — absent a showing it constitutes fighting words, obscenity, or other unprotected speech — is constitutionally protected, and that content-based restrictions in a limited public forum must at minimum be viewpoint-neutral.

**III.** Whether the district court erred in dismissing Appellant's Second Amendment claims against the Deputies when: (a) it declined to evaluate whether Appellant qualified as a retired law enforcement officer under 18 U.S.C. § 926C (LEOSA), which would have provided a complete exemption from state firearms

2

restrictions; (b) it resolved at the pleading stage the contested factual question of whether the posted signage was legally sufficient under Texas Penal Code §§ 30.06 and 30.07 to prohibit even LTC holders from carrying; and (c) it failed to apply *New York State Rifle & Pistol Ass'n v. Bruen*'s requirement that firearms restrictions be consistent with the Nation's historical tradition of regulation.

**IV.** Whether the district court erred in dismissing Appellant's First and Fourth Amendment claims against the Deputies arising from the January 14, 2025, events, when it concluded there was probable cause for disorderly conduct based solely on Appellant's use of profanity directed at law enforcement during a dispute about his legal right to carry a firearm — conduct that is constitutionally protected under *Cohen v. California, Eaton v. Tulsa,* and *Houston v. Hill* — and when the crowd disturbance cited as establishing probable cause was caused by a third party, not by Appellant.

**V.** Whether the district court committed reversible error and violated Appellant's due process rights by improperly referencing *Grisham v. Valenciano*, 93 F.4th 903 (5th Cir. 2024), in Footnote 6 of the Deputies' dismissal order and questioning Appellant's compliance with the duty of candor under Texas Disciplinary Rules of Professional Conduct Rule 3.03(a)(4) and Local Civil Rule 83.8(e), when that case is factually and legally inapplicable to the claims at issue:

3

*Valenciano* arose from open carry of a firearm on a public sidewalk in a manner calculated to cause alarm, while the present case involves concealed carry and speech-based disorderly conduct allegations only, making the cases legally and factually distinct such that no duty of disclosure existed.

**VI.** Whether the district court erred in dismissing Appellant's Fourth Amendment and excessive force claims arising from the January 28, 2025 events, when Appellee Jauss grabbed Appellant's arm with sufficient force to leave bruises and restrained Appellant by placing his arm behind his back, and when the district court's footnote acknowledging these facts as constitutionally insufficient failed to conduct the proper *Graham v. Connor* or *Tennessee v. Garner* excessive force analysis.

**VII.** Whether the district court erred in dismissing Appellant's Section 1985 civil rights conspiracy claim when that dismissal was predicated entirely on the erroneous dismissal of the underlying constitutional claims.

**VIII.** Whether the district court erred in dismissing Appellant's *Monell* claims against O'Hare and Tarrant County when: (a) the County's dismissal was wholly derivative of the erroneously dismissed individual claims; (b) the district court cited *Grisham v. Valenciano* without conducting an independent *Monell* analysis; and (c) the complaint adequately alleged a de facto policy, practice, or custom of

4

suppressing content-based speech and enforcing firearms restrictions in a constitutionally infirm manner.

**IX.** Whether the district court abused its discretion in dismissing all federal claims with prejudice without affording Appellant an opportunity to cure pleading deficiencies identified for the first time in the dismissal orders.

<strong>STATEMENT OF THE CASE</strong>

## I. FACTUAL BACKGROUND

Appellant CJ Grisham is a Texas attorney, United States Army combat veteran, retired Army Senior Counterintelligence Special Agent, Second Amendment advocate, and founder of Open Carry Texas. He brings this civil rights action arising from two separate meetings of the Tarrant County Commissioner's Court ("TCCC") (ROA.252-256).

### A. The January 14, 2025 Events

On January 14, 2025, Grisham attended a TCCC open meeting to speak about the death of his friend, Mason Yancy, who died while in Tarrant County custody (ROA.257-258). After temporarily leaving the meeting room to use the restroom, Grisham attempted to reenter and was stopped by Chief Deputy Craig Driskell, who asked whether Grisham was carrying a firearm.

Grisham was in fact carrying a concealed firearm. He confirmed this and presented federal credentials issued under the Law Enforcement Officer Safety Act ("LEOSA"), 18 U.S.C. § 926C, asserting that his status as a retired United States Army Senior Counterintelligence Special Agent qualified him as a "qualified retired law enforcement officer" exempt from state firearms restrictions in government

6

buildings (ROA.258-259). Driskell refused to look at the proffered credentials and asserted that the Texas Commission on Law Enforcement (TCOLE) does not recognize Grisham's Army service as "law enforcement." Grisham also advised Driskell that he held a Texas License to Carry ("LTC") and was therefore separately entitled to carry under applicable exemptions (ROA.259-260).

The dispute escalated. Driskell threatened to arrest Grisham for disorderly conduct for telling him to "read the fucking law." Sergeant Orville George grabbed Grisham's left arm; Grisham moved his arm away. Grisham used profanity toward the officers during the confrontation — speech directed at law enforcement officers in a dispute about his legal rights, on a public matter, in a public hallway(ROA.260-261). A separate individual in the hallway was arrested for disorderly conduct after engaging in a physical altercation with law enforcement (ROA.261). Chief Deputy Jennifer Gabbert ordered Grisham removed to a back hallway, asserted that no firearms were permitted in the meeting, and pointed to posted signage (ROA.262). Grisham disputed the sufficiency of the signage. Ultimately, Grisham was released and left the building without having spoken at the meeting (ROA.263-264).

Critically, Grisham's firearm was carried concealed throughout these events. At no point did Grisham brandish, display, or otherwise handle the firearm in a threatening manner(ROA.264). The entire dispute was about the legal right to carry

— resolved through conversation and legal argument, not through any threatening conduct (ROA.264-265).

### B.  The January 28, 2025 Events

On January 28, 2025, Grisham registered to speak at the next TCCC meeting on an agenda item related to the death of Mason Yancy. Upon arrival, George attempted to get Grisham's attention. Grisham proceeded toward the meeting room entrance. George stood in front of the door. Driskell demanded to see Grisham's LTC. When Grisham initially declined to produce it, Sergeant Michael Jauss grabbed Grisham's arm "with such force . . . that it left bruises on [Grisham's] arm" and placed Grisham's arm behind his back. After Grisham produced his LTC, he was allowed to enter the meeting (ROA.267-268).  At no time did Grisham force his way into the meeting prior to being grabbed while being engaged in conversation with Driskell and George (ROA.268).  Critically, Grisham made no furtive movements to bypass officers standing in the way between him and the meeting room.

Once inside, during the public comment period, Grisham approached the podium to speak about the death of Mason Yancy and to explain why he had been unable to speak at the prior meeting (ROA.269). Within approximately thirty seconds — and before completing his preliminary remarks — Grisham used one expletive. Appellee O'Hare immediately directed the deputies to remove Grisham

(ROA.269-270). O'Hare announced that Grisham's speech "is not gonna be protected in this courtroom." (ROA.270).

## II. PROCEDURAL HISTORY

Grisham filed his original complaint on July 7, 2025, against Tim O'Hare, Chief Deputy Craig Driskell, Sergeant Orville George, Sergeant Michael Jauss, Chief Deputy Jennifer Gabbert, and Tarrant County, Texas. All defendants moved to dismiss on September 8, 2025 (ROA.271). The district court ordered Grisham to file an amended complaint addressing the individual defendants' qualified-immunity defenses. Grisham filed his First Amended Complaint on approximately October 1, 2025 (ROA.273).

On November 6, 2025, Appellee O'Hare and the four Deputies each filed separate Motions to Dismiss Grisham's First Amended Complaint (ROA.274). Tarrant County filed its own motion asserting failure to plead *Monell* liability. Grisham responded to O'Hare's motion on November 22, 2025 (ROA.275).

On April 6, 2026, the district court issued its Order Granting Defendant Tim O'Hare's Motion to Dismiss (Doc. 27), dismissing all federal claims against O'Hare with prejudice and declining supplemental jurisdiction over state-law claims (ROA.514-525).

On April 8, 2026, the district court issued two additional orders. The Order Granting Defendant Deputies' Motion to Dismiss (Doc. 28) dismissed all federal claims against Driskell, Gabbert, George, and Jauss with prejudice. That order contained two footnotes of particular importance to this appeal. Footnote 4 acknowledged that although Grisham used the words "excessive force" throughout his complaint, he did not "articulate a specific Fourth Amendment claim" for excessive force, and the court treated all such references as "mere conclusory statements." Footnote 6 stated that the court found it "curious" that Grisham did not cite *Grisham v. Valenciano*, 93 F.4th 903 (5th Cir. 2024), and referred Grisham to Local Civil Rule 83.8(e) and Texas Disciplinary Rules of Professional Conduct Rule 3.03(a)(4) — the rule governing candor toward the tribunal.

The Order Granting Tarrant County's Motion to Dismiss (Doc. 29), also issued April 8, 2026, dismissed all claims against the County with prejudice (ROA.545-546). That order conducted no independent *Monell* analysis, relying instead on *Grisham v. Valenciano* for the proposition that municipal liability requires an underlying constitutional violation, and then cross-referencing the O'Hare and Deputies orders as establishing that no such violations had occurred.

All claims in the case have now been dismissed. This appeal followed.

## SUMMARY OF THE ARGUMENT

This appeal presents a cluster of fundamental constitutional questions arising from three dismissal orders that collectively eliminated all of Appellant's claims without any discovery (ROA.514-546). The district court committed several categories of reversible error.

First, the district court misapplied the First Amendment framework to O'Hare's removal of Grisham from the January 28 meeting. A blanket prohibition on profanity is a content-based restriction — a point the Supreme Court has made explicit. The court never analyzed whether the restriction was viewpoint-neutral, whether Grisham's speech fell within any recognized category of unprotected expression, or whether O'Hare's selective enforcement reflected viewpoint discrimination (ROA.514-525, 526-544). O'Hare's own statement that the speech was "not gonna be protected in this courtroom" reveals a conscious decision to censor rather than a neutral application of decorum rules. Qualified immunity cannot shield this conduct: *Cohen v. California, Eaton v. Tulsa*, and decades of First Amendment jurisprudence placed the protected status of profanity beyond debate for any reasonable government official (ROA.514-525).

Second, the district court's dismissal of the Deputies' Second Amendment claims was premature and legally flawed in two independent respects. The court

expressly declined to evaluate whether Grisham qualified as a retired law enforcement officer under LEOSA — a federal statute that, if applicable, would have provided a complete exemption from state firearms restrictions and made the Deputies' entire course of conduct unjustified (ROA.538-539). Having declined to resolve that dispositive legal question, the court could not properly grant qualified immunity. Separately, whether the posted signage met the specific statutory requirements of Texas Penal Code §§ 30.06 and 30.07 — including letter size, language, contrasting colors, and bilingual posting — is a factual question that cannot be resolved against a plaintiff on a Rule 12(b)(6) motion (ROA.539-541). *Bruen* confirms that any restriction on Second Amendment rights must be grounded in historical tradition; the district court never conducted that analysis.

Third, the district court erred in finding probable cause for disorderly conduct based solely on Grisham's use of profanity directed at law enforcement officers during a dispute about his legal right to carry. The Texas disorderly conduct statute, by its terms, reaches profanity only when it "tends to incite an immediate breach of the peace." Tex. Penal Code § 42.01(a); *see also Sauceda v. City of San Benito*, 78 F.4th 174, 184 (5th Cir. 2023); *Virginia v. Black*, 538 U.S. 343, 155 L. Ed. 2d 535, 123 S. Ct. 1536, 1547 (2003) (ROA.542-543). Grisham's speech — directed at Driskell and concerning a legal right — does not meet that standard. *Cohen, Eaton,* and *Houston v. Hill* collectively establish that speech directed at government

12

officials about official conduct, even if profane, is constitutionally protected (ROA.542-543). The crowd disturbance the district court cited as evidence of imminent breach of the peace was caused by a separate individuals, one of whom was independently arrested; Grisham's conduct did not cause or contribute to that altercation. Law enforcement officers cannot silence a citizen's verbal assertion of legal rights by labeling it disorderly conduct.

Fourth, and of particular gravity, the district court's Footnote 6 in the Deputies' dismissal order improperly questioned Grisham's compliance with the duty of candor toward the tribunal for failing to cite *Grisham v. Valenciano*. This was error — and potentially prejudicial error. *Grisham v. Valenciano* arose from a factually and legally distinct scenario: the open carry of a firearm on a public sidewalk in a manner calculated to cause alarm, where the court found probable cause for disorderly conduct based on the perceived threatening manner of carrying the weapon (ROA.543-544). The present case involves concealed carry only — the firearm was never displayed, brandished, or handled in any threatening manner — and the alleged disorderly conduct is based exclusively on speech, not guns. These are different constitutional frameworks. The duty of candor does not require citation of inapplicable or distinguishable authority, and the court's reference to the professional discipline rule, without any finding of actual violation, was an improper and prejudicial characterization that should be addressed and corrected by this Court.

Fifth, the district court's dismissal of the January 28 excessive force and Fourth Amendment claims was deficient. Jauss grabbed Grisham with enough force to leave physical bruises and placed his arm behind his back. While the district court noted in a footnote that Grisham had not formally articulated an excessive force claim, the proper remedy was leave to amend — not dismissal with prejudice — particularly since the underlying facts were plainly alleged (ROA.533-534).

Sixth, the County's *Monell* dismissal was entirely derivative of the individual dismissals and must fall with them. The district court conducted no independent analysis of whether Grisham's allegations established a de facto policy or custom of constitutional violations, whether O'Hare's actions as final policymaker bound the County, or whether the pattern of conduct across two separate meetings reflected an official practice rather than isolated incidents (ROA.545-546).

For all of these reasons, this Court should reverse all three dismissal orders and remand for further proceedings.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews a district court's grant of a Rule 12(b)(6) motion to dismiss de novo. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. Id. The complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When qualified immunity is raised, the court asks (1) whether a constitutional right was violated; and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Both questions are reviewed de novo.

### II. THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S FIRST AMENDMENT CLAIM AGAINST O'HARE

The district court dismissed Grisham's First Amendment claim by concluding that enforcing decorum rules — specifically prohibiting one expletive — in a limited public forum does not implicate the First Amendment. That conclusion is legally incorrect. It conflates the threshold question of whether a violation occurred with the

ultimate question of whether a restriction is permissible, and it failed to apply the controlling analytical framework.

### A. The TCCC Meeting Is a Limited Public Forum

Both parties agree — and the district court confirmed — that the January 28, 2025, TCCC meeting was a limited public forum. *See Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 345 (5th Cir. 2001). In such a forum, speech restrictions must be reasonable and viewpoint-neutral. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). The doctrine does not insulate a presiding officer from First Amendment scrutiny; the government may not suppress speech because of its content or viewpoint, even in a limited forum.

### B. The Prohibition on Profanity Is a Content-Based Restriction Subject to Heightened Scrutiny

The removal was based entirely on the content of Grisham's speech — specifically, his use of the word "fucking" when he was merely quoting what he told officers during the previous meeting ("when I told them to read the fucking law") – O'Hare's own motion admitted that it was not until Grisham used that word that the removal was ordered. A restriction that targets speech because of particular words is content-based by definition. "A restriction on . . . profanity . . . is naturally content-based." *Iancu v. Brunetti*, 588 U.S. 388, 419 (2019) (Sotomayor, J., concurring)

(*citing R.A.V. v. City of St. Paul*, 505 U.S. 377, 383 (1992)). To qualify as content-neutral, a restriction must be justified "without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The decision to remove Grisham was justified entirely by the specific word he used.

Profanity is not among the recognized categories of unprotected speech. *United States v. Alvarez*, 567 U.S. 709, 717 (2012); *United States v. Stevens*, 559 U.S. 460, 468 (2010). *Chaplinsky's* fighting words exception requires that the speech "by [its] very utterance inflict injury or tend to incite an immediate breach of the peace." 315 U.S. 568, 572 (1942). Grisham was speaking within his own allotted time, recounting an injustice, causing no disruption. The district court never conducted the required content-neutrality or narrow-tailoring analysis — a failure that is itself reversible error. *See Beckerman v. City of Tupelo, Miss.*, 664 F.2d 501, 513-14 (5th Cir. 1981); *Houston v. Hill*, 482 U.S. 451 (1987).

### C.  *O'Hare's Removal Constituted Viewpoint-Discriminatory Censorship*

The district court never examined whether O'Hare applied his decorum rule evenhandedly. Grisham's complaint alleges that O'Hare himself made a personal attack on a fellow commissioner at the same meeting without consequence — selective enforcement that constitutes viewpoint discrimination. *Heaney*, 846 F.3d at 802. Grisham's speech was on-topic: it was the predicate for his opinion on the

decorum-rules agenda item. O'Hare silenced him before he could complete a single coherent point. *Cohen v. California*, 403 U.S. 15 (1971), and *Eaton v. Tulsa*, 415 U.S. 697 (1974), establish that the government may not punish a speaker for the emotive content of an expletive absent threatening context. The district court's attempt to distinguish those cases on the grounds that Grisham was not arrested is unavailing — the First Amendment protects against all government restraints on speech, not merely criminal prosecution.

### D. The District Court Improperly Considered Pre-Meeting Conduct on a Rule 12(b)(6) Motion

In concluding that O'Hare's removal decision was reasonable, the district court recounted the hallway altercation — characterizing Grisham as an "armed individual" who "picked a fight with law enforcement officers." This characterization adopts O'Hare's framing, not the complaint's allegations, and violates the Rule 12(b)(6) standard requiring all inferences to be drawn in the plaintiff's favor. *Sonnier*, 509 F.3d at 675. Moreover, what occurred in the hallway before the meeting is legally irrelevant to whether O'Hare violated Grisham's right to speak at the podium. O'Hare himself identified the speech act — the single expletive — as the trigger for removal. Pre-meeting conduct cannot retroactively justify censoring a speaker who is lawfully present and within his allocated time.

### E. Texas Government Code §§ 551.007 and 551.042 Independently Establish the Violation

Texas Government Code § 551.007(e) expressly prohibits governmental bodies from prohibiting "public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service" — exactly what Grisham was doing. Section 551.042 provides a specific mechanism for responding to off-topic speech; it does not authorize removal or silencing. And Grisham's speech was not off-topic — it directly concerned the decorum-rules agenda item. O'Hare's statement that the speech was "not gonna be protected in this courtroom" demonstrates that he was conscious of the First Amendment question and made a deliberate choice to censor.

### F. The District Court Fundamentally Mischaracterized the TCCC Meeting as a "Juridical Forum"

Beyond the doctrinal errors discussed above, the district court's First Amendment analysis rested on a foundational categorical mistake: it treated the Tarrant County Commissioners Court meeting as a "juridical forum" subject to courtroom-style decorum rules. Doc. 27 at 10 ("Rules of decorum are axiomatic in juridical forums. See Local Civil Rule 83.16."). That characterization is wrong as a matter of Texas constitutional law, federal forum doctrine, and the controlling statutory framework. Without it, the district court's First Amendment analysis collapses.

*1. A Texas Commissioners Court Is an Administrative Body, Not a Judicial One*

The label "Commissioners Court" is a historical artifact; it does not describe a judicial body. The Commissioners Court is the principal governing and administrative body of a Texas county. Tex. Const. art. V, § 18(b). Its functions are overwhelmingly legislative and executive: setting the county tax rate, adopting the county budget, managing county property and finances, constructing and maintaining roads and bridges, appointing department heads, calling elections, establishing precincts, and overseeing county operations generally. See, e.g., Tex. Loc. Gov't Code §§ 81.001 et seq.; Tex. Gov't Code § 111.0035. None of these is a judicial function.

The Texas Supreme Court has long recognized that a commissioners court is not a "court" in the ordinary constitutional sense. *See Anderson v. Wood*, 137 Tex. 201, 152 S.W.2d 1084, 1087-88 (1941). The United States Supreme Court reached the same conclusion in *Avery v. Midland County*, 390 U.S. 474 (1968), where it analyzed the precise role of Texas commissioners courts and held that they "perform[] general governmental functions" that are "more legislative or executive than judicial in nature." *Id*. at 482. That conclusion was the foundation for applying

the one-person, one-vote rule — a doctrine that by its terms applies to legislative bodies, not to courts. *Id*. at 484-85.

*2. The Narrow Quasi-Judicial Powers of a Commissioners Court Do Not Convert Open Meetings into "Juridical Forums"*

A commissioners court "possesses only such powers as are conferred upon it by the Constitution and the statutes, expressly or by necessary implication." *Canales v. Laughlin*, 147 Tex. 169, 214 S.W.2d 451, 453 (1948); *accord Pritchard & Abbott v. McKenna*, 162 Tex. 617, 350 S.W.2d 333, 335 (1961). The narrow quasi-judicial functions a commissioners court does exercise — for example, certain road-establishment, bond-forfeiture, and limited statutorily defined administrative hearings — are conducted under their own procedural frameworks and do not transform the body's regular open meetings into judicial proceedings. The County Judge's individual judicial authority (e.g., probate jurisdiction in counties without a statutory probate court) is exercised in the County Court — a constitutionally distinct office that merely shares an officeholder. It is not exercised at a Commissioners Court meeting.

The January 28, 2025, TCCC meeting was not a judicial proceeding by any measure. There were no parties. There were no pleadings. There was no evidence taken under oath. There were no adverse litigants whose rights were being adjudicated. There was no jury whose impartiality might be compromised. There

was a presiding officer, a public agenda, and a public-comment period — the hallmarks of administrative governance, not adjudication. Calling such a meeting a "juridical forum" is a category error.

*3. The Texas Open Meetings Act Establishes a Statutory Framework Fundamentally Inconsistent With Courtroom-Decorum Treatment*

Texas Commissioners Court meetings are governed by the Texas Open Meetings Act, Chapter 551 of the Texas Government Code — a statute whose purpose, structure, and substantive provisions are fundamentally incompatible with the courtroom-decorum framework the district court imported. The Open Meetings Act opens meetings to the public, requires advance notice and posted agendas, prohibits secret deliberation among quorums, and — critically — affirmatively guarantees the public's right to address the body and to criticize its conduct:

"A governmental body shall allow each member of the public who desires to address the body regarding an item on an agenda for an open meeting of the body to address the body regarding the item." Tex. Gov't Code § 551.007(b).

"A governmental body may not prohibit public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service." Tex. Gov't Code § 551.007(e).

These provisions describe a forum designed for citizen participation in self-government — the antithesis of a courtroom, where the public is a spectator rather than a participant and where speech is necessarily circumscribed by the demands of adversarial adjudication. The very statute that brought the public into the room forecloses treating that room as a courtroom.

*4. Federal First Amendment Doctrine Confirms the Distinction*

The district court's reliance on Local Civil Rule 83.16 was misplaced for an additional reason: that rule, by its terms, governs conduct in federal courtrooms during "trial[s], hearing[s], or other proceeding[s]" — not the open meetings of state or local governing bodies. And federal First Amendment doctrine has long distinguished between the constitutional rules governing courtrooms and those governing public meetings of legislative or administrative bodies.

When a public body opens its meetings to public participation, it has created a forum in which it "may not muzzle" speakers on the basis of viewpoint, even though it may confine the meeting to its agenda. *City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175-76 (1976). This Court

applied that principle in *Heaney v. Roberts*, 846 F.3d 795, 801-02 (5th Cir. 2017), treating a Louisiana parish council meeting as a limited public forum subject to ordinary forum analysis — not as a "juridical forum" with courtroom-style decorum prerogatives. Other circuits agree. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 975-76 (9th Cir. 2010) (en banc) (rejecting courtroom-style decorum standards for city council meetings); *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270-71 (9th Cir. 1995); *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990); *Reza v. Pearce*, 806 F.3d 497, 504-05 (9th Cir. 2015).

The Supreme Court's decisions in *Cohen v. California*, 403 U.S. 15 (1971), and *Eaton v. Tulsa*, 415 U.S. 697 (1974), are not displaced because a citizen happens to be standing at a podium in a government building. They are displaced only when a genuinely judicial forum is at issue — and the district court cited no authority for the proposition that an open meeting of an administrative governing body qualifies as such.

*5. The Authorities the District Court Cited Do Not Support Its "Juridical Forum" Theory*

The district court's footnote-2 string cite cannot bear the weight placed on it. *Illinois v. Allen*, 397 U.S. 337 (1970), addressed a criminal defendant who repeatedly disrupted his own jury trial by threatening the trial judge with violence. *Id.* at 339-

40. *Allen's* holding rests squarely on the Sixth Amendment's fair-trial concerns — concerns wholly absent from a county commissioners' open meeting. There is no jury at TCCC. There is no criminal defendant. There are no witnesses under oath. There is no risk of mistrial. Allen does not transfer.

*FCC v. Pacifica Foundation*, 438 U.S. 726 (1978), is even further afield. It addressed administrative sanctions on broadcast licensees under 18 U.S.C. § 1464, a regulatory regime peculiar to the public airwaves and the FCC's unique licensing authority. *Pacifica* expressly disclaimed any intent to displace Cohen's protection of profanity in public dialogue. *Id*. at 745-46. It provides no support for silencing a citizen mid-comment at a county meeting.

### III. THE DISTRICT COURT ERRED IN GRANTING QUALIFIED IMMUNITY TO O'HARE

#### A. *The Right to Use Profanity in Public Comment Was Clearly Established*

The constitutionally protected status of profanity in public speech has been clearly established for more than fifty years. *Cohen v. California*, 403 U.S. 15 (1971) (government may not criminalize public display of a four-letter word). *Eaton v. Tulsa*, 415 U.S. 697 (1974) (reversal of contempt finding for use of profanity in a

courtroom). To be clearly established, the right must be defined "with sufficient clarity that a reasonable official would understand that what he is doing violates that right." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). O'Hare, as a former mayor with prior First Amendment litigation experience, was charged with knowing this framework.

O'Hare's statement that the speech was "not gonna be protected in this courtroom" demonstrates not a good-faith mistake but a deliberate choice to impose a restriction while declining to identify which unprotected-speech category applied. Qualified immunity protects officials who make "reasonable but mistaken judgments about open legal questions." *Pearson*, 555 U.S. at 231. It does not protect a conscious decision to censor. *Morrow v. Meacham*, 917 F.3d 870, 874 (5th Cir. 2019).

### B. O'Hare's Conduct Was Objectively Unreasonable

Grisham was speaking during his own allocated period, on an agenda topic, using one expletive, without disruption, without threatening anyone, without exceeding his time. No reasonable presiding officer could have believed that immediate ejection — with no warning, no opportunity to modify remarks — was constitutionally permissible under these facts. The district court's effort to justify the result by reference to Grisham's pre-meeting hallway conduct does not cure the

constitutional defect: a presiding officer's First Amendment judgment must be based on what is happening at the podium, not in the parking lot.

## IV. THE DISTRICT COURT ERRED IN DISMISSING THE CLAIMS AGAINST THE DEPUTIES

### *A. The January 14 Second Amendment Claim — The Firearms Analysis Was Premature and Factually Incomplete*

#### *1. The LEOSA Question Was Never Resolved*

The district court expressly declined to evaluate whether Grisham qualifies as a "qualified retired law enforcement officer" under 18 U.S.C. § 926C — the Law Enforcement Officer Safety Act. Doc. 28 at 14 ("The Court declines to evaluate this issue"). This was reversible error. LEOSA provides a federal right for qualified retired law enforcement officers to carry concealed firearms notwithstanding state or local laws restricting such carrying. If Grisham qualifies under LEOSA, the entire premise of the Deputies' conduct — that he was unlawfully armed — collapses. The Deputies would have had no legal basis to prevent his entry, no basis to demand proof of his LTC, and no basis to detain or restrain him.

Grisham's status as a retired United States Army Senior Counterintelligence Special Agent is a well-pleaded fact the district court was required to accept as true.

His complaint alleged that Army Senior Counterintelligence Special Agents are among the military occupational specialties recognized as law enforcement under LEOSA. The court dismissed this as a "legal conclusion." But the factual predicate — the nature of Grisham's service and the statutory powers associated with it — is a factual matter that cannot be resolved against a plaintiff on a motion to dismiss without discovery. The court cannot dismiss a claim by refusing to evaluate the dispositive legal question underlying it and then granting qualified immunity as if that question had been resolved against the plaintiff.

Furthermore, LEOSA itself contains important limiting language: 18 U.S.C. § 926C(b)(2) provides that the section shall not be construed to supersede or limit state laws prohibiting firearms on state or local government property. The district court cited this provision. But this does not end the inquiry; it means LEOSA's carry right is subject to state law restrictions on government property. The question then returns to whether Texas's specific prohibition applies to Grisham's situation — a question that depends in turn on the LEOSA classification question the district court refused to answer.

*2. The Signage Sufficiency Question Is a Factual Issue Not Resolvable at the Pleading Stage*

Even setting aside the LEOSA question, the district court erred in concluding that the posted signage was legally sufficient to prohibit even LTC holders from carrying. Texas Penal Code §§ 30.06 and 30.07 impose specific requirements on the form, content, size, language (English and Spanish), color contrast, and letter height of signs that lawfully prohibit LTC holders from carrying. These are not mere formalities — the legislature imposed them precisely to ensure that citizens receive legally adequate notice.

Grisham's complaint alleged that the posted signage was insufficient to meet these statutory requirements. The district court characterized this allegation as a "conclusory" legal conclusion. But it is not a legal conclusion — it is a factual challenge to whether specific posted signs actually complied with specific statutory specifications. That question requires examination of the signs themselves, which is a factual inquiry not appropriate for resolution on a motion to dismiss. At the pleading stage, Grisham was entitled to have the allegation accepted as true and to have the opportunity to develop the factual record through discovery. The district court's resolution of that contested factual question against Grisham violated the Rule 12(b)(6) standard.

### *3. Bruen Requires Historical Analysis That Was Never Conducted*

Under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the government may only regulate the Second Amendment right to carry consistent with the Nation's historical tradition of firearm regulation. The district court applied the general Bruen "sensitive places" framework but did not engage in the specific historical analysis *Bruen* requires. *Bruen* noted that legislative assemblies, polling places, and courthouses represent the historical core of sensitive-place prohibitions. A county commissioner's public meeting room may or may not fall within this tradition; that question requires historical analysis, not assumption. The district court's categorical treatment of all government meeting rooms as sensitive places — without the required *Bruen* historical inquiry — was legal error.

Under Bruen, the Second Amendment's plain text presumptively protects the conduct of "keep[ing] and bear[ing] arms." 597 U.S. at 17. Once that presumption attaches, "the government must . . . demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. Carrying a holstered handgun by a qualified retired law enforcement officer falls squarely within the textual core of the right. *See United States v. Rahimi*, 602 U.S. 680, 691–92 (2024) (reaffirming Bruen's text-and-history method).

To sustain the deprivation, Defendants must therefore identify a regulation— consistent with the Nation's historical tradition—that prohibits Plaintiff's carry.

They cannot. The only purported "regulation" Defendants have produced is the Smith County Sheriff's internal policy.

But Texas has expressly stripped counties of the power to adopt or enforce such a regulation:

> [A]n ordinance, rule, resolution, or policy adopted or enforced by a county, or an official action, including in any legislative, police power, or proprietary capacity, taken by an employee or agent of a county in violation of this section is void.

Tex. Loc. Gov't Code § 236.002(b). A void policy is no policy at all. *Honeycutt v. State*, 627 S.W.2d 417, 420 (Tex. Crim. App. 1981); s*ee also Abrams v. State,* 563 S.W.2d 610 (1978)*; Ex parte Devereaux*, 389 S.W.2d 672 (Tex.Cr.App.1965), *Ex parte Watson*, 154 Tex.Cr.R. 167, 225 S.W.2d 850 (1949); *Ex parte Farley*, 65 Tex.Cr.R. 405, 144 S.W. 530 (1912); and *Boggs v. Rubin*, 161 F.3d 37, 39 (D.C. Cir. 1998) (a regulation declared void by superior law cannot supply a legal basis for state action). Additionally, *Richardson v. Responsible Dog Owners*, 794 S.W.2d 17 (1990) clarified that while home-rule cities have broad discretionary powers, these powers are limited by the requirement that ordinances must not conflict with state law. The court noted that a general law and a city ordinance will not be deemed repugnant if a reasonable construction allows both to coexist. However, when a conflict exists, the ordinance is void. The historical-

tradition step of *Bruen* therefore fails for Defendants: their proffered "regulation" was, at the moment of enforcement, a legal nullity.

Whether courthouses are "sensitive places" in some general historical sense is therefore beside the point. The sensitive-places doctrine permits legislatures to legislate; it does not authorize officers to enforce their own policies in lieu of legislation. Where Texas's political branches—the body to which the sensitive-places doctrine extends its permission—have spoken, and have spoken to permit Plaintiff's carry, no county sheriff's contrary policy can supply the historical or legal pedigree *Bruen* requires.

Taken to its conclusion, the Trial Court's reasoning would permit any county sheriff in Texas to extinguish a Second Amendment right that the Texas Legislature has affirmatively recognized, simply by writing "policy" on county letterhead. That is not the law. It is not what *District of Columbia v. Heller*, 554 U.S. 570 (2008) said. It is not what *McDonald v. City of Chicago*, 561 U.S. 742 (2010), incorporated. And it is not what *Bruen* clarified. *Bruen* specifically rejected the argument that any location with public access could be deemed "sensitive" and therefore exempted from Second Amendment scrutiny: "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." 597 U.S. at

31. The principle is the same here. Defendants cannot expand the category of permissible courthouse prohibitions to include their own policy when the Texas Legislature has, by enactment, excluded Plaintiff and persons like him from courthouse prohibitions altogether. The Trial Court's contrary holding—that Defendants are entitled to qualified immunity because, in the abstract, some legislative body could have prohibited Plaintiff's carry— would have read *Heller* and *Bruen* backwards if it had done the analysis. The Second Amendment protects what state law leaves protected; the sensitive-places doctrine reaches no further than the legislative restriction it permits.

### B.  The January 14 First and Fourth Amendment Claims — Probable Cause for Disorderly Conduct Was Not Established on These Facts

The district court found that the Deputies had probable cause to arrest Grisham for disorderly conduct because he used profanity toward law enforcement officers while armed and noncompliant. This reasoning is constitutionally infirm for three independent reasons.

### 1.  Speech-Based Probable Cause Requires More Than Profanity Directed at Officers

Texas Penal Code § 42.01 reaches profanity in a public place only when the language "by its very utterance tends to incite an immediate breach of the peace."

This is not merely a statutory gloss — it is the constitutional minimum required by the First Amendment. The Supreme Court has held, repeatedly, that the government may not premise a disorderly conduct arrest on speech directed at law enforcement officers unless that speech genuinely tends to incite an immediate breach of the peace. *Houston v. Hill*, 482 U.S. 451, 462-63 (1987) ("The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). *Cohen v. California*, 403 U.S. 15 (1971). *Eaton v. Tulsa*, 415 U.S. 697 (1974).

Grisham directed profanity at Driskell during a dispute about the legal right to carry a firearm. He was asserting a legal position — forcefully, but verbally. He was not physically threatening. He did so conversationally and respectfully. He was not blocking a public way. He was not inciting the crowd. The invocation of profanity in the context of asserting a legal right to a law enforcement officer falls squarely within the zone of protected speech established by *Cohen, Eaton*, and *Houston v. Hill*. The district court's conclusion that this speech crossed into disorderly conduct would place at legal risk every citizen who disputes a law enforcement officer's legal interpretation in anything other than a deferential tone.

### *2. The Crowd Disturbance Was Caused by a Third Party, Not by Grisham*

The district court identified the gathering and raucous crowd as evidence that Grisham's conduct tended to incite an immediate breach of the peace. But the complaint itself establishes that the crowd disturbance resulting in a separate arrest was caused by a separate individual — not by Grisham. Grisham's speech did not cause that person to engage in disorderly conduct. The constitutional test for probable cause requires that the defendant's own conduct tend to incite breach of the peace — not that someone else in the vicinity happens to become disorderly. The district court's conflation of the two is legal error. Probable cause is a particularized inquiry; it cannot be established by pointing to the conduct of bystanders.

### *3. The Fourth Amendment Claim Survives Independently*

To the extent the Deputies lacked probable cause to arrest Grisham, his Fourth Amendment claim based on the restraint and handcuffing on January 14 survives. The district court found that Grisham was "placed in handcuffs for the unlawful carry of a weapon" — but Grisham disputes that he was unlawfully carrying, and that dispute cannot be resolved at the pleading stage. If he was not unlawfully carrying, the Deputies' restraint of his person was a seizure without probable cause, in violation of the Fourth Amendment. The district court never engaged with this analysis independently; it simply concluded that the Second Amendment claim failed and therefore the Fourth Amendment restraint claim failed with it. That

35

syllogism is legally insufficient: the Fourth Amendment inquiry is independent of the resolution of the firearms question.

### C. The District Court Erred in Relying on *Grisham v. Valenciano and Improperly Questioned Appellant's Candor Under Footnote 6*

Footnote 6 of the Deputies' dismissal order warrants specific attention from this Court, both because of its role in the district court's substantive reasoning and because of its broader implications for this proceeding. The footnote stated that the court found it "curious" that Grisham had not cited *Grisham v. Valenciano*, 93 F.4th 903 (5th Cir. 2024), and referred Grisham to Local Civil Rule 83.8(e) and Texas Disciplinary Rules of Professional Conduct Rule 3.03(a)(4) — the rule governing candor toward the tribunal. The district court erred in this characterization, and this Court should say so.

#### *1. Grisham v. Valenciano Is Factually and Legally Inapplicable to This Case*

The duty of candor toward the tribunal, codified in Texas Disciplinary Rule 3.03(a)(4), requires a lawyer to disclose to a tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel. The operative phrase is "directly adverse"

— not tangentially related, not involving the same parties in different circumstances, not arising from a shared surname.

*Grisham v. Valenciano*, 93 F.4th 903 (5th Cir. 2024), is not directly adverse authority for the claims presented in this case. That case arose from an entirely different factual and constitutional scenario. In *Valenciano*, the disorderly conduct claim was premised on the manner in which Grisham was carrying a firearm — openly, on a public sidewalk, in a manner that the Fifth Circuit found was "calculated to cause alarm." 93 F.4th at 911. The court's finding of probable cause in that case turned on the threatening character of the display of the weapon itself — the act of open carry in a manner designed to intimidate.

The present case is categorically distinct in every respect that matters:

First, the firearm in this case was carried concealed at all times. Grisham never displayed, brandished, or handled the weapon in any manner visible to bystanders or officers except in the context of acknowledging that he was armed when directly asked. There was no open carry, no display calculated to cause alarm, no threatening posture in relation to the weapon. The constitutional analysis that applies to the display of a weapon in a threatening manner has no bearing whatsoever on the constitutional analysis of concealed carry combined with verbal assertion of legal rights.

Second, the alleged disorderly conduct in this case is based exclusively on speech — specifically, on Grisham's use of profanity in the context of disputing Driskell's legal interpretation of his carry rights. In *Valenciano*, by contrast, the court's probable cause analysis was based on the manner of the weapon display, not on speech alone. These two scenarios invoke different constitutional doctrines: the second involves the First Amendment's robust protection of speech directed at government officials, including law enforcement, as established by *Houston v. Hill*, *Cohen v. California*, and *Eaton v. Tulsa*. None of those cases was at issue in *Valenciano*. *Valenciano* provides no guidance on whether speech-based disorderly conduct is a constitutionally valid basis for arrest when the speaker is asserting legal rights in a verbal dispute with an officer.

Third, the legal framework the district court applied from *Valenciano* — probable cause based on a totality of threatening circumstances — does not translate to a case where the "threatening circumstances" are simply a disagreement and the use of profanity. The district court quoted *Valenciano* for the proposition that the "relevant facts and circumstances . . . were sufficient for a reasonable officer to believe that [the person] was acting with the requisite specific intent" to engage in disorderly conduct. But the facts and circumstances in *Valenciano* included the threatening open display of a firearm in a populated public area. The facts and

circumstances here include a verbal dispute about legal rights, a concealed weapon, and profanity — a combination that the First Amendment directly protects.

### 2. *The Duty of Candor Does Not Require Citation of Inapplicable Authority*

An attorney's duty of candor toward the tribunal is a serious professional obligation. Texas Disciplinary Rule 3.03(a)(4) requires disclosure of directly adverse controlling authority that has not been disclosed by opposing counsel. It does not — and cannot, consistently with principles of zealous advocacy — require an attorney to cite and argue against every case involving similar parties or vaguely related legal concepts. To hold otherwise would mean that any litigant who appears in more than one case must self-cite each prior adverse ruling in all future proceedings, even where those rulings address entirely different legal questions under materially different facts. That is not the law.

*Grisham v. Valenciano* is not directly adverse to any position Grisham advanced in this case, because it did not address the legal questions presented here: whether speech-based disorderly conduct based on profanity directed at law enforcement is constitutionally protected; whether a presiding officer may eject a speaker from a limited public forum based solely on one expletive; or whether a demand that an LTC holder produce his license constitutes an unlawful seizure. The

court's reliance on *Valenciano* for the disorderly conduct probable cause question is itself a category error — the Fifth Circuit's probable cause analysis in that case was premised on facts (open carry in an alarming manner) that have no analog here.

Because *Valenciano* was not directly adverse controlling authority on any of the claims Grisham advanced, he had no professional obligation to cite it. His decision not to cite it was a reasonable, good-faith judgment that the case was factually and legally distinguishable — a judgment this brief has now vindicated in detail. The district court's suggestion that this decision reflects a violation of the duty of candor, without any finding that the cases are in fact indistinguishable, was an overreach that this Court should expressly reject.

### *3. The Footnote's Reference to Professional Discipline Rules Was Prejudicial and Improper*

Beyond the legal error, the district court's reference to the professional discipline rules in a judicial order — without any motion, any adversarial process, or any finding of actual violation — was procedurally improper and potentially prejudicial. Judicial criticism of a litigant's professional conduct, when embedded in a dispositive ruling, may influence subsequent proceedings. If, for example, any defendant were to file a bar complaint based on this footnote, the footnote itself might be cited as evidence of misconduct.

This Court should make clear that Footnote 6's implication of professional misconduct was not warranted. *Grisham v. Valenciano* was not directly adverse controlling authority on the issues presented. The decision not to cite it reflected a considered legal judgment that the cases are distinguishable — a judgment that is correct, as detailed above. No disciplinary rule was implicated.

### D. The January 28 Second and Fourth Amendment Claims — Jauss's Forcible Restraint and the Unlawful Detention Remain Viable

The district court dismissed Grisham's January 28 claims against the Deputies by concluding that once Grisham decided to comply and produce his LTC, he was released and allowed to enter. This analysis is legally insufficient in two respects.

First, the district court's Footnote 4 acknowledged that Grisham used the words "excessive force" in his complaint but found that he had not formally articulated a specific Fourth Amendment excessive force claim. The footnote then characterized all such references as conclusory. The proper response to a poorly articulated but factually supported excessive force claim is leave to amend — not dismissal with prejudice. The underlying facts are not in dispute: Jauss grabbed Grisham's arm "with such force . . . that it left bruises" and placed his arm behind his back. These are specific, well-pleaded factual allegations describing a physical restraint that caused documented physical injury. The existence of bruising from a

41

law enforcement contact is, at minimum, a plausible pleading of excessive force under the Fourth Amendment, and the claim warrants evaluation under *Tennessee v. Garner*, 471 U.S. 1 (1985), and its progeny. Dismissal with prejudice on these facts, without leave to formally articulate the claim, was an abuse of discretion.

Second, the threshold premise of the January 28 Deputies' conduct is independently contestable: whether Driskell had legal authority to demand that Grisham produce his LTC before entering the meeting. Texas Government Code § 411.205 requires a license holder to produce the license to a peace officer who demands it — but only when the officer has a lawful basis for the stop. If Grisham's initial refusal to produce the license was itself constitutionally protected (because the stop lacked reasonable suspicion), then the Deputies' forcible restraint of him to compel production was an unlawful seizure. The prior January 14 encounter does not by itself provide reasonable suspicion to detain Grisham at the door of a subsequent, separate meeting weeks later. These questions cannot be resolved on the pleadings alone.

# V. THE DISTRICT COURT ERRED IN DISMISSING THE SECTION 1985 CONSPIRACY CLAIM

The district court dismissed the Section 1985 conspiracy claim against both O'Hare and the Deputies on the ground that Grisham had failed to adequately plead deprivation of constitutional rights. To state a claim under 42 U.S.C. § 1985, a plaintiff must allege (1) an actual deprivation of constitutional rights and (2) an agreement among the defendants to commit the illegal act. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Because the predicate constitutional violations are adequately pleaded — as demonstrated above — both prongs of the conspiracy claim warrant reexamination on remand.

The coordinated nature of the conduct across two separate meetings supports a plausible inference of agreement. The same core group of deputies was present at both meetings. The January 28 encounter began immediately upon Grisham's arrival, with George positioning himself in front of the door and Driskell demanding the LTC, suggesting pre-arranged coordination. O'Hare's instruction to the deputies at the January 28 meeting to remove Grisham was itself a directive to the same officers involved in the January 14 confrontation. These allegations, accepted as true, plausibly describe concerted action by multiple individuals to deprive Grisham of his First, Second, and Fourth Amendment rights.

43

The intracorporate conspiracy doctrine does not bar these claims. That doctrine applies to agents acting within the scope of their official roles, not to defendants alleged to have acted for personal purposes or in a manner that exceeded any legitimate official function. Grisham's allegations include conduct — grabbing him with bruising force, positioning officers to block his entry, and coordinating to silence his speech — that goes beyond the legitimate performance of official duties. These allegations plausibly invoke the personal-motive exception to the doctrine.

## VI. THE DISTRICT COURT ERRED IN DISMISSING THE MONELL CLAIMS AGAINST O'HARE AND TARRANT COUNTY

### A. The County's Dismissal Was Entirely Derivative and Falls With the Underlying Claims

The district court's sole stated basis for dismissing the County was that, under *Grisham v. Valenciano*, 93 F.4th 903, 912 (5th Cir. 2024), municipal liability requires an underlying constitutional violation, and the O'Hare and Deputies orders established that no violations had occurred. This is purely derivative reasoning. If this Court reverses any of the individual dismissals, the County's dismissal necessarily falls with them — there is no independent ground stated in the April 8 County order that would sustain the County's dismissal once a predicate constitutional violation has been established.

### B. Grisham Independently Pleaded a Viable Monell Claim

Even assuming this Court were to affirm all individual dismissals — which Grisham submits would be error — the district court's failure to conduct any independent Monell analysis requires reversal. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). The elements are: (1) a policymaker; (2) an official policy, practice, or custom; and (3) a constitutional violation whose moving force is that policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

On policymaker: O'Hare, as elected Tarrant County Judge and statutory presiding officer of the TCCC, exercised final authority over the conduct of public meetings. Tex. Const. art. V, § 18(b). Where a final policymaker's ad hoc decisions are not subject to meaningful higher-level review, those decisions constitute official county policy for Monell purposes regardless of whether formal policies require a full Commissioners Court vote.

On policy or custom: Grisham's complaint alleged not a single isolated incident but a pattern of conduct across two separate meetings: the January 14 denial of access based on a disputed legal interpretation of carry rights; the January 28 forcible restraint to compel production of the LTC; and the January 28 ejection based on speech content. O'Hare's announcement that certain speech would not be

"protected in this courtroom" plausibly alleges a standing de facto policy of content-based speech restriction at TCCC meetings.

On causation: Grisham's injuries — being silenced mid-comment, forcibly removed, and repeatedly denied meaningful access to the meeting — were the direct product of this policy and practice. The district court never evaluated any of this. It simply cross-referenced the individual dismissals. That is not *Monell* analysis.

### C. The District Court's Reliance on Grisham v. Valenciano Was Misplaced

As detailed in the discussion of Footnote 6 above, *Grisham v. Valenciano* addressed a factually distinct scenario and does not govern the constitutional questions presented here. Its use as the basis for dismissing the County's *Monell* liability — without any discussion of how its facts or legal principles apply to this case's allegations of a de facto censorship policy at TCCC meetings — does not constitute the independent legal analysis that Monell requires. This Court should reverse and remand for that analysis to be conducted in the first instance.

## VII. IN THE ALTERNATIVE, THE COURT SHOULD GRANT LEAVE TO AMEND

Should this Court decline to reinstate any claims as currently pleaded, it should direct the district court to grant leave to amend. The district court ordered one round of amended pleading directed specifically at qualified immunity. Its subsequent dismissal orders — including the Footnote 4 acknowledgment that the excessive force claim was inadequately articulated — identified specific pleading deficiencies for the first time at final judgment. Where deficiencies can be cured and amendment would not be futile, dismissal with prejudice without leave to amend is an abuse of discretion.

At minimum, the following claims warrant the opportunity to amend: (1) the excessive force / Fourth Amendment claim arising from Jauss's physically injurious restraint; (2) the LEOSA-based Second Amendment claim, which requires further factual development regarding Grisham's specific military occupational specialty and its statutory classification; and (3) the *Monell* claim against Tarrant County, which can be pleaded with greater specificity regarding the policymaker analysis and the de facto custom evidence.

# CONCLUSION

For the foregoing reasons, Appellant CJ Grisham respectfully requests that this Court:

1. REVERSE the district court's April 6, 2026 Order Granting Defendant Tim O'Hare's Motion to Dismiss (Doc. 27) (ROA.514-525);

2. REVERSE the district court's April 8, 2026 Order Granting Defendant Deputies' Motion to Dismiss (Doc. 28) (ROA.526-544);

3. REVERSE the district court's April 8, 2026 Order Granting Tarrant County's Motion to Dismiss (Doc. 29) (ROA.545-546);

4. REINSTATE Appellant's First Amendment claim under 42 U.S.C. § 1983 against Appellee O'Hare;

5. REINSTATE Appellant's Second Amendment and Fourth Amendment claims against the Deputies arising from the January 14 and January 28, 2025 events;

6. REINSTATE Appellant's First and Fourth Amendment claims against the Deputies arising from the January 14, 2025 events;

7. REINSTATE Appellant's civil rights conspiracy claim under 42 U.S.C. § 1985;

8. REINSTATE Appellant's *Monell* liability claims against Appellee O'Hare and Appellee Tarrant County;

9. EXPRESSLY REJECT the implication in Footnote 6 of the Deputies' dismissal order that Appellant violated any duty of candor toward the tribunal by declining to cite *Grisham v. Valenciano*, 93 F.4th 903 (5th Cir. 2024), a case that is factually and legally distinguishable from the claims presented here (ROA.543-544);

10. REMAND the case to the district court for further proceedings consistent with this Court's opinion, including the lifting of the discovery stay; and

11. GRANT such other and further relief to which Appellant is justly entitled.

In the alternative, if this Court finds that any claims as currently pleaded are deficient, Appellant requests that this Court direct the district court to grant leave to amend rather than affirm the dismissals with prejudice.

Respectfully submitted,

 **/s/ Christopher J. Grisham**
CJ GRISHAM
Texas State Bar No. 24124533
Law Offices of CJ Grisham PLLC
3809 S. General Bruce Dr., Ste 103-101
Temple, Texas 76502
Telephone: (254) 405-1726
cj@cjgrisham.com
**PRO SE COUNSEL FOR APPELLANT**

49

**CERTIFICATE OF SERVICE**

I hereby certify that on the date of filing, a copy of the foregoing Brief of Appellant was served on all counsel of record via the Court's CM/ECF electronic filing system, which will provide electronic notice to:

Katherine E. Owens
Craig M. Price
Tarrant County Criminal District Attorney's Office
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor
Fort Worth, Texas 76196
Attorneys for Defendant-Appellees Tim O'Hare, Tarrant County, Craig Driskell, Orville George, Michael Jauss, and Jennifer Gabbert

**/s/Christopher J. Grisham**
CJ Grisham

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains fewer than 13,000 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

**/s/ Christopher J. Grisham**
CJ Grisham
Pro Se Counsel for Appellant