Case No. 26-10335

# In the United States Court of Appeals for the Fifth Circuit

C. J. Grisham

*Plaintiff – Appellant,*

v.

Tim O'Hare, In his personal and official capacities; Chief Deputy Craig Driskell, In his supervisory, official, and personal capacities; Chief Deputy Jennifer Gabbert, In her personal and official capacities; Sergeant Orville George, In his personal and official capacities; Sergeant Michael Jauss, In his personal and official capacities; Tarrant County

*Defendants – Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

**BRIEF FOR DEFENDANTS-APPELLEES DEPUTIES CRAIG DRISKELL, ORVILLE GEORGE, MICHAEL JAUSS, AND JENNIFER GABBERT**

PHIL SORRELLS
Tarrant County Criminal
District Attorney

KATHERINE E. OWENS
Texas State Bar No. 24081683
CRAIG M. PRICE
Texas State Bar No. 16284170
Assistant Criminal District Attorneys
401 W. Belknap, 9th Floor – Civil
Fort Worth, Texas 76196
817-884-1233 – Telephone
817-884-1675 – Facsimile
keowens@tarrantcountytx.gov
cmprice@tarrantcountytx.gov

COUNSEL FOR DEFENDANTS - APPELLEES

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal:

## **<u>Defendants/Appellees</u>**

1. Tarrant County Judge Tim O'Hare
2. Chief Deputy Craig Driskell
3. Chief Deputy Jennifer Gabbert
4. Sergeant Orville George
5. Sergeant Michael Jauss
6. Tarrant County, Texas

## **<u>Counsel for Defendants/Appellees</u>**

Phil Sorrells, Tarrant County District Attorney
Katherine E. Owens, Tarrant County Assistant District Attorney
Craig M. Price, Tarrant County Assistant District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor – Civil
Fort Worth, Texas 76196
817-884-1233 – Telephone
817-884-1675 – Facsimile
E-Mail: keowens@tarrantcountytx.gov
E-Mail: cmprice@tarrantcountytx.gov

**<u>Plaintiff/Appellant</u>**

1.     CJ Grisham

**<u>Counsel for Plaintiffs/Appellant</u>**

CJ Grisham
Law Offices of CJ Grisham, PLLC
3809 S. General Bruce Dr., Ste 103-101
Temple, Texas 76502
Telephone: 254-405-1726
cj@cjgrisham.com
Pro Se Counsel for Appellant

*/s/ Katherine E. Owens*
Katherine E. Owens
*Counsel for Appellees-Deputies*

## STATEMENT REGARDING ORAL ARGUMENT

The four Sheriff's Deputy Appellees jointly do not believe that oral argument is necessary because this appeal can be decided by the application of well-established precedent to the record on appeal. Therefore: (1) the dispositive issues already have been authoritatively decided, and (2) the facts and legal arguments are adequately presented in the briefs and record, so the decisional process would not be significantly aided by oral argument. Fed. R. App. P. 34(a)(2)(B), (C).

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS ......................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ................................................iv

TABLE OF CONTENTS.............................................................................................v

TABLE OF AUTHORITIES ................................................................................ vii

STATEMENT OF JURISDICTION.........................................................................1

SUMMARY OF THE ARGUMENT .......................................................................1

STATEMENT OF THE CASE..................................................................................1

STATEMENT OF FACTS ........................................................................................2

STANDARD OF REVIEW .......................................................................................4

  I.    Motion to Dismiss...........................................................................................4
  II.   Qualified Immunity........................................................................................6

ARGUMENT ............................................................................................................9

  III.   Trial Court properly dismissed  Grisham's Second Amendment claims........9
       A.    LEOSA .............................................................................................10
       B.    Grisham's invocation of Section 30.06 and 30.07 signage is
           irrelevant..........................................................................................13
       C.    *Bruen* analysis (i) not necessary; (ii) court did apply it ......................18
       D.    Grisham asserts no Second Amendment claim from January 28,
           2025 ................................................................................................20

  IV.   The Trial Court properly dismissed  Grisham's Fourth Amendment claims
      against the Deputies...................................................................................21

       A.    Trial court properly dismissed the Fourth Amendment claims for
           the encounter on January 14, 2025 ................................................21
           1.  *Texas law required Grisham to present his LTC*..........................23
           2.  *Grisham's actions reasonably constituted disorderly conduct* ....25
       B.    Trial court properly dismissed  the Fourth Amendment  claims
           for the encounter on January 28, 2025.............................................28

  V.    Trial Court properly dismissed  Grisham's First Amendment claims
      against Deputies ..........................................................................................30

VI.  Trial Court's reference to *Grisham v. Valenciano* was not reversible error................................................................................................................32

VII.  Section 1985(3) conspiracy claims are barred by the intracorporate conspiracy doctrine..............................................................................32

VIII.  Grisham waived additional claims by failing to brief them ..........................34

IX.  Grisham is not entitled to amend his complaint ............................................34

PRAYER .................................................................................................................36

CERTIFICATE OF COMPLIANCE......................................................................37

CERTIFICATE OF SERVICE ..............................................................................37

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alexander v. S. Health Partners, Inc.*,
No. 3:22-CV-0395-X, 2023 WL 3961704 (N.D. Tex. June 12, 2023) ................... 4

*Anderson v. Creighton*,
483 U.S. 635 (1987) ................................................................................................ 6, 7

*Anderson v. U.S. Dep't of Hous. & Urban Dev.*,
554 F.3d 525 (5th Cir. 2008) ...................................................................................... 5

*Arnold v. Williams*,
979 F.3d 262 (5th Cir. 2020) ...................................................................................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... passim

*Autobahn Imports, L.P. v. Jaguar Land Rover N. Am., L.L.C.*,
896 F.3d 340 (5th Cir. 2018) .................................................................................... 32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 5

*Benningfield v. City of Houston*,
157 F.3d 369 (5th Cir. 1998) .................................................................................... 33

*Black v. N. Panola Sch. Dist.*,
461 F.3d 584 (5th Cir. 2006) .................................................................................... 29

*Blackburn v. City of Marshall*,
42 F.3d 925 (5th Cir. 1995) ................................................................................... 5, 8

*Cass v. City of Abilene*,
814 F.3d 721 (5th Cir. 2016) ................................................................................ 9, 28

*Chaplinsky v. New Hampshire*,
315 U.S. 568 (1942) .................................................................................................. 31

*Cinel v. Connick*,
15 F.3d 1338 (5th Cir. 1994) .................................................................................... 32

*Collier v. Montgomery*,
569 F.3d 214 (5th Cir. 2009) ...................................................................7

*Collins v. Bauer*,
No. 3:11-CV-00887-B, 2012 WL 443010 (N.D. Tex. Jan. 23, 2012) 2012 WL
444014 (N.D. Tex. Feb. 10, 2012)...........................................................33

*DeLaughter v. Woodall,*
909 F.3d 130 (5th Cir.  2018) ...................................................15, 16, 18

*Devenpeck v. Alford*,
543 U.S. 146 (2004)................................................................................27

*Firearms Policy Coalition, Inc. v McCraw*,
623 F. Supp. 3d 740 (N.D. Tex. 2022) ...................................................18

*Florida v. Royer*,
460 U.S. 491 (1983)............................................................................9, 22

*Foster v. City of Lake Jackson*,
28 F.3d 425 (5th Cir. 1994) ......................................................................7

*Gonzalez v. Kay*,
577 F.3d 600 (5th Cir. 2009) ....................................................................5

*Grisham v. Larry R. Smith, et al.*,
Civ. Action No. 6:25-cv-00194 (E.D. Tex. May 30, 2025 ...............17, 19

*Grisham v. Valenciano*,
93 F.4th 903 (5th Cir. 2024) ...................................................................20

*Haines v. Kerner*,
404 U.S. 519 (1972)..................................................................................5

*Hare v. City of Corinth, Miss.*,
135 F.3d 320 (5th Cir. 1998) ......................................................13, 23, 28

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)...............................................................................6, 7

*Hernandez v. Dallas County Sheriff*,
No. 3:23-CV-01583-E, 2024 WL 4202381 (N.D. Tex. Sept. 16, 2024)...............35

*Hilliard v. Ferguson*,
30 F.3d 649 (5th Cir. 1994) ...............................................................33, 34

*Hunter v. Bryant*,
502 U.S. 224 (1991)............................................................................ 7

*In the Matter of Life Partners Holdings, Inc.*,
926 F.3d 103 (5th Cir. 2019) ...............................................................34

*Indigenous Peoples of the Coastal Bend v. U.S. Army Corps of Eng'rs*,
132 F.4th 872 (5th Cir. 2025) ...........................................................31, 34

*Jimerson v. Lewis*,
94 F.4th 423 (5th Cir. 2024) .........................................................passim

*Jones v. Hosemann*,
812 F. App'x 235 (5th Cir. 2020) ........................................................ 9

*Joseph ex rel. Joseph v. Bartlett*,
981 F.3d 319 (5th Cir. 2020) ...........................................................15, 18

*Kentucky v. Graham*,
473 U.S. 159 (1985).......................................................................1, 2

*Malley v. Briggs*,
475 U.S. 335 (1986)......................................................................... 7

*Marucci Sports, L.L.C. v. NCAA*,
751 F.3d 368 (5th Cir. 2014) ...............................................................34

*Matter of Dallas Roadster, Ltd.*,
846 F.3d 112 (5th Cir. 2017) ...............................................................29

*McCutchan v. Nicholson*,
No. 25-10890, 2026 WL 938222 (5th Cir. April 7, 2026) ..................................18

*Meadours v. Ermel*,
483 F.3d 417 (5th Cir. 2007) ...........................................................9, 28

*Mendenhall v. Riser*,
213 F.3d 226 (5th Cir. 2000) .........................................................passim

*Monell v. Dep't of Soc. Servs. of City of New York*,
   436 U.S. 658 (1978) ................................................................................2

*Morrow v. Meachum*,
   917 F.3d 870 (5th Cir. 2019) ................................................................16

*Mullenix v. Luna*,
   577 U.S. 7 (2015) ....................................................................................7

*Navarette v. California*,
   572 U.S. 393 (2014) ..............................................................................24

*Nelson Radio & Supply Co. v. Motorola, Inc.*,
   200 F.2d 911 (5th Cir. 1953) ...........................................................32, 33

*New York State Rifle & Pistol Ass'n, Inc., v. Bruen*,
   597 U.S. 1 (2022) ..................................................................................18

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ...........................................................................6, 19

*Pfannstiel v. City of Marion*,
   918 F.2d 1178 (5th Cir. 1990) ..............................................................32

*Pratt v. Harris Cty.*,
   822 F.3d 174 (5th Cir. 2016) ..................................................................9

*Shemwell v. Cannon*,
   352 F. Supp. 3d 690 (N.D. Tex. 2019) ..................................................26

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
   509 F.3d 673 (5th Cir. 2007) ..................................................................8

*Stripling v. Jordan Prod. Co., LLC*,
   234 F.3d 863 (5th Cir. 2000) ................................................................35

*Strong v. United Petroleum Transports, Inc.*,
   No. 24-10701, 2025 WL 2238570 (5th Cir. Aug. 6, 2025) ..............31, 34

*Surratt v. McClarin*,
   851 F.3d 389 (5th Cir. 2017) .............................................................8, 11

*Swilley v. City of Houston*,
457 F. App'x 400 (5th Cir. 2012) ...................................................................33

*Terry v. Ohio*,
392 U.S. 1 (1968) ...............................................................................21, 22

Tex. Att'y Gen. Op. KP-0049 (2015) .................................................................18

Tex. Att'y Gen. Op. No. KP-0501 ................................................................16, 17

*Thompson v. City of Galveston*,
979 F. Supp. 504 (S.D. Tex. 1997) ..................................................................33

*Turner v. Driver,*
848 F.3d 678 (5th Cir. 2017) ...............................................................9, 22, 28, 31

*United States v. Abdo*,
733 F.3d 562 (5th Cir. 2013) ..........................................................................22

*United States v. Arvizu*,
534 U.S. 266 (2002)..................................................................................21, 24

*United States v. Cortez*,
449 U.S. 411 (1981)......................................................................................22

*United States v. Hensley,*
469 U.S. 221 (1985).................................................................................20, 22

*United States v. Sanders*,
994 F.2d 200 (5th Cir. 1993) ...............................................................9, 20, 22, 27

*United States v. Sokolow*,
490 U.S. 1 (1989).........................................................................................21

*Vincent v. City of Sulphur*,
805 F.3d 543 (5th Cir. 2015) .............................................................................8

*Walters v. McMahen*,
795 F. Supp. 2d 350 (D. Md. 2011)..................................................................33

*Westlake v. Luna*,
903 F.3d 534 (5th Cir. 2018) ......................................................................13, 23

*White v. Pauly*,
580 U.S. 73 (2017)................................................................................8, 11

*Wright v. McCain,*
703 F. App'x 281 (5th Cir. 2017) ...............................................................6

*Young v. City of Irving,*
No. 3:23-CV-1423-D, 2025 WL 888430 (N.D. Tex. Mar. 21, 2025)...................33

*Young v. City of Killeen*,
775 F.2d 1349 (5th Cir. 1985) .....................................................................7

Statutes

18 U.S.C. § 926C ...........................................................................11, 12

42 U.S.C. § 1983 ..................................................................................2

42 U.S.C. § 1985(3) .............................................................................34

Tex. Gov't Code § 402.010...................................................................18

Tex. Gov't Code § 411.205(1)...........................................................23, 30

Tex. Gov't Code § 411.207 ...................................................................24

Tex. Gov't Code § 411.207(a).........................................................19, 20, 24

Tex. Gov't Code § 411.209(a) .......................................................11, 14, 15

Tex. Occ. Code § 1701.051 ....................................................................2

Tex. Penal Code § 42.01(a)...................................................................26

Tex. Penal Code § 46.03 ...............................................................passim

Tex. Penal Code § 46.15 ......................................................................17

Tex. Penal Code § 46.15(a)(5).............................................................11, 12

Tex. Penal Code § 46.15(b)(6)............................................................10, 11

Texas Penal Code § 30.06 or § 30.07 ..................................................13, 14

Rules

Fed. R. App. P. 28(a)(8)(A) ...................................................................31, 34

Fed. R. Civ. P. 7(b)(1)(B) ...............................................................................35

Fed. R. Civ. P. 8 ...............................................................................................4

Fed. R. Civ. P. 8(a)(2) ......................................................................................5

Fed. R. Civ. P. 12(b)(6)...........................................................................passim

Fed. R. Civ. P. 15(a)........................................................................................35

Tex.  Disciplinary Rules of Prof'l Conduct R. 3.03(a)(4).........................32

COME NOW, the individual Deputy Defendants-Appellees, Chief Deputy Craig Driskell, Sergeant Orville George, Sergeant Michael Jauss, and Chief Deputy Jennifer Gabbert (collectively "Deputies", or individually named), by and through the undersigned counsel, and jointly file this their Defendants-Appellees' Brief and respectfully show this Court the following:

## STATEMENT OF JURISDICTION

The Deputies agree with Appellant C.J. Grisham's ("Grisham") jurisdictional statement. *Brief of Appellant*, p. 1.

## SUMMARY OF THE ARGUMENT

The trial court properly dismissed all of Grisham's claims against the individual Deputies because each of the Deputies is entitled to qualified immunity for actions that were objectively reasonable and did not violate clearly established law.[1] Fed. R. Civ. P. 12(b)(6). ROA.550 (opinion); ROA.553 (judgment).

## STATEMENT OF THE CASE

The Deputies agree generally with Grisham's Statement of the Case. Additionally, the Deputies and County Judge Tim O'Hare have each been sued in their individual and official capacities.[2] ROA.259-260, ¶¶ 6-10, 12. Driskell also

---

[1] The Court must accept as true only *well-pleaded* facts, but the Deputies, by identifying Plaintiff's alleged facts herein for purposes of this motion, do not admit Plaintiff's alleged facts.

[2] Official capacity claims against individual government employees are redundant claims against the employing government agency. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

1

has been sued in his supervisory capacity. ROA.259, ¶ 7.  Grisham has sued Tarrant County pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), but only for the alleged First and Second amendment violations, and for failure to supervise. *See* ROA.260, ¶ 11; ROA.288-292, ¶¶ 176-190; ROA.293-295, ¶¶ 198-211 (Counts IV and VI).

## STATEMENT OF FACTS

Grisham  sued five individual Defendants and Tarrant County, a political subdivision of the State of Texas, under 42 U.S.C. § 1983 for an alleged civil rights conspiracy and denial of his First, Second, Fourth, Ninth, and Fourteenth Amendment rights under the United States Constitution. ROA.257, ROA.282-85, ¶¶ 1, 126-211.

On January 14, 2025,  Grisham was in the audience of a Tarrant County Commissioners Court meeting when he left the courtroom for a restroom break. ROA.263, ¶¶ 23-24.  Grisham attempted to return to the meeting while carrying a handgun. ROA.263-264, ¶¶ 23-27. Defendant Chief Deputy Craig Driskell ("Driskell"), relying on guidance from the Texas Commission on Law Enforcement[3] ("TCOLE") that Grisham was *not* a qualified law enforcement officer, denied him

---

Therefore, this Court should dismiss the *official* capacity claims against the individual Defendants without any further analysis. *Kentucky*, 473 U.S. at 167 n.14; Fed. R. Civ. P. 12(b)(6).

[3] Texas Commission on Law Enforcement ("TCOLE") -- https://www.tcole.texas.gov/ -- State agency that licenses peace officers. S*ee also* Tex. Occ. Code § 1701.051.

entry with a weapon. ROA.264, ¶¶ 28-31. During a subsequent heated verbal exchange while surrounded by an agitated crowd, Grisham used profanity and failed to provide verifiable credentials allowing him to openly carry a handgun into the commissioners court. ROA.265, ¶¶ 36-37 *(see* photo at ROA.269 – Grisham with arms raised and wearing light-colored baseball cap). Grisham alleged he and Driskell, but no other Defendants, "were arguing over whether Grisham was who he claimed to be." ROA.267, ¶ 45. Grisham alleged that Driskell told Grisham TCOLE did not consider him to be a licensed peace officer. ROA.264, ¶¶ 30-31. Grisham also alleged that Defendant Driskell doubted his credentials, saying "I don't care. You can [generate] your own little badge and that's fine." ROA.264, ¶ 31; *see also* ROA.264, ¶ 30 (Driskell expressed doubt about Grisham's retired law enforcement status).

After Grisham was handcuffed, Defendant Chief Deputy Jennifer Gabbert ("Gabbert") ordered deputies to escort Grisham away from the crowd and into a room, where the Deputies were able to view his state license to carry a handgun ("LTC"). ROA.270, ¶¶ 54-58. However, Grisham does not allege that he showed his credentials to the Defendants at that time or that they actually saw his credentials; he only alleges that Defendants "were *able to view* his LTC and retired law enforcement credentials since they are kept together in his wallet." ROA.270, ¶¶ 56-57 (emphasis added). After forty minutes, Grisham was released without any

charges being filed against him. ROA.270, ROA.272, ¶¶ 59, 65.  Grisham did not return to the commissioners court meeting that day. ROA.272, ¶¶ at 65-67.

On January 28, 2025,  Grisham, again while carrying a handgun, visited the Commissioners court for another public meeting. ROA.273, ¶¶ 72-73. After ignoring Defendant Sergeant Orville George ("George") outside of the courtroom,  Grisham alleges he was physically blocked and restrained by George until he produced his LTC, after which he was allowed entry into the public meeting. ROA.274-277, ¶¶ 78-84, 97.

Later, while speaking to commissioners court during public comments before a vote on the adoption of proposed rules of decorum, Grisham addressed another matter and used profanity. ROA.277, ROA.279, ¶¶ 98, 106-10. Defendant County Judge Tim O'Hare ("O'Hare") ordered Grisham to be removed immediately for using vulgar profanity in a limited public forum. ROA.279-280, ¶¶ 109, 117 ("Plaintiff was escorted out of the chambers under threat of arrest for repeating what he told the Sheriff in an expressive way.").

## STANDARD OF REVIEW
### I.      Motion to Dismiss

Federal Rule of Civil Procedure 8's notice pleading standard requires a plaintiff "to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Alexander v. S. Health Partners, Inc.*, No.

4

3:22-CV-0395-X, 2023 WL 3961704, at *8-9 (N.D. Tex. June 12, 2023); Fed. R. Civ. P. 8(a)(2). Grisham has failed to adequately allege any claims against the individual Deputies according to the well-established pleading standard.

To avoid a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This demands more than alleging that "the-defendant-unlawfully-harmed-me ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). Claims must include enough factual allegations "to raise a right to relief above the speculative level ...." *Twombly*, 550 U.S. at 555.

"Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

*Pro se* plaintiffs' complaints are liberally construed in the plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, as a licensed attorney who represents himself in this matter, Grisham is held to a higher standard than an

5

unlicensed or uneducated *pro se* litigant. *Wright v. McCain,* 703 F. App'x 281, 284 (5th Cir. 2017).

## II. Qualified Immunity

Each of the individual Defendant deputies - Driskell, Gabbert, George and Jauss - is now and was, at all relevant times alleged in the First Amended Complaint, a Sheriff's Deputy employed by Tarrant County. ROA.259-260, ¶¶ 7-10. As such, each Defendant deputy asserted his or her entitlement to qualified immunity in this case.

Analysis of a qualified immunity claim involves the determination of: (1) whether the plaintiff alleged a violation of a clearly established constitutional right, and (2) whether, at the time of the alleged violation, the right was so clearly established a reasonable official in the defendant's situation would have understood that his conduct violated the right. *Pearson v. Callahan*, 555 U.S. 223, 244 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 637-41 (1987). Which of the two prongs of the qualified immunity analysis should be addressed first is left to the discretion of the court in light of the circumstances in the case. *Pearson,* 555 U.S. at 236.

In *Harlow*, the Supreme Court explained that a key question is "whether that law was clearly established at the time an action occurred," because if the law at that time was not clearly established, an official could not reasonably be expected to

anticipate subsequent legal developments, nor could he fairly be said to know that the law forbade conduct not previously identified as unlawful. 457 U.S. at 818. *See also Anderson*, 483 U.S. at 640. Individual liability turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is designed to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341; *Hunter*, 502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Furthermore, even if the official could have handled the situation better, it will not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

Qualified immunity is the rule, not the exception. *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). Although nominally an affirmative defense, Grisham has the burden to negate the assertion of qualified immunity once properly raised. *Collier v. Montgomery*, 569 F.3d 214, 217-18 (5th Cir. 2009). A plaintiff seeking to overcome qualified immunity must plead specific facts that both

allow the court to draw that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity. *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020).

The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *White v. Pauly*, 580 U.S. 73, 79 (2017). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality but must be particularized to the facts of the case. *Id*. at 79. As a result, failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat Grisham's ability to overcome a qualified immunity defense. *White*, 580 U.S. at 79; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79; *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Furthermore, the complaint must specify the acts of the defendants *individually*, not collectively, to meet federal pleading

standards. *Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016); *Pratt v. Harris Cty.*, 822 F.3d 174, 181 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007); *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020).

**ARGUMENT**

**III. Trial Court Properly Dismissed Grisham's Second Amendment Claims Against the Deputies.**

The district court correctly analyzed the issues in this case and determined that Grisham failed to defeat the Deputies' qualified immunity, holding that their actions were reasonable under the totality of the circumstances. ROA.548-549. *See United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993); *Turner v. Driver,* 848 F.3d 678, 693 (5th Cir. 2017) (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

The encounter on January 14, 2025, began when Chief Driskell, familiar with Grisham's propensity to be armed, asked him if he was carrying a handgun, and Grisham replied, "I'm always packing. You know that Chief." ROA.264, ¶ 27. Clearly believing that Grisham was *not* entitled to carry a weapon into the commissioners court meeting, Chief Driskell advised Grisham that he would not be allowed to return as long as he remained armed. ROA.264, ¶ 28.

At this point, it is entirely likely that a calm explanation from Grisham that he held an LTC, along with proof of that license, would have resulted in him returning to the meeting with no further delay. This scenario is most probable because that outcome is exactly what happened at the very next commissioners court meeting on January 28,

2025, when Grisham was asked to show his LTC, and he did – after some initial resistance; he was then allowed to enter the meeting with his handgun, pursuant to the exception in Tex. Penal Code § 46.15(b)(6) (LTC holder). ROA.277, ¶ 97.

However, at the first meeting on January 14, 2025, that is *not* how things unfolded. Instead, Grisham immediately and aggressively countered Chief Driskell's admonition. The district court accurately detailed the escalating encounter:

> Grisham, upon approaching Driskell, began to have a dispute about whether he was able to carry a firearm into the TCCC meeting space. *The two were in obvious and apparent disagreement.* Driskell informed Grisham that under then-current guidance from TCOLE, Grisham was not recognized as qualified law enforcement. Rather than acquiesce to the guidance of law enforcement, however erroneous he believed them to be, Grisham admits that he became noticeably angry and confrontational.

ROA.547 (emphasis added). After the Deputies handcuffed Grisham and gained control of the situation, they moved Grisham to a back hallway, where Grisham appealed to the just-arrived Sheriff for his release. ROA.270, ¶¶ 54-55. Because Grisham agreed to leave the premises rather than return to the meeting without his handgun, the Sheriff released Grisham and he left the building with his gun. ROA.272, ¶¶ 65-66. Therefore, no Second Amendment violation occurred. ROA.548.

### A. LEOSA

Grisham asserts that his status as an "LEOSA" was critical to the court's analysis because, if he qualified for that exception to Tex. Penal Code § 46.03, "the entire premise of the Deputies' conduct – that he was unlawfully armed —

collapses."[4] *Brief of Appellant*, p. 27. Grisham overstates the importance of his LEOSA status.

The district court correctly determined that Grisham's entitlement to invoke 18 U.S.C. § 926C (an exception to § 46.03) is a legal conclusion that must be disregarded at this stage. ROA.545. Additionally, the court declined to evaluate this issue further because Grisham also invoked an exception for an LTC holder. ROA.545. However, the district court's refusal to address Grisham's LEOSA status did not constitute reversible error because the primary issue in this qualified immunity analysis is whether the Deputies' actions constituted a violation of Grisham's constitutional right that was clearly established at the time. *White*, 580 U.S. at 79 (plaintiff must identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights); *Surratt*, 851 F.3d at 392.

Grisham's First Amended Complaint established that Chief Driskell genuinely did *not* believe that Grisham was entitled to invoke the LEOSA exception because Driskell previously had determined directly from TCOLE that Grisham was

---

[4] A retired federal law enforcement officer —"LEOSA," in Grisham's parlance – is allowed to carry a handgun into a public meeting pursuant to Tex. Penal Code § 46.15(a)(5), and an LTC holder is allowed to carry a handgun into a public meeting pursuant to Tex. Penal Code § 46.15(b)(6). *See* Tex. Gov't Code § 411.209(a).

not qualified as a law enforcement officer.[5] ROA.264, ¶ 30. Chief Driskell specifically told Grisham that he did not consider Grisham to be a licensed peace officer. ROA.264, ¶¶ 30-32. Grisham even alleged in his First Amended Complaint that Driskell believed his credentials were fake, stating "I don't care. You can [generate] your own little badge and that's fine." ROA.264, ¶¶ 31-32. Therefore, Grisham's own First Amended Complaint establishes that Driskell did *not* believe Grisham's claimed status as a retired law enforcement officer. ROA.264, ¶¶ 30-32.

The district court correctly noted that, "[f]rom the facts in the complaint, it is not evident what credentials, if any, Grisham was carrying at the moment he began to disagree with Driskell's understanding of 18 U.S.C. § 926C." ROA.547. "[T]he facts as alleged demonstrate that Driskell was not objectively unreasonable in believing that Grisham was violating the laws prohibiting the carrying of firearms into the meeting." ROA.548.

Even if Grisham was a law enforcement officer pursuant to 18 U.S.C. § 926C on January 14, 2025, and entitled to carry pursuant to the exception in Section 46.15(a)(5) (for LEOSA), the Deputies' actions were reasonable in light of Driskell's legitimate belief that Grisham was not entitled to invoke the retired law

---

[5] Grisham's Second Amendment allegations on January 14, 2025, focus primarily on his encounter with Chief Driskell, and the actions of Chief Gabbert and Sergeant George were negligible. *Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024) (plaintiff must identify each defendant's personal involvement in the alleged wrongdoing). The district court correctly observed that Sergeant Jauss was not alleged to be involved in the January 14, 2025, encounter with Plaintiff. ROA.538-539.

enforcement officer exception. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000), *reh'g denied en banc*, 226 F.3d 645 (5th Cir. 2000) (officers entitled to qualified immunity even if they were mistaken but acted reasonably); *Hare v. City of Corinth, Miss.,* 135 F.3d 320, 325 (5th Cir. 1998); *Westlake v. Luna*, 903 F.3d 534, 543-44 (5th Cir. 2018); *Jimerson v. Lewis,* 94 F.4[th] 423, 430 5th Cir. 2024) (officer who made significant efforts to identify the correct residence but was still mistaken entitled to qualified immunity). Even if the Deputies were mistaken, they were reasonable in believing their actions were justified. *See* ROA.263-264, ROA.270, ROA.273, ¶¶ 25, 27-31, 54, 60, 64-66. *Mendenhall*, 213 F.3d at 230; *Hare,* 135 F.3d at 325; *Westlake*, 903 F.3d at 543-44; *Jimerson*, 94 F.4[th] at 430.

Therefore, any analysis by the district court of the LEOSA exception would have reached the same conclusion:  Grisham has failed to defeat the Deputies' assertion of qualified immunity because their actions were not clearly established as being unreasonable. ROA.549. As a result, the district court did not commit reversible error by refusing to analyze  Grisham's assertion of an LEOSA exception, and the court's opinion should be affirmed. ROA.545-546.

### B.    Grisham's invocation of Section 30.06 and 30.07 signage is irrelevant.

Grisham also contends that Tarrant County did not provide adequate notice that handguns were prohibited from the commissioners court meeting because there were no signs in compliance with Texas Penal Code § 30.06 or § 30.07. *See* ROA.400-401.

Therefore, Grisham argues that any dispute over the signage outside commissioners court creates a fact issue that cannot be resolved at the Rule 12(b)(6) stage. *Brief of Appellant*, pp. 28-29.

Grisham's signage argument has no impact on the Deputies' entitlement to qualified immunity. Even if Tarrant County had posted signs outside the commissioners courtroom that complied with Sections 30.06 and 30.07, a person with a license to carry pursuant to Chapter 411 of the Government Code still would have been permitted to enter the open public meeting with a handgun. *See* Tex. Gov't Code § 411.209(a) (". . . a political subdivision of the state *may not take any action*, including an action consisting of the provision of notice by a communication described by Section 30.06 or 30.07, Penal Code, *that states or implies that a license holder who is carrying a handgun under the authority of this subchapter is prohibited from entering* or remaining on a premises or other place owned or leased by the governmental entity unless license holders are prohibited from carrying a handgun on the premises or other place by Section 46.03, Penal Code, or other law.") (emphasis added).

The district court correctly held that Texas law prohibits someone from carrying a handgun into an open public meeting *unless* that person is excepted from the general prohibition in § 46.03. ROA.543. The parties agree that there are exceptions for: (1) an LTC holder; and (2) a retired law enforcement officer. *See Brief of Appellant*, pp. 27-29. The district court also correctly held that Chief Driskell did *not* believe that Grisham

qualified as a retired law enforcement officer because he had checked with TCOLE following a previous encounter with Grisham, and TCOLE disputed Grisham's status as having the proper credentials. *See* ROA.547.

If Grisham had established that he was an LTC holder, he would have been permitted to carry a holstered handgun into the commissioners court meeting regardless of what signage was posted.[6] However, Grisham never sufficiently alleged that, amidst the chaos, the Deputies were able to determine that Grisham actually had an LTC before he agreed to leave the premises with his handgun. ROA.272, ¶¶ 64-67; ROA.547. As a result, the Deputies' actions on January 14, 2025, were certainly reasonable, and the district court correctly held that Grisham failed to defeat the Deputies' assertion of qualified immunity. ROA.547-549. *See DeLaughter v. Woodall,* 909 F.3d 130, 139 (5th Cir. 2018) ("clearly established" is determined by reference to "controlling authority[,] or a robust consensus of persuasive authority."); *Jimerson*, 94 F.4th at 429 (quoting *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) ("To overcome qualified immunity, plaintiffs must cite 'a body of relevant case law [] in which an

---

[6] Appellees respectfully disagree with the district court's opinion and with Grisham to the extent they both suggest that *any* prohibitive signage is relevant to this case. *See* ROA.546 ("However, posted signage . . . would address this exception, *forbidding even an LTC holder from carrying into the meeting*.") (emphasis added). Rather, as long as the commissioners court meeting was properly noticed pursuant to the Open Meetings Act, handguns were prohibited – *unless* an exception to § 46.03's prohibition was satisfied. *See* Tex. Gov't Code § 411.209(a).

officer acting under similar circumstances . . . was held to have violated' a defendant's constitutional rights.").

The real issue underlying Grisham's Second Amendment claim with respect to the Deputies' actions on January 14, 2025, is whether, according to Grisham's well-pleaded allegations, the Deputies reasonably believed that Grisham was *prohibited* from entering the commissioners court meeting with a handgun: "The 'central concern' when evaluating the immunity question 'is whether the official has fair warning that his conduct violates a constitutional right.'" *Jimerson*, 94 F.4th at 430 (quoting *Delaughter*, 909 F.3d at 140). "That means the 'dispositive question is whether the violative nature of *particular* conduct is clearly established.'" *Jimerson,* 94 F.4th at 430 (quoting *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (emphasis in original)).

The scope of right-to-carry handguns inside governmental buildings has perplexed courts, public entities and law enforcement officers for the past 30 years, when the Texas Legislature began revising various statutes affecting the possession of handguns in public. The Texas Attorney General recently summarized this history and acknowledged that one of its own opinions on the topic has been misinterpreted, which prompted the Attorney General to withdraw KP-0108 due to outdated statements contained therein. *See* Tex. Att'y Gen. Op. No. KP-0501, p. 5 n.3 (2025). In its KP-0501 opinion from October 29, 2025, which was *after* the incidents at issue

16

here, the Texas Attorney General found it necessary to clarify for a Texas district attorney's office that the individuals listed in Tex. Penal Code § 46.15 - which would include law enforcement officers and LTC holders - need not seek leave from a prohibition that does not apply in the first instance. *See* Tex. Att'y Gen. Op., KP-0501 at 5 n.3 (noting that its opinion in KP-0108 had led to confusion regarding the premises where LTC holders may carry handguns).

Despite the repeated focus on this issue, governmental entities and law enforcement officers continue to struggle with determining when handguns are allowed in public meetings.[7] Even Grisham currently has a similar lawsuit pending against Smith County, which apparently occurred after the Tarrant County incident in this case. *See Grisham v. Larry R. Smith, et al.*, Civ. Action No. 6:25-cv-00194 (E.D. Tex. May 30, 2025). These persistent issues illustrate that Second Amendment rights in the context of courts and open meetings remain unclear for those charged with maintaining security in public buildings, and the Deputies' actions on January 14, 2025, were not clearly established as a violation of Grisham's Second

---

[7] *See* https://www.kiiitv.com/article/news/local/texas-ag-forces-corpus-christi-to-allow-license-to-carry-guns-at-city-council/503-372a8f5f-c330-486c-aa55-d188a4af8a4; https://news4sanantonio.com/news/local/san-antonio-removes-handgun-ban-signs-at-city-hall-after-texas-ag-warning-attorney-general-license.

Amendment rights.[8]   *DeLaughter,* 909 F.3d at 140; *Bartlett,* 981 F.3d at 330; *Jimerson*, 94 F.4th at 430.

Therefore, Grisham failed to state a claim under the Second Amendment that will defeat qualified immunity. ROA.549. *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

**C.     *Bruen* analysis (i) is not necessary; and (ii) the court did apply it.**

Grisham's additional argument that the district court failed to conduct a historical analysis pursuant to *New York State Rifle & Pistol Ass'n, Inc., v. Bruen,* 597 U.S. 1 (2022) also misses the mark because there is no constitutional challenge to a statute in this case.[9]

The parties agree that, if a person qualifies under specific statutory exceptions, he or she may carry a handgun into a public meeting of the commissioners court. *Brief of Appellant*, pp. 27-29. As a result, there was no need to determine whether any governmental statute or ordinance "is consistent with the Nation's historical tradition of firearm regulation." ROA.542. *See also Firearms Policy Coalition, Inc.*

---

[8] Tex. Att'y Gen. Op. KP-0049 (2015) at 2 ("Opinion KP-0047 concluded that ***although the full scope of subsection 46.03(a)(3) is unclear***, it is at least clear that the Legislature intended to prohibit concealed handguns from government courtrooms and the offices essential to the operation of the courts.") (emphasis added).

[9] If this case involved a challenge to the constitutionality of a penal statute, as in *Bruen*, then the Texas Attorney General would have been a necessary party. Tex. Gov't Code § 402.010; *McCutchan v. Nicholson*, No. 25-10890, 2026 WL 938222, *1 (5th Cir. April 7, 2026) (5th Cir. April 7, 2026) (Attorney General intervened to defend constitutionality of state statute).

*v McCraw*, 623 F. Supp. 3d 740, 745 (N.D. Tex. 2022) (applying *Bruen* analysis in challenge to statutory prohibition against citizens under age 21 carrying firearms). Rather, the district court only had to address a straightforward question of qualified immunity: was a constitutional right violated, and was that right clearly established at the time? ROA.548-549. *See also Pearson*, 555 U.S. at 244.

Perhaps Grisham has confused this case with another pending matter that he has filed against Smith County because he refers to an internal policy of the **Smith County Sheriff's Office** as the source of any unconstitutional harm against him. *See Brief of Appellant*, p. 31. *See also Grisham v. Larry R. Smith, et al.*, Civ. Action No. 6:25-cv-00194 (E.D. Tex. May 30, 2025) (Grisham invokes the same LEOSA and LTC exceptions after Smith County deputies prevented him from carrying a firearm into the Smith County courthouse).

Here in **Tarrant County**, Grisham's inexplicable overreaction to Chief Driskell's comment about not returning to the courtroom while armed transformed the initial right-to-carry investigation into a flash point that required immediate and decisive action from the Deputies to quash a burgeoning riot.[10] Section 411.207 allowed the Deputies to disarm Grisham if they believed it was necessary for the protection of the Plaintiff, the Deputies, or any other individual. *See* Tex. Gov't Code §

---

[10] The Deputies correctly perceived Grisham's loud, animated recalcitrance as threatening to incite a riot, and Grisham concedes that another person among the crowd gathering around the spectacle, ROA.269, was arrested for disorderly conduct during the encounter. *Brief of Appellant*, pp. 34-35.

411.207(a). *See also United States v. Hensley,* 469 U.S. 221, 235 (1985) (officers may take steps necessary to protect their safety and to maintain the status quo during a stop). The district court properly decided that the "'relevant facts and circumstances here were sufficient for a reasonable officer to believe'" that Grisham was acting 'with the requisite specific intent' to engage in disorderly conduct." ROA.549 (citing *Grisham v. Valenciano*, 93 F.4th 903, 911 (5th Cir. 2024)).

Even though a true historical analysis was not necessary, the district court found that Grisham's insistence of his right to carry at a public meeting "goes against the so-called 'sensitive places' doctrine articulated by the Supreme Court in *Bruen*." ROA.541-542 (applying *Bruen* to Tex. Penal Code § 46.03, et al.).

Therefore, the Deputies' inquiry into Grisham's ability to carry a handgun into a public meeting on January 14, 2025, was legally permissible under the circumstances, and Grisham suffered no Second Amendment violation. *Sanders*, 994 F.2d at 206.

### D. The court properly dismissed Grisham's Second Amendment claim from January 28, 2025.

Grisham failed to assert any Second Amendment injury at the meeting on January 28, 2025, because Grisham eventually produced his LTC at that meeting, as requested by the Deputies. ROA.274, ROA.276, ROA.277, ¶¶ 78, 84-85, 97. The Deputies were entitled to request that Grisham show his LTC license. Tex. Gov't Code § 411.207(a). Then, Grisham was allowed into the meeting with his handgun. ROA.277, ¶ 97. *See* Tex. Gov't Code § 411.207(a). As a result, under the totality of

circumstances, the Deputies' actions on both dates were objectively reasonable and did not violate clearly established law. ROA.548-549.

## IV. Trial Court Properly Dismissed  Grisham's Fourth Amendment Claims Against the Deputies.

Grisham also did not adequately allege a Fourth Amendment violation during either commissioners court meeting. ROA.547-549.

### A. Trial court properly dismissed the Fourth Amendment claims for the encounter on January 14, 2025.

 Grisham alleges the Deputies unlawfully seized him on January 14, 2025, after he attempted to return to the commissioners court meeting following a restroom break. ROA.263, 282-283, ¶¶ 23-25, 128, 131-33. However, reasonable suspicion existed to detain  Grisham due to his actions in response to Driskell's permissible inquiry about his possession of a handgun and  Grisham's virulent response thereto. ROA.263, 264, 267, ¶¶ 25, 27-31, 45.

It is well settled that the police may stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that a crime "may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The court must look to the totality of circumstances to determine whether the detaining officer has a "particularized and objective basis" to suspect legal wrongdoing, while considering only the information available to the officers at the time of detention. *United States*

*v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)) (citations omitted).

An investigative detention must be temporary and last no longer than necessary to effectuate the stop's purpose. *Turner,* 848 F.3d at 693 (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983)). "The police may take reasonable actions under the circumstances to ensure their own safety, as well as the safety of the public, during an encounter with a suspect." *United States v. Abdo*, 733 F.3d 562, 565 (5th Cir. 2013) (quoting *Terry*, 392 U.S. at 30) (police may take "swift measures to discover the true facts and neutralize the threat of harm.")); *see also v. Hensley,* 469 U.S. at 235. An investigatory detention does not automatically become an arrest requiring probable cause when law enforcement uses force or places a suspect in handcuffs. *Turner*, 848 F.3d at 693. Whether an investigative stop amounts to an arrest is determined on a case-by-case basis, and it is "always one of reasonableness under the circumstances." *Sanders*, 994 F.2d at 206.

The Deputies had valid reasons to detain  Grisham, first as he attempted to return to commissioners court with a handgun, and then as he engaged in conduct that arguably constituted disturbing the peace. ROA.547-549. *Sanders*, 994 F.2d at 206.

### 1. Texas law required Grisham to present his LTC.

Grisham alleged the Deputies had no legal authority to detain him regarding his possession of a handgun in a public meeting. ROA.267, ROA.268, ROA.276, ¶¶ 46, 50-51, 87, 90. Grisham failed to plausibly allege that Driskell's reliance on TCOLE was unreasonable or mistaken. *Mendenhall*, 213 F.3d at 230; *Hare,* 135 F.3d at 325; *Westlake*, 903 F.3d at 543-44; *Jimerson*, 94 F.4th at 430. Additionally, although Grisham claimed he *informed* Driskell that he had an LTC, he did not specifically allege that he *physically* presented his license to Driskell at that time, as required by Tex. Gov't Code § 411.205(1). *See* ROA.264-265, ¶¶ 32-33, 35, 56 ("[the Deputies] took [ Grisham's] wallet and were *able* to view his LTC and retired law enforcement credentials since they were kept together in his wallet.") (emphasis added). Grisham also alleged that "he voluntarily provided his identification," but he does not identify the individual Deputies to whom he specifically presented either his LTC or his law enforcement officer credentials, or whether he did so during the January 14, 2025, encounter. ROA.267, ¶ 48; *see Jimerson*, 94 F.4th at 428 (Plaintiff seeking to overcome qualified immunity must specifically identify each defendant's personal involvement in the alleged wrongdoing). Finally, Grisham alleged that "Defendant Driskell refused to look at Grisham's credentials," which controverts

23

any suggestion that the Deputies actually read his LTC or law enforcement credentials. ROA.265, ¶ 33.

Section 411.207 provides that "[a] peace officer who is acting in the lawful discharge of the officer's official duties may disarm a license holder at any time the officer reasonably believes it is necessary for the protection of the license holder, officer, or another individual." *See* Tex. Gov't Code § 411.207(a). "The peace officer shall return the handgun to the license holder before discharging the license holder from the scene if the officer determines that the license holder is not a threat . . . ." *Id.,* at § 411.207(a).

Here, Grisham never alleged that any of the Deputies knew for certain that he was currently exempt, nor can he speculate about what they knew, especially when he actually alleged that Driskell said the Grisham was not recognized as a peace officer by TCOLE. ROA.264, ¶¶ 29-31 (Driskell impliedly chose to trust TCOLE's statement that Grisham was not currently a law enforcement officer).

Based on the totality of the circumstances surrounding their encounter with Grisham outside of the commissioners courtroom on January 14, 2025, the Deputies were justified in detaining Grisham and disarming him, temporarily, to determine if he was violating Chapter 411 or any criminal laws. *See Navarette v. California*, 572 U.S. 393, 397 (2014) (courts must consider the totality of circumstances to determine whether an officer could infer that a particular suspect acted or was about to act unlawfully); *Arvizu*, 534 U.S. at 273. Grisham never unequivocally produced his LTC upon request until

24

the January 28 meeting. ROA.277, ¶ 97. When Grisham decided to leave the premises after appealing to Sheriff Waybourn, the interaction between Grisham and the Deputies concluded, and he departed without further incident, with his handgun. ROA.272, ¶¶ 64-67.

Therefore, Grisham's open carrying of a handgun constituted a lawful basis for an investigatory stop, and his reluctance to produce his LTC during the January 14, 2025, encounter was sufficient, at a minimum, to support Grisham's temporary detention during the Deputies' investigation. ROA.263-264, ROA.270, ¶¶ 25, 27-31, 54 ( Grisham alleged that Driskell ordered him to be handcuffed for UCW); ROA.270, ¶ 60 (Gabbert stated that the law had changed, which prohibited Grisham from carrying a weapon into the meeting); ROA.272, ¶¶ 64-65 (detention lasted no longer than reasonably necessary). *See Mendenhall*, 213 F.3d at 230. This scenario does not plausibly allege a false arrest under the Fourth Amendment. ROA.548-549. *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

### 2. *Grisham's actions reasonably constituted disorderly conduct.*

Grisham's vulgar comments in the hall outside of commissioners court also justified the Deputies' continued detention of Grisham and prolonged their investigation of his possible criminal conduct. ROA.265, ROA.269, ROA.270-271, ROA.272, ¶¶ 36-37, 52, 54-62, 64-66. Grisham's profane outbursts on January 14, 2025 — "Read the fucking law, chief" and "don't fucking touch me"—occurred in

a public setting where tensions were escalated by Grisham's own words and actions while surrounded by an agitated crowd. ROA.265, ROA.269, ¶¶ 36-37, 52 (*see* photo at ROA.269).

Texas law authorizes its peace officers to make a warrantless arrest for any offense that is committed against the public peace in the peace officer's presence. *See* Tex. Crim. Proc. Code § 14.01(a). A person commits disorderly conduct if he intentionally or knowingly:

> '(1) uses abusive, indecent, **profane**, or **vulgar** language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace; . . . or '(8) **displays a firearm** or other deadly weapon in a public place in a manner calculated to alarm[.]'

Tex. Penal Code § 42.01(a) (emphasis added). While investigating Grisham's possession of a handgun in a public meeting, Driskell attempted to de-escalate tensions by informing Grisham that he could be arrested for disorderly conduct for yelling profanities in a public place. ROA.265, ¶¶ 36-37. Moreover, Grisham's failure to provide his LTC credentials to the Deputies when requested arguably violated subsection (8) of the disorderly conduct statute after Driskell informed Grisham that his retired federal credentials were not recognized by TCOLE, the State's licensing authority for peace officers. ROA.264, ¶¶ 30-31. *See Shemwell v. Cannon*, 352 F. Supp. 3d 690, 701 (N.D. Tex. 2019) (existence of probable cause for any offense, including one not charged, is sufficient to defeat a § 1983 false arrest

claim) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004)); *Sanders*, 994 F.2d at 206.

Because a state statute authorized a warrantless arrest of Grisham, the Deputies' actions were not clearly unconstitutional, and the district court's dismissal under Rule 12(b)(6) was appropriate. ROA.550. As the district court stated, "the entirety of Grisham's pleaded conduct in the hallway with Driskell was sufficient to create probable cause that Grisham was inciting an immediate breach of the peace." ROA.548. "The Court does not understand how directing expletives at law enforcement officers, while armed [*a fact known by the Deputies*], after refusing to produce any competent evidence that one can lawfully carry, could be anything other than unlawful disorderly conduct." ROA.548.

Grisham's profanity-laced outbursts in a public place while surrounded by an agitated crowd, Driskell's prior communications with TCOLE concerning Grisham's status as a police officer, and the confusion about Grisham's LTC collectively gave rise to reasonable suspicion and probable cause for a brief investigatory detention on January 14, 2025. ROA.263, ROA.265-265, ROA.272, ¶¶ 25, 27-33, 35-36, 65-67 (including photo on ROA.269); *see Sanders*, 994 F.2d at 206; *Mendenhall*, 213 F.3d at 230. The Deputies possessed specific, articulable facts giving rise to reasonable suspicion and probable cause that Grisham was attempting to unlawfully carry a handgun into the commissioners court, which led to an

additional investigation into Grisham possibly disturbing the peace. ROA.263, ROA.264-265, ROA.265, ROA.270, ¶¶ 25, 27-33, 35-37, 54-55. *See also Turner*, 848 F.3d at 693-94. Grisham's detention was no longer than reasonably necessary, and the Deputies' actions were objectively reasonable and did not violate clearly established law. *Id.* at 693-94.

Grisham has failed to identify any authorities to establish that the Defendants' actions would violate his constitutional rights. *Cass*, 814 F.3d at 730-31; *Meadours*, 483 F.3d at 421-22. Therefore, even if the Deputies were mistaken, they were reasonable in believing their actions were justified. *Mendenhall*, 213 F.3d at 230; *Hare,* 135 F.3d at 325; *Jimerson*, 94 F.4th at 430. Accordingly, Grisham failed to defeat qualified immunity for the detention on January 14, 2025, and the dismissal should be affirmed. *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

**B.** **Trial court properly dismissed the Fourth Amendment claims for the encounter on January 28, 2025.**

The district court noted that Grisham did not articulate a claim based on alleged excessive use of force. ROA.539, n.4. Although Grisham's First Amended Complaint contains remnants of his earlier allegations of excessive force, it is clear from the caption to Count I that Grisham waived any claim of excessive force against the individual Defendant deputies; he only asserts a Fourth Amendment claim for "False Imprisonment/Unlawful Arrest." ROA.282-284, ¶¶ 126-47. Furthermore, in response to a motion to dismiss the Original Complaint, Grisham

clearly stated, "**Plaintiff hereby abandons his excessive force [claim] as to all Defendants.**" ROA.215, p. 27, ¶ 4 (emphasis added). *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff] further failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss."); *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017). As a result, Grisham has expressly abandoned any excessive force claim against the Deputies for the January 28 incident, and his attempt to resuscitate that claim in his brief should be rejected. *Brief of Appellant*, pp. 41-42. ROA.282-284, ¶¶ 126-47; ROA.549-550.

Grisham purportedly claims a Fourth Amendment violation for "unlawful detention" arising from his interaction with the Deputies before entering the commissioners court meeting on January 28, 2025. *Brief of Appellant*, p. 42. *See* ROA.279, ROA.280, ROA.282, ROA.286, ¶¶ 109, 117 129, 157. *See also* ROA.273-281, ¶¶ 72-125. According to this argument, the Deputies had no reasonable suspicion of possible criminal activity to stop Grisham on January 28, 2025; therefore, the inquiry about his LTC was unlawful. *Brief of Appellant*, p. 42.

Grisham was statutorily required to produce his driver's license and LTC upon request by police, and the district court correctly held that "[t]here is no requirement that Grisham be lawfully arrested *before* having to produce evidence that he is licensed to carry." ROA.547 (emphasis added). Grisham cites no authority

to support his argument that the Deputies had to have reasonable suspicion of criminal activity before they could ask to see his LTC. *Brief of Appellant*, p. 42. Given Grisham's statement two weeks prior that he was "always packing," ROA.264, ¶ 27, the Deputies were justifiably diligent in asking Grisham for proof of his LTC. Tex. Gov't Code § 411.205(1). As the court stated, "[o]nce Grisham decided to comply with the requirements of the law, he was released from police custody and allowed to carry his firearm into the meeting." ROA.549. As a result, "Grisham fails to establish that any of the Deputies violated his rights on January 28." ROA.549. The dismissal of Grisham's Fourth Amendment claims from January 28, 2025, should be affirmed. ROA.548-549.

**V.     Trial Court Properly Dismissed  Grisham's First Amendment Claims Against Deputies.**

The court framed the First Amendment claim against the Deputies on January 14, 2025, as arising from the Deputies' allegedly "unlawful arrest." ROA.540. The court held that, "it does not appear that the Deputies interfered with Grisham's First Amendment rights at the January 14 meeting." ROA.547.  Grisham asserts in his brief that his "invocation of profanity in the context of asserting a legal right to a law enforcement officer falls squarely within the zone of protected speech . . . ," suggesting that his cursing outside the commissioners court on January 14, 2025, constitutes the basis of his First Amendment claim against the Deputies. *Brief of Appellant*, p. 34. However,  Grisham never alleged this conduct as being protected

speech before asserting it for the first time in his brief. ROA.285-287, ¶¶ 148-165. In his reply to the Deputies' Motion to Dismiss First Amended Complaint, Grisham specifically focused on Judge O'Hare's order that Grisham be removed after cursing during his public comment as the basis of his First Amendment claim on January 28, 2025, not his cursing on January 14, 2025. *See* ROA.469-475, ROA.540, ROA.547. Additionally, Grisham's profanity-laced tirade on January 14, 2025, is not entitled to First Amendment protection. *Chaplinksky v. New Hampshire*, 315 U.S. 568, 571-72 (1942). Therefore, this last-ditch argument should be rejected. ROA.547.

Grisham arguably asserted a First Amendment claim against the Deputies from January 14, 2025, related to an alleged prohibition against filming public officials in the course of their public duties, but that claim was never plausibly alleged.[11] ROA.270, ROA.286, ¶¶ 58, 158, 160. Grisham has abandoned that claim by not including it in his brief. *See Strong v. United Petroleum Transports, Inc.*, No. 24-10701, 2025 WL 2238570, at *1 (5th Cir. Aug. 6, 2025) (per curiam) (failure to brief); *Indigenous Peoples of the Coastal Bend v. U.S. Army Corps of Eng'rs*, 132 F.4th 872, 884 (5th Cir. 2025) (any issue not raised in appellant's opening brief is forfeited); Fed. R. App. P. 28(a)(8)(A).

---

[11] In *Turner v. Driver*, the Fifth Circuit recognized that citizens have a First Amendment right to record *police* but not necessarily *public officials*. 848 F.3d at 689-90.

As a result, the court's dismissal of Grisham's First Amendment claims against the Deputies should be affirmed. ROA.547.

**VI.**   **Trial Court's reference to *Grisham v. Valenciano* was not reversible error.**

The district court's reference in footnote 6 to Local Civil Rule 83.8(e) and Texas Disciplinary Rule of Professional Conduct 3.03(a)(4) in light of Grisham's failure to cite *Grisham v. Valenciano*, in which he also was the plaintiff and engaged in disorderly conduct, constituted *judicial dictum*, at most, and certainly did not result in reversible error. ROA.549, n.6. *See Autobahn Imports, L.P. v. Jaguar Land Rover N. Am., L.L.C.*, 896 F.3d 340, 346 (5th Cir. 2018) (*judicial dictum* is a statement made deliberately after careful consideration and for future guidance in the conduct of litigation). Alternatively, the court's comment was *obiter dictum*, which is a statement not necessary to the determination of the case and is neither binding nor precedential. *Autobahn*, 896 F.3d at 346. A comment in a footnote is not necessary to the opinion's holding.

**VII.**   **Section 1985(3) Conspiracy Claims are Barred by the Intracorporate Conspiracy Doctrine.**

To state a civil conspiracy claim under § 1983, Grisham must allege both an agreement among the Defendants to commit an illegal act and an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). A conspiracy requires two or more persons or entities. *Nelson Radio & Supply Co. v. Motorola,*

*Inc.*, 200 F.2d 911, 914 (5th Cir. 1953). Under the intracorporate conspiracy doctrine, a "corporation cannot conspire with itself any more than a private individual can," and "the acts of the agents are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (citing *Nelson Radio*, 200 F.2d at 914). "[B]ecause the acts of corporate agents are attributable to the corporation itself, a corporation lacks the multiplicity of actors required to form a conspiracy." *Young v. City of Irving,* No. 3:23-CV-1423-D, 2025 WL 888430, at *10 (N.D. Tex. Mar. 21, 2025) (quoting *Walters v. McMahen*, 795 F. Supp. 2d 350, 358 (D. Md. 2011).

The Fifth Circuit and its district courts permit the doctrine's application to public entities and to civil rights conspiracies under §1983. *Collins v. Bauer*, No. 3:11-CV-00887-B, 2012 WL 443010, at *7 (N.D. Tex. Jan. 23, 2012), *rec. adopted*, 2012 WL 444014 (N.D. Tex. Feb. 10, 2012); *see also Swilley v. City of Houston*, 457 F. App'x 400, 404 (5th Cir. 2012) (per curiam); *Thompson v. City of Galveston*, 979 F. Supp. 504, 512 (S.D. Tex. 1997).

The doctrine would not apply if the corporate employees acted "for their own personal purposes" or "personal motives." *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998), *cert. denied sub nom.*, *Benningfield v. Nuchia*, 526 U.S. 1065 (1999). However, each individual Defendant was acting under color of law, as alleged by  Grisham. ROA.260, ROA.292, ¶¶ 12, 192. All the individual Deputies' and O'Hare's actions are attributable to the county, and Tarrant County cannot

conspire with itself. *See Young*, 2025 WL 888430, at *10. Therefore, Grisham's conspiracy claim under 42 U.S.C. § 1985(3) is barred by the intracorporate conspiracy doctrine and was properly dismissed. ROA.540-541. *See Hilliard*, 30 F.3d at 653; *Iqbal*, 556 U.S. at 678; Fed R. Civ. P. 12(b)(6).

## VIII.  Grisham Waived Additional Claims by Failing to Brief Them.

Grisham has waived additional claims against the Deputies by failing to include them in his brief:

- Failure to supervise against Chief Driskell. ROA.289-292, ¶¶ 176-90.

- Claim for punitive damages. ROA.284, ROA.286, ¶¶ 146, 159; ROA.549.

Because these issues were not included in his brief, Grisham has waived or forfeited them. *Strong,* 2025 WL 2238570, at *1; *Indigenous Peoples*, 132 F.4th at 884; Fed. R. App. P. 28(a)(8)(A).

## IX.    Grisham is not Entitled to Amend his Complaint.

Grisham contends that he should be allowed to amend his complaint to address his pleading deficiencies if the district court's judgment is not reversed. *Brief of Appellant*, pp. 46-47. Grisham never asked the district court for leave to amend. ROA.432-433; ROA.456-457; ROA.487-488. *See, e.g., In the Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125–26 (5th Cir. 2019). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014).

Grisham also never presented the court with a proposed Second Amended Complaint that would address his pleading deficiencies. Fed. R. Civ. P. 15(a); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) (denial of leave proper when amendment would be futile); *Hernandez v. Dallas County Sheriff*, No. 3:23-CV-01583-E, 2024 WL 4202381, at *13-14 (N.D. Tex. Sept. 16, 2024) (denial of leave to amend proper when plaintiff failed to attach proposed amended complaint).

The futility of further amendment is revealed in Grisham's plea, "[a]t minimum," for another opportunity to address his excessive force claim against Deputy Jauss (which Grisham unequivocally abandoned, ROA.215), his LEOSA exception (any error by Driskell was reasonable), and a vague de facto custom against Tarrant County (which does not apply to the Deputies). *Brief of Appellant*, p. 47. Grisham has not articulated how further amendment would be productive, Fed. R. Civ. P. 7(b)(1)(B), and these threadbare issues have no chance of affecting the district court's judgment against the Deputies. As a result, Grisham's request for leave to amend should be denied as being futile. *See Stripling*, 234 F.3d at 872-73; Fed. R. Civ. P. 15(a).

## **PRAYER**

Appellant Grisham failed to allege with specificity any facts that will defeat the four Deputies' assertion of qualified immunity. Their actions were reasonable in all respects, and the district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6) should be affirmed. ROA.550 (order); ROA.553 (judgment).

Respectfully submitted,

*/s/ Katherine E. Owens*
**Katherine E. Owens**
State Bar No. 24081683
keowens@tarrantcountytx.gov
**Craig M. Price**
State Bar No. 16284170
cmprice@tarrantcountytx.gov
Assistant Criminal District Attorneys

**PHIL SORRELLS**
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS
Tarrant County District Attorney's Office
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor
Fort Worth, Texas 76196
817-884-1409 – Telephone
817-884-1675 – Facsimile

**ATTORNEYS FOR THE DEFENDANTS**

# CERTIFICATE OF COMPLIANCE

### With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

The undersigned counsel certifies this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 8,444 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), as computed by the word-processing system used to prepare this brief.

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 10 in 14-point Times New Roman typeface (other than footnotes, which are in 12-point Times New Roman typeface per 5TH CIR. R. 32.1).

*/s/ Katherine E. Owens*

Dated: June 29, 2026

# CERTIFICATE OF SERVICE

On June 29, 2026, I served a copy of the above document on all counsel of record via ECF.

/s/ *Katherine E. Owens*