No. 26-10335

# United States Court of Appeals
# for the Fifth Circuit

C.J. Grisham,

*Plaintiff – Appellant,*

v.

Tim O'Hare, In his personal and official capacities; Chief Deputy Craig Driskell, In his supervisory, official, and personal capacities; Chief Deputy Jennifer Gabbert, In her personal and official capacities; Sergeant Orville George, In his personal and official capacities; Sergeant Michael Jauss, In his personal and official capacities; Tarrant County,

*Defendants – Appellees.*

On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division
Civil Action No. 4:25-CV-716-Y, The Honorable Terry R. Means, Presiding

## BRIEF FOR DEFENDANT-APPELLEE TIM O'HARE

PHIL SORRELLS
Tarrant County Criminal
District Attorney

KATHERINE E. OWENS
Texas State Bar No. 24081683
CRAIG M. PRICE
Texas State Bar No. 16284170
Assistant Criminal District Attorneys
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor – Civil
Fort Worth, Texas 76196
817-884-1233 – Telephone
817-884-1675 – Facsimile
keowens@tarrantcountytx.gov
cmprice@tarrantcountytx.gov

COUNSEL FOR DEFENDANTS-APPELLEES

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal:

**<u>Defendants/Appellees</u>**

1. Tarrant County Judge Tim O'Hare
2. Chief Deputy Craig Driskell
3. Chief Deputy Jennifer Gabbert
4. Sergeant Orville George
5. Sergeant Michael Jauss
6. Tarrant County, Texas

**<u>Counsel for Defendants/Appellees</u>**

Phil Sorrells, Tarrant County District Attorney
Katherine E. Owens, Tarrant County Assistant District Attorney
Craig M. Price, Tarrant County Assistant District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor – Civil
Fort Worth, Texas 76196
817-884-1233 – Telephone
817-884-1675 – Facsimile
E-Mail: keowens@tarrantcountytx.gov
E-Mail: cmprice@tarrantcountytx.gov

**Plaintiff/Appellant**

1.     CJ Grisham

**Counsel for Plaintiffs/Appellant**

CJ Grisham
Law Offices of CJ Grisham, PLLC
3809 S. General Bruce Dr., Ste 103-101
Temple, Texas 76502
Telephone: 254-405-1726
cj@cjgrisham.com
Pro Se Counsel for Appellant

s/ *Katherine E. Owens*

Katherine E. Owens

**STATEMENT REGARDING ORAL ARGUMENT**

Tim O'Hare contends that oral argument likely will not assist the Fifth Circuit in resolving Grisham's issues on appeal because this appeal can be decided by the application of well-established precedent to the record on appeal. Therefore: (1) the dispositive issues already have been authoritatively decided, and (2) the facts and legal arguments are adequately presented in the briefs and record, so the decisional process would not be significantly aided by oral argument. Fed. R. App. P. 34(a)(2)(B), (C).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ...............................................iv

TABLE OF CONTENTS...................................................................................v

TABLE OF AUTHORITIES ........................................................................ vii

STATEMENT OF JURISDICTION...................................................................1

I.      District Court Jurisdiction ...............................................................1

II.     Court of Appeals Jurisdiction .........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE...........................................................................4

I.      Factual Background ..........................................................................4

        A.      The January 14, 2025 Meeting ...............................................5

        B.      The January 28, 2025 Meeting ...............................................5

II.     Procedural Background ....................................................................6

SUMMARY OF THE ARGUMENT ..................................................................7

ARGUMENT .................................................................................................9

I.      Grisham Failed to State a Claim for Violation of the First Amendment
        Under 42 U.S.C. § 1983. ..................................................................9

        A.      Standard of Review for Dismissals Under Rule 12(b)(6) .....9

        B.      Grisham Did Not Properly Plead a First Amendment  Violation
                Against O'Hare.................................................................11

|  | 1. | Traditional vs. Limited Public Forum | 12 |

1. Traditional vs. Limited Public Forum......................................12

2. The Rules of Decorum Are Constitutionally Permissible in a Limited Public Forum .......................................16

3. O'Hare Did Not Violate the First Amendment.........................18

4. A Prohibition on Profanity in a Limited Public Forum Is Constitutionally Permissible .................................................22

5. Whether the TCCC Is a "Juridical Forum" Is Irrelevant ..........25

II. O'Hare is Entitled to Qualified Immunity.......................................26

    A. Standard of Review for Qualified Immunity.......................................26

    B. Grisham Does Not Allege a Violation of Clearly Established Law.....29

III. The District Court Properly Dismissed Grisham's *Monell* Claim Against O'Hare..............................................................................31

IV. Grisham's Section 1985 Claim is Barred by the Intracorporate Conspiracy Doctrine .........................................................................32

V. Grisham is Not Entitled to Amend His First Amended Complaint...............34

VI. Grisham Waived Additional Claims by Failing to Brief Them ....................36

    A. Grisham Cannot Recover Punitive Damages .......................................37

    B. Grisham's Facially Unconstitutional Challenge Is Insufficient...........37

VII. The District Court's *Valenciano* Reference Was Not Reversible Error........38

CONCLUSION ............................................................................................39

CERTIFICATE OF SERVICE ....................................................................42

CERTIFICATE OF COMPLIANCE ...........................................................43

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adderley v. Florida,*
385 U.S. 39 (1966)........................................................................17

*American Freedom Defense Initiative v. Massachusetts Bay Transp. Auth.,*
989 F.Supp.2d 182 (D. Mass. 2013)..................................................24

*Anderson v. Creighton,*
483 U.S. (1987).................................................................. 29, 30

*Anderson v. U.S. Dep't of Hous. & Urban Dev.,*
554 F.3d 525 (5th Cir. 2008) ..........................................................10

*Ark. Educ. Tv Comm'n v. Forbes,*
523 U.S. 666 (1998)......................................................................16

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011).......................................................... 27, 28, 29

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).......................................................... 10, 18, 34

*Autobahn Imports, L.P. v. Jaguar Land Rover N. Am., L.L.C.,*
896 F.3d 340 (5th Cir. 2018) ..........................................................39

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)......................................................................10

*Benningfield v. City of Houston,*
157 F.3d 369 (5th Cir. 1998) ..........................................................34

*Bethel School Dist. No. 403 v. Fraser,*
478 U.S. 675 (1986)......................................................................24

*Blackburn v. City of Marshall,*
42 F.3d 925 (5th Cir. 1995) ............................................................11

*Brosseau v. Haugen,*
543 U.S. 194 (2004).......................................................................27

*Carswell v. Camp*,
54 F.4th 307 (5th Cir. 2022) ................................................................26

*Castro Romero v. Becken*,
256 F.3d 349 (5th Cir. 2001) .................................................................4

*Chaplinsky v. N.H.*,
315 U.S. 568 (1942)................................................................... 17, 18

*Chiu v. Plano Indep. Sch. Dist.*,
260 F.3d 330 (5th Cir. 2001) ........................................ 13, 14, 16, 22

*Cinel v. Connick,*
15 F.3d 1338 (5th Cir. 1994) ........................................................ 32, 33

*City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp't Relations Comm'n*,
429 U.S. 167 (1976)..................................................................... 16, 17

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998)................................................................................27

*Cohen v. California*,
403 U.S. 15 (1971)..................................................................................15

*Collins v. Bauer*,
No. 3:11-CV-00887-B, 2012 WL 443010 (N.D. Tex. Jan. 23, 2012)................33

*Cope v. Cogdill*,
3 F.4th 198 (5th Cir. 2021) ...................................................................27

*Cornelius v. NAACP*,
473 U.S. 788 (1985)....................................................................... 13, 16

*District of Columbia v. Wesby*,
583 U.S. 48 (2018)..................................................................................28

*Estiverne v. La. State Bar Ass'n*,
863 F.2d 371 (5th Cir.1989) ............................................................ 13, 16

*Fairchild v. Liberty Indep. Sch. Dist.*,
597 F.3d 747 (5th Cir. 2010) ........................................ 12, 13, 14, 22

*FCC v. Pacifica Found.*,
438 U.S. 726 (1978)................................................................................17

*Finger v. Garza*,
No. SA-02-CA-0956-RF, 2003 WL 22768236 (W.D. Tex. Oct.7, 2003)...........20

*Freedom From Religion Found. v. Abbott*,
955 F.3d 417 (5th Cir. 2020) ...............................................................13

*Gjemre v. Leffingwell*,
No. A-13-CA-729-SS, 2015 WL 433506 (W.D. Tex. Feb. 2, 2015) .......... passim

*Gonzalez v. Kay*,
577 F.3d 600 (5th Cir. 2009) ...............................................................11

*Good News Club v. Milford Cent. Sch.*,
533 U.S. 98 (2001).................................................................. 14, 16, 17

*Grisham v. Valenciano*,
93 F.4th 903 (5th Cir. 2024) ................................................................39

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)............................................................................26

*Heaney v. Roberts*,
846 F.3d 795 (5th Cir. 2017) ..................................................... 14, 16, 17, 21

*Hebert Abstract Co. v. Touchstone Props., Ltd.*,
914 F.2d 74 (5th Cir. 1990) ...................................................................9

*Hernandez v. Dallas County Sheriff*,
No. 3:23-CV-01583-E, 2024 WL 4202381 (N.D. Tex. Sept. 16, 2024) .............35

*Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*,
380 F.3d 872 (5th Cir. 2004) ................................................................28

*Hilliard v. Ferguson*,
30 F.3d 649 (5th Cir. 1994) ...................................................... 33, 34

*Howell v. Town of Ball*,
827 F.3d 515 (5th Cir. 2016) ................................................................10

*Iancu v. Brunetti*,
588 U.S. 388 (2019)........................................................................ 23, 24, 25

*Indigenous Peoples of Coastal Bend v. United States Army Corps of Engineers*,
132 F.4th 872 (5th Cir. 2025) ...........................................................36

*Johnson v. City of Yoakum, Texas*,
No. 6:19-CV-00011, 2025 WL 2411605 (S.D. Tex. Aug. 19, 2025)..................18

*Johnston v. City of Houston*,
14 F.3d 1056 (5th Cir. 1994) ...........................................................26

*Jones v. Heyman*,
888 F.2d 1328 (11th Cir.1989) ........................................................19

*Joseph ex rel. Estate of Joseph Bartlett*,
981 F.3d 319 (5th Cir. 2020) ..........................................................27

*Kentucky v. Graham*,
473 U.S. 159 (1985)......................................................................4

*Kindt v. Santa Monica Rend Control Bd.*,
67 F.3d 266 (9th Cir. 1995) ........................................................ 17, 19

*Marucci Sports, L.L.C. v. NCAA*,
751 F.3d 368 (5th Cir. 2014) ..........................................................35

*McMillian v. Monroe Cnty., Ala.*,
520 U.S. 781 (1997)......................................................................4

*Merriott v. City of Bossier City*,
No. 25-30325, 2026 WL 1830752 (5th Cir. June 25, 2026)...........................23

*Messerschmidt v. Millender*,
565 U.S. 535 (2012)......................................................................30

*Minn. Voters All. v. Mansky*,
585 U.S. 1 (2018).........................................................................22

*Monell v. Dep't of Soc. Services of City of New York*,
436 U.S. 658 (1978)......................................................................31

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024), 603 U.S........................................................ 18, 38

*Morrow v. Meacham,*
917 F.3d (5th Cir. 2019) ...................................................................30

*Mullenix v. Luna,*
577 U.S. 7 (2015).............................................................................27

*Nelson Radio & Supply Co. v. Motorola*, Inc.,
200 F.2d 911 (5th Cir. 1953) ...........................................................33

*New York v. Ferber,*
458 U.S. 747 (1982)..........................................................................38

*Notariano v. Tangipahoa Par. Sch. Bd.*,
266 F. Supp. 3d 919 (E.D. La. 2017)..................................................4

*Pahls v. Thomas,*
718 F.3d 1210 (10th Cir. 2013) .......................................................14

*Pearson v. Callahan,*
555 U.S. 223 (2009)................................................................ 26, 27, 29

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
460 U.S. 37 (1983).............................................................. 11, 13, 16, 22

*Pfannstiel v. City of Marion,*
918 F.2d 1178 (5th Cir. 1990) .........................................................33

*R.A.V. v. City of St. Paul,*
505 U.S. 377 (1992)..........................................................................24

*R2 Invs. LDC v. Phillips,*
401 F.3d 638 (5th Cir. 2005) ...........................................................10

*Ramirez v. Guadarrama,*
3 F.4th 129 (5th Cir. 2021) ..............................................................26

*Ream v. City of Heath*,
No. 14-4338, 2015 WL 4393307 (N.D. Tex. Jul. 16, 2015) ...............14

*Reichle v. Howards*,
566 U.S. 658 (2012)..........................................................................................27

*Rollins v. Home Depot USA*,
8 F.4th 393 (5th Cir. 2021) ..............................................................................36

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
515 U.S. 819 (1995)................................................................................... 14, 23

*Rowe v. City of Cocoa, Fla.*,
358 F.3d 800 (11th Cir. 2004) ................................................................... 29, 31

*San Jacinto Sav. & Loan v. Kacal*,
928 F.2d 697 (5th Cir. 1991) ...........................................................................11

*Smith v. Wade*,
461 U.S. 30 (1983)............................................................................................37

*Sockwell v. Phelps*,
20 F.3d 187 (5th Cir. 1994) ..............................................................................37

*Stein v. Dallas Cty.*,
No. 3:22-CV-1255-D, 2023 WL 2700720
(N.D. Tex. March 29, 2023)....................................................... 21, 29, 31

*Steinburg v. Chesterfield County Plan. Comm'n*,
527 F.3d 377 (4th Cir.2008) ....................................................... passim

*Story v. Azaiez*,
No. 1:22-CV-448-DAE, 2023 WL 11969350 (W.D. Tex. July 26, 2023)..........16

*Stripling v. Jordan Prod. Co., LLC*,
234 F.3d 863 (5th Cir. 2000) .................................................... 34, 36

*Strong v. United Petroleum Transports, Inc.*,
No. 24-10701, 2025 WL 2238570 (5th Cir. Aug. 6, 2025) ................................36

*Swilley v. City of Houston*,
457 F. App'x 400 (5th Cir. 2012) .....................................................................33

*Thompson v. City of Galveston*,
979 F. Supp. 504 (S.D. Tex. 1997)....................................................................34

*Walters v. McMahen*,
795 F. Supp. 2d 350 (D. Md. 2011) ...............................................................33

*Wenthold v. City of Farmers Branch*,
No. 3:11-CV-0748-B, 2012 WL 467325 (N.D. Tex. Feb. 14, 2012) .......... passim

*White v. City of Norwalk*,
900 F.2d 1421 (9th Cir. 1990) .................................................................. 17, 22

*White v. Pauly*,
580 U.S. 73 (2017) ......................................................................................28

*Young v. City of Irving*,
No. 3:23-CV-1423-D, 2025 WL 888430 (N.D. Tex. Mar. 21, 2025) .......... 33, 34

*Zarnow v. City of Wichita Falls*,
500 F.3d 401 (5th Cir. 2007) ......................................................................28

Statutes

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

28 U.S.C. § 1343(a)(3) ...................................................................................1

42 U.S.C. § 1983 .................................................................................. passim

42 U.S.C. § 1985 ........................................................................... 32, 33, 34

Tex. Govt. Code § 551.007(b) .......................................................................21

Tex. Govt. Code § §551.007, 551.042 ...........................................................11

Tex. Local Gov't Code § 81.001(b) ...............................................................21

Tex. Occ. Code § 1701.051 ............................................................................5


Rules

Fed. R. App. P. 28(a)(8)(A) ..........................................................................36

Fed. R. Civ. P. 7(b)(1)(B) .............................................................................36

Fed. R. Civ. P. 12(b)(6)................................................................. passim

Fed. R. Civ. P. 15(a)................................................................ 34, 36

Tex. Disciplinary Rule of Prof'l Conduct R. 3.03(a)(4) ..........................................39

Tex. Disciplinary Rule of Prof'l Conduct R. 3.04(a)(4) ...........................................4

Regulations

46 C.F.R. § 67.117(b)(3)...................................................................24

# STATEMENT OF JURISDICTION

## I.     District Court Jurisdiction

Because Grisham asserted a claim under 42 U.S.C. § 1983, the District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

## II.     Court of Appeals Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment rendered and entered in the United States District Court for the Northern District of Texas, Fort Worth Division.

This appeal is timely under Federal Rule of Appellate Procedure 4 because the judgment was entered on April 8, 2026, ROA.553; the District Court granted "Defendant Tim O'Hare's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support" by Order dated April 8, 2026, ROA.520-531; and Plaintiffs' Notice of Appeal was filed on April 10, 2026, ROA.554-556.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**Issue One:** A county commissioners court meeting is a limited public forum dedicated to the orderly conduct of county business, where a presiding officer may enforce viewpoint-neutral rules requiring speakers to maintain basic decorum. When called upon to speak, Grisham used profanity and was removed from the meeting. Did the district court properly dismiss Grisham's First Amendment claim under Rule 12(b)(6) because the face of the complaint established that he was removed for violating established forum rules rather than his viewpoint?

**Issue Two:** Qualified immunity shields public officials from civil liability unless their actions violate a clearly established constitutional right. Binding precedent confirms that presiding officers of government bodies possess the authority to enforce civility rules and curtail profane or vulgar language during public comment sessions. Did the district court correctly grant qualified immunity to O'Hare because no clearly established law strips a presiding official of immunity for terminating the speaking time of an individual who directs profanity at the court?

**Issue Three:** A *Monell* claim provides a cause of action to impute civil liability to a municipality government entity whose official policies or customs cause a constitutional deprivation. An individual plaintiff asserted a *Monell* claim against a county judge in both his individual and official capacities. Did the district court properly dismiss this claim under Rule 12(b)(6) because federal law does not

recognize a *Monell* cause of action for municipal liability against an individual official?

**Issue Four**: Did the district court properly dismiss Grisham's conspiracy claim under 42 U.S.C. § 1985 because Grisham did not suffer an actual deprivation of constitutional rights or, alternatively, because his claim is legally invalid under the intracorporate conspiracy doctrine?

**Issue Five:** A district court possesses broad discretion to dismiss an action with prejudice under Rule 12(b)(6) when a plaintiff stands on his operative complaint and fails to seek leave to amend. In opposing Appellee's motion to dismiss, Appellant never requested an opportunity to amend his complaint a second time, nor did he explain to the court how any pleading adjustments could salvage his claims. Did the district court abuse its discretion by dismissing the action with prejudice instead of sua sponte granting leave to amend to cure unspecified deficiencies?

**Issue Six:** Did the plaintiff waive any challenge to the district court's dismissal of his claims where, despite raising those claims below, his opening brief on appeal completely fails to present any substantive argument, legal authority, or record citations addressing the district court's specific grounds for dismissal?

**Issue Seven:** Did the district court commit reversible error by including a footnote that was merely judicial dictum or *obiter dictum*, where the court referred

the plaintiff to Northern District of Texas Local Rule 83.8(e) concerning unethical behavior and Texas Disciplinary Rule of Professional Conduct 3.04(a)(4) concerning the duty of candor, and the court independently and correctly dismissed the operative claims on their merits?

## STATEMENT OF THE CASE

### I. Factual Background

Christopher J. Grisham ("Grisham") sued Tarrant County Judge Tim O'Hare ("O'Hare") in his individual and official capacities under 42 U.S.C. §§ 1983 and 1985 for alleged civil rights conspiracy and denial of his First Amendment rights.[1] ROA.258; ROA.285-287; ROA.292-293. The pertinent facts and procedural history of this case relate to two separate meetings of the Tarrant County Commissioners Court ("TCCC") which Grisham attended, the first on January 14, 2025, and another on January 28, 2025. The events of those two meetings form the basis of Grisham's First Amended Complaint. However, O'Hare was not involved in the events that Grisham complains of at the January 14, 2025 meeting, and the alleged violations Grisham complains of stemming from the January 14, 2025 meeting are not directed

---

[1] "[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent[.]'" *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). If the claims against an official in his official capacity seek identical relief as claims against a governmental entity, the official capacity claims may be dismissed as duplicative*." Notariano v. Tangipahoa Par. Sch. Bd.*, 266 F. Supp. 3d 919, 928 (E.D. La. 2017) (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)). Therefore, this Court should dismiss the official capacity claims against O'Hare and the other individual Defendants without any further analysis. *Kentucky*, 473 U.S. at 167 n.14; Fed. R. Civ. P. 12(b)(6).

at O'Hare. ROA.524. O'Hare's sole involvement is related to the January 28, 2025 meeting. ROA.273-281.

### A. The January 14, 2025 Meeting

On January 14, 2025, Grisham attended a scheduled meeting of the TCCC. ROA.262-263. After leaving the courtroom for a restroom break, Grisham attempted to return while carrying a handgun. ROA.263-264. Defendant Chief Deputy Craig Driskell, relying on guidance from the Texas Commission on Law Enforcement[2] (TCOLE) stating that Grisham was not a qualified law enforcement officer, denied Grisham entry while armed. ROA.264. During a subsequent heated verbal exchange while surrounded by an agitated crowd, Grisham used profanity and failed to provide verifiable credentials allowing him to openly carry a handgun into the TCCC. ROA.265. Defendant Chief Deputy Jennifer Gabbert ordered deputies to escort Grisham away from the crowd and into a room, where the Defendants were able to view his state license to carry a handgun ("LTC"). ROA.270. After forty minutes, Grisham was released without any charges being filed against him. ROA.270, 272. Grisham did not return to the TCCC meeting that day. ROA. 272.

### B. The January 28, 2025 Meeting

On January 28, 2025, Grisham, again while carrying a handgun, visited the TCCC for another scheduled public meeting. ROA.273. Grisham alleged that after

---

[2] Texas Commission on Law Enforcement ("TCOLE")—https://www.tcole.texas.gov/—State agency that licenses peace officers. S*ee also* Tex. Occ. Code § 1701.051.

he ignored Defendant Sergeant Orville George outside of the courtroom, George physically blocked and restrained him until he produced his LTC, at which point he was allowed to enter the open meeting. ROA.274-275, 277.

Prior to the January 28, 2025 meeting, Grisham had registered to speak during public comments concerning the death of his friend, Mason Yancy, who died while in custody of Tarrant County. ROA.273, 520. After being recognized by O'Hare, Grisham approached the podium to speak. Rather than speaking about the topic he signed up for, Grisham began with a recitation about the events of the January 14, 2025 meeting:

> I came here last time because my good friend, Mason Yancy, was murdered in the jail. That's why I meant to come here. But you didn't hear from me. The reason you didn't hear from me is because the thugs that you have outside the door there assaulted me, threw me in handcuffs for no reason whatsoever, and tried to arrest me. Thankfully, Sheriff Waybourne [sic] thought the better of valor and listened to me when I told him to **read the fucking law**.

(emphasis added) ROA.279. Because Grisham's use of profanity was a violation of the TCCC Rules of Decorum, O'Hare exercised his discretion to maintain the civility of the meeting and ordered Grisham to be removed from the courtroom. ROA.279, 353. Grisham's lawsuit followed.

## II.     Procedural Background

Grisham filed suit in the United States District Court for the Northern District of Texas, Fort Worth Division, on July 7, 2025, against Tarrant County Judge Tim

O'Hare, et al., in his individual and official capacities under 42 U.S.C. § 1983 for alleged civil rights conspiracy and denial of his First, Fourth, Ninth, and Fourteenth Amendment rights. ROA.7-38. O'Hare filed a Rule 12(b)(6) motion to dismiss Grisham's Complaint on September 8, 2025, seeking dismissal of the Complaint based on qualified immunity. ROA.90-122. The district court entered an order on October 2, 2025, denying O'Hare's motion to dismiss and requiring Grisham to file an amended complaint and to include detailed facts supporting any contention that the plea of qualified immunity could not be sustained. ROA.253-256. Grisham filed his First Amended Complaint on October 23, 2025, against Tarrant County Judge Tim O'Hare, et al., in his individual and official capacities under 42 U.S.C. § 1983 and 1985 for alleged civil rights conspiracy and denial of his First Amendment Rights. ROA.257-298. O'Hare filed a rule 12(b)(6) motion to dismiss Grisham's First Amended Complaint on November 6, 2025, seeking dismissal of the Amended Complaint based on qualified immunity. ROA.333-364. Following Grisham's response, the district court granted O'Hare's motion to dismiss ROA.435-458, 520-531. The district court entered final judgment dismissing Grisham's case with prejudice. ROA.553. This appeal ensued.

## SUMMARY OF THE ARGUMENT

The district court properly dismissed Grisham's §1983 claim against O'Hare for a constitutional violation of the First Amendment. The parties agree that the

7

TCCC is a limited public forum. O'Hare, as presiding officer of the TCCC, may exercise his discretion in imposing reasonable, viewpoint-neutral restrictions on speech to preserve the civility and decorum necessary to further the purpose of the meeting. O'Hare's conduct in suspending Grisham's speaking time and ordering him removed from the meeting was a constitutionally permissible exercise of his discretion in a limited public forum under the First Amendment.

Second, O'Hare is entitled to qualified immunity because his conduct was objectively reasonable and because no clearly established law in this circuit establishes that his conduct violated the First Amendment.

Third, since the law does not provide for individual liability under *Monell,* district court was correct in dismissing Grisham's *Monell* claim against O'Hare.

Fourth, the district court's dismissal of Grisham's § 1985 claim was proper because the court found no underlying constitutional violation and because the claim is legally invalid under the intracorporate conspiracy doctrine.

Fifth, because Grisham never requested an opportunity to amend his complaint a second time in the district court, nor explained to the court how any pleading adjustments could salvage his claims, the Court should disregard his request to remand this case to give him the opportunity to amend his pleadings.

Sixth, Grisham raised claims in his First Amended Complaint that he abandoned on appeal and did not brief. The claims implicating O'Hare include

Grisham's claim for punitive damages and a challenge to the facial constitutionality of the rules of decorum, since Grisham claimed that "O'Hare knew or should have known that his 'rules of decorum' were unconstitutional." ROA.278. Because the district court properly dismissed Grisham's claims and he has not briefed the issues to this Court, Grisham has waived any right to relief to those claims.

Finally, the district court did not commit reversible error by referencing binding precedent of this Court and referring Grisham to local court rules regarding ethical behavior and the Texas Disciplinary Rules of Professional Conduct concerning the duty of candor. The statements made by the lower court were *obiter dictum* and the court independently dismissed Grisham's operative claims on their own merits.

## ARGUMENT

**I.** **Grisham Failed to State a Claim for Violation of the First Amendment Under 42 U.S.C. § 1983.**

**A.** **Standard of Review for Dismissals Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) motions serve, "to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). While complaints do not need detailed

factual allegations to survive 12(b)(6) dismissal, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rather, the complaint must include enough facts "to raise a right to relief above the speculative level" with the court operating "on the assumption that all the complaint's allegations are true." *Id.*

To avoid a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* A claim is facially plausible when the pleaded facts allow a court to reasonably infer that the defendant is liable for the alleged acts. *Howell v. Town of Ball*, 827 F.3d 515, 521 (5th Cir. 2016). This "demands more than" alleging that "the-defendant-unlawfully-harmed-me." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). Claims must include enough factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Courts should not "strain to find inferences favorable to plaintiffs" or accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion

to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a plausible claim for relief. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

**B.    Grisham Did Not Properly Plead a First Amendment Violation Against O'Hare**

Grisham, in his First Amended Complaint, alleges that O'Hare enforced unconstitutional "rules of decorum" that prohibit criticism of public officials and the use of expressive speech like profanity.[3] ROA.285. He alleges that he had a "clearly established constitutional and statutory right to express himself and criticize public officials without censorship or content-based discrimination based on speech." ROA.286. The district court found that the TCCC is a limited public forum—a fact that Grisham does not dispute—and therefore may have content-based restrictions so long as they are viewpoint-neutral. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983). ROA.528-529. The district court further found it case dispositive that Grisham's pleadings admitted he was asked to leave a limited public

---

[3] Grisham also alleged violations of the Texas Open Meetings Act ("TOMA"). Tex. Govt. Code § §551.007, 551.042. Grisham alleges that violations of TOMA independently establish his alleged First Amendment violation. Grisham Br. 18–19. The district court declined to exercise supplemental jurisdiction over Grisham's state law claims. ROA.524. To the extent Grisham is alleging a violation of a state statute, such violation cannot be brought under 42 U.S.C. § 1983. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991).

forum after using profanity.[4] ROA. 529. As a result, the enforcement of decorum rules, including a prohibition on profanity, within a limited public forum is not a First Amendment violation. ROA.529. Nevertheless, Grisham asserts on appeal that the district court was legally incorrect in concluding that enforcing decorum rules, specifically Grisham's use of profanity, in a limited public forum does not implicate the First Amendment. Grisham Br. 15–16. Despite acknowledging that the TCCC is a limited public forum, Grisham concludes that the district court "failed to apply the controlling analytical framework." Grisham Br. 15–16.

Grisham's allegation of a First Amendment violation is predicated on multiple misstatements of the applicable law. Throughout his First Amended Complaint, Grisham fundamentally mischaracterizes the nature of the forum at issue, and thus the speech parameters enforced by the TCCC that are constitutionally permissible. ROA. 279-280, 296-297. Grisham admits that the TCCC is a limited public forum yet imposes the strictures of a traditional public forum to show that his rights have been violated. ROA.443.

### 1. Traditional vs. Limited Public Forum

In assessing the impact on speech, the Court first identifies the type of forum because the forum may allow for speech regulation. *Fairchild v. Liberty Indep. Sch.*

---

[4] The district court referred to Grisham's profanity as "foul language." ROA.529. The terms are synonymous and any distinction is not relevant to the case before the Court.

*Dist.*, 597 F.3d 747, 757–58 (5th Cir. 2010). There are two broad categories of forums: (1) traditional and designated public forums and (2) limited public forums and nonpublic forums. *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 426 (5th Cir. 2020).

Traditional public forums are places that are traditionally devoted to assembly or debate. *Estiverne v. La. State Bar Ass'n*, 863 F.2d 371, 376 (5th Cir.1989) (quoting *Cornelius v. NAACP*, 473 U.S. 788, 802 (1985)). This type of forum includes "streets and parks which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Fairchild*, 597 F.3d at 758 (citing *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344–45 (5th Cir. 2001) (per curiam)). Designated public forums are places that the government has designated for the same widespread use as traditional public forums. *Fairchild*, 597 F.3d at 758. The government's efforts to restrict speech in traditional and designated public forums must withstand strict scrutiny, i.e., show that a content-based prohibition serves a compelling state interest and is narrowly tailored. *See Perry*, 460 U.S. at 45. Nonpublic forums are forums that are not open for public communication by tradition or designation. *FFRF v. Abbott*, 955 F.3d at 426.

Limited public forums, in contrast, are "for public expression of particular kinds or by particular groups." *Fairchild*, 597 F.3d at 758 (quoting *Chiu*, 260 F.3d

at 346). In a limited public forum, the government "is not required to and does not allow persons to engage in every type of speech." *Fairchild*, 597 F.3d at 758 (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001)). The government may restrict speech in these limited public forums, such as the TCCC, as long as the regulation "(1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in light of the purpose served by the forum." *Fairchild*, 597 F.3d at 758 (quoting *Chiu*, 260 F.3d at 346). "Viewpoint discrimination exists when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Heaney v. Roberts*, 846 F.3d 795, 801–02 (5th Cir. 2017) (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)). "[A] claim of viewpoint discrimination…requires a plaintiff to show that the defendant acted with a viewpoint discriminatory purpose." *Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013). "If [the plaintiff] were to have violated a reasonable restriction, such as topic or time constraint, there would be no constitutional violation." *Heaney*, 846 F.3d at 802. In a limited public forum, the government "may properly limit discussions during its meetings to specified agenda items and impose reasonable, viewpoint-neutral restrictions on speech to preserve the civility and decorum necessary to further the purpose of the meeting." *Ream v. City of Heath*, No. 14-4338, 2015 WL 4393307, at *3 (N.D. Tex. Jul. 16, 2015) (internal quotations omitted). "Restrictions on speech in a limited public forum are

14

subject to a lower level of scrutiny than those in a traditional or designated public forum." *Wenthold v. City of Farmers Branch*, No. 3:11-CV-0748-B, 2012 WL 467325, at *7 (N.D. Tex. Feb. 14, 2012), *aff'd*, 532 F. App'x 474 (5th Cir. 2013) (per curiam).

As evidenced by the Supreme Court precedent that Grisham relies upon, he is conflating two different legal standards for First Amendment speech: traditional public forum v. limited public forum. Grisham cites *Cohen v. California*, 403 U.S. 15 (1971), but both its pertinent facts and relevant holding are readily distinguishable from the events of January 28, 2025. In *Cohen*, the defendant was criminally convicted for disturbing the peace by silently walking through a courthouse corridor wearing a jacket that read "Fuck the Draft." *Id*. at 16. There, the Supreme Court held that criminalizing the public display of a "single four-letter expletive" is unconstitutional. *Id*. at 26 (emphasis added). Here, Grisham was not silently displaying a word on his clothing or even a sign, but rather, he was vocally directing profanity at elected officials during a public meeting. Unlike *Cohen*, where no disruption to court proceedings occurred, Grisham's conduct did not occur in a hallway but inside the Commissioners Courtroom during a meeting (a limited public forum) with an established agenda. *Cohen* does not support Grisham's claim that he is permitted to utter profanities in a public meeting of a government body.

## 2. The Rules of Decorum Are Constitutionally Permissible in a Limited Public Forum

Traditional public forums are places that are historically devoted to assembly or debate. *Estiverne v. La. State Bar Ass'n*, 863 F.2d 371, 376 (5th Cir.1989) (quoting *Cornelius v. NAACP*, 473 U.S. 788, 802 (1985)). This type of forum includes "streets and parks which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry* 460 U.S. at 45. The government's efforts to restrict speech in traditional public forums must withstand strict scrutiny, i.e., show that a content-based prohibition serves a compelling state interest and is narrowly tailored. *See Id.*

Conversely, Tarrant County may impose reasonable, viewpoint-neutral restrictions on speech in a limited public forum to preserve the civility and decorum necessary to further the purpose of the meeting. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001); *Ark. Educ. Tv Comm'n v. Forbes*, 523 U.S. 666, 677–78 (1998); *City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp't Relations Comm'n*, 429 U.S. 167, 176 n.8 (1976). *See also Chiu* 260 F3d at 347; *Heaney*, 846 F.3d 801–02; *Wenthold*, 2012 WL 467325, at *7.

A public comment session of the commissioners court is a limited public forum, in which it is constitutionally permissible to prohibit profanity to maintain civility and decorum. *Heaney*, 846 F.3d at 801-02. *See Story v. Azaiez*, No. 1:22-

CV-448-DAE, 2023 WL 11969350, at *5 (W.D. Tex. July 26, 2023); see also *Good News Club*, 533 U.S. at 106 (state is not required to allow persons to engage in every type of speech).

Therefore, Tarrant County may restrict or regulate speech in an open meeting of the TCCC as long as the regulation: (1) does not discriminate against speech on the basis of viewpoint, and (2) is reasonable in light of the purpose served by the forum. *Heaney*, 846 F.3d at 801–02; *City of Madison, Joint Sch. Dist. No. 8*, 429 U.S. at 176 n.8; *Wenthold*, 2012 WL 467325, at *7; *Gjemre v. Leffingwell*, No. A-13-CA-729-SS, 2015 WL 433506, at * 6 (W.D. Tex. Feb. 2, 2015). *See also Kindt v. Santa Monica Rend Control Bd.*, 67 F.3d 266, 270–72 (9th Cir. 1995); *White v. City of Norwalk*, 900 F.2d 1421, 1426 (9th Cir. 1990) (holding decorum rule prohibiting profanity is not unconstitutionally overbroad).

Grisham does not have any right to the unfettered exercise of profanity whenever and wherever he chooses. *See Adderley v. Florida*, 385 U.S. 39, 47–48 (1966). Vulgar, offensive, and shocking speech must be viewed in its specific context, and it is "not entitled to absolute constitutional protection under all circumstances." *FCC v. Pacifica Found.*, 438 U.S. 726, 747–48 (1978). The U.S. Supreme Court rejected a blanket protection for profanity in *Chaplinsky v. N.H.*, 315 U.S. 568 (1942): "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise

any constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words – those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id*. at 571–72.

More recently, in *Johnson v. City of Yoakum, Texas*, No. 6:19-CV-00011, 2025 WL 2411605, at *12–13 (S.D. Tex. Aug. 19, 2025), the district court held that prohibiting "impertinent, profane, or slanderous remarks" during public comments in a limited public forum is a reasonable, viewpoint-neutral restriction that does not violate the First Amendment. *Id*. at *12–13 (emphasis added).

Presumably, the prohibition on profanity here is similar to that in *Johnson*. *See Johnson*, 2025 WL 2411605, at *12–13. However, despite asserting that the rules of decorum are unconstitutional *in toto*, Grisham did not provide the full text of the challenged rules in either his First Amended Complaint or appeal brief. *See* ROA.278. Logically, this omission of the precise rules of decorum from his pleading is fatal to his facially unconstitutional First Amendment claim. *Moody v. NetChoice, LLC*, 603 U.S. 707, 725–26 (2024), 603 U.S. at 725–26. See *Iqbal*, 556 U.S. at 678.

### 3. O'Hare Did Not Violate the First Amendment

Grisham presents a fundamentally flawed understanding of the First Amendment that ignores the well-established balance between free speech and the government's authority to maintain order and civility in a limited public forum. Grisham Br. 16. He incorrectly asserts that profanity in a limited public forum cannot

be restricted, but this claim misapplies First Amendment protections and disregards controlling precedents. ROA.285. In a limited public forum, like the January 28, 2025 TCCC meeting, Grisham's First Amendment rights have limits. The Northern District of Texas previously observed, "Courts discussing public comment periods at government meetings have routinely found that the governing body may restrict speakers to the subject at hand, impose time limits on speakers, and prevent disruptions of the meeting." *Wenthold*, 2012 WL 467325, at *9, (*citing, e.g., Steinburg v. Chesterfield County Plan. Comm'n,* 527 F.3d 377, 385 (4th Cir.2008); *Kindt*, 67 F.3d at 270–71; *Jones v. Heyman*, 888 F.2d 1328, 1332, 1334 (11th Cir.1989). In *Wenthold*, the Court held that ejecting a disruptive citizen from a city council meeting for violating decorum rules is constitutionally permissible. *Id*. at 10. The court in *Wenthold* cited the *Kindt* court's explanation that "ejection of disruptive citizens from city council meeting [sic] under decorum regulations is proper, noting the 'great deal of discretion' that must be left to the governing entity. *Wenthold*, 2012 WL 467325, at *9 (*quoting Kindt,* 67 F.3d at 271–272).

For public meetings to properly function, a citizen's First Amendment rights must be balanced with the need to conduct orderly public meetings. *Id*. at 9. Courts have therefore held that governmental bodies, like the TCCC, are justified:

> [I]n imposing reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business....Because of government's substantial interest in having such meetings conducted with relative orderliness and fairness to all,

officials presiding over such meetings must have discretion, under the 'reasonable time, place, and manner' principle, to set subject matter agendas, and to cut off speech which they *reasonably* perceive to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion, whether by virtue of its irrelevance, its duration, or its very tone and manner…[D]isruption of the orderly conduct of public meetings is indeed one of the "substantive evils that [government] has a right to prevent.

*Steinburg*, 527 F.3d at 385 (emphasis in original) (internal quotations omitted). In *Steinburg*, the Fourth Circuit held that a content-neutral policy against personal attacks is not facially unconstitutional, so long as that policy serves a legitimate public interest in that limited public forum and is "unrelated to the content of expression…even if it has an incident[al] effect on some speakers or messages but not others." *Id*. at 387 (citation omitted). A government body has a legitimate government interest in conducting orderly, efficient meetings. *Finger v. Garza*, No. SA-02-CA-0956-RF, 2003 WL 22768236, at *2 (W.D. Tex. Oct.7, 2003) (granting summary judgment in favor of the city), *aff'd*, 98 F. App'x 326 (5th Cir. 2004). In *Gjemre v. Leffingwell*, the district court granted qualified immunity to the defendant-mayor, who ejected a public speaker during a public comment session in which the speaker strayed off the agenda item at issue and exhibited disruptive behavior. The court held that, "[w]hile Gjemre has a legally protected right to address the City Council, that right is subject to the City's interest in conducting orderly meetings via its rules of procedure and decorum." *Gjemre v. Leffingwell*, 2015 WL 433506, at *6 (granting dismissal under Rule 12(b)(6) and summary judgment).

Here, at the TCCC meeting on January 28, 2025, Grisham began his comments by airing his personal grievances, culminating in the use of a profane expletive: "…I told him to **read the fucking law**" (emphasis added) ROA.279. O'Hare is the elected Tarrant County Judge, and the statutory presiding officer of the TCCC responsible for maintaining order of its public meetings. Tex. Local Gov't Code § 81.001(b). Grisham's pleadings fail to plausibly allege that O'Hare was motivated by Grisham's ideology, perspective, or opinion. *See Heaney*, 846 F.3d at 802. Pursuant to the Texas Government Code, members of the public who desire to address the TCCC regarding an item on the agenda for an open meeting are allowed to address the TCCC regarding said item before or during consideration of the item by the TCCC. *See* Tex. Govt. Code § 551.007(b). O'Hare allowed Grisham to speak on issues in the Tarrant County Jail, as well as issues he faced with TCSO deputies on January 14, 2025, during a TCCC meeting. ROA.279. It was not until Grisham uttered a profanity that O'Hare exercised his discretion to maintain the civility of the meeting and ordered Grisham's removal. ROA.279.

The only plausible allegation present within Grisham's pleadings is that O'Hare's primary motivation was maintaining civility by disallowing profanity during the TCCC meeting. ROA.285; *Wenthold*, 2012 WL 467325 at *10. Grisham admits to using profanity and states no other reason for which he was dismissed from the meeting. ROA.279; *See Stein v. Dallas Cty.*, No. 3:22-CV-1255-D, 2023 WL

21

2700720 at *5 (N.D. Tex. March 29, 2023); *Gjemre*, 2015 WL 433506 at *6. (granting dismissal under Rule 12(b)(6) and summary judgment and holding that the actions of the city mayor (and presiding officer) to eject the plaintiff was objectively reasonable after plaintiff violated the rules of decorum in a limited public forum); *White v. City of Norwalk*, 900 F.2d 1421, 1426 (9th Cir. 1990) (holding prohibition of profanity in a limited public forum is not unconstitutionally overbroad).

### 4. A Prohibition on Profanity in a Limited Public Forum Is Constitutionally Permissible

Grisham argues that the TCCC decorum rule prohibiting profanity is a "content-based restriction subject to heightened scrutiny." Grisham Br. 16. (Grisham never provided the trial court with the language of the rule.) However, as discussed, in a limited public forum a government "may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry* 460 U.S. at 46. Grisham also argues that the district court committed reversible error by failing to conduct the required content-neutrality or narrow-tailoring analysis. Grisham Br. 17. Because the TCCC is a limited public forum, "there is no requirement of narrow tailoring" but "the [government] must be able to articulate some sensible basis for distinguishing what may come in from what must stay out." *See Minn. Voters All. v. Mansky*, 585 U.S. 1, 16 (2018); *see also Fairchild*, 597 F.3d at 758; *Chiu*, 260 F.3d at 346.

Assuming arguendo that prohibiting profanity at the TCCC constitutes content-based discrimination, such a restriction is nonetheless viewpoint-neutral.[5] Grisham cites Justice Sotomayor's concurrence, in part, in *Iancu v. Brunetti* in his brief: "A restriction on…profanity…is naturally content-based." *Iancu v. Brunetti*, 588 U.S. 388, 419 (2019). Grisham Br. 16. However, Grisham omits key words from Justice Sotomayor's concurrence which turn Grisham's argument on its head: "A restriction on…obscenity, vulgarity, or profanity ***is similarly viewpoint neutral***, though it is naturally content-based." *Iancu*, 588 U.S. at 419 (Sotomayor, J., concurring in part) (emphasis added). Grisham's omission is decisive. A plain, blanket restriction on profanity (regardless of the idea to which it is attached) is a viewpoint-neutral form of content discrimination. *Id.* Restrictions on particular modes of expression do not inherently qualify as viewpoint discrimination; they are not by nature examples of "the government target[ing] ... particular views taken by speakers on a subject." *Id.* (quoting *Rosenberger*, 515 U.S. at 829).

For example, "fighting words are categorically excluded from the protection of the First Amendment" not because they have no content or express no viewpoint

---

[5] This court recently held that the rules of decorum of a city council prohibiting "personal, impertinent or slanderous remarks" were facially unconstitutional because they were impermissibly overbroad and vague, as well as unconstitutionally discriminatory based on content and viewpoint. *Merriott v. City of Bossier City*, No. 25-30325, 2026 WL 1830752, at *3 (5th Cir. June 25, 2026). However, neither the Supreme Court nor any circuit, including this one, has found that a prohibition on profanity in a limited public forum to be unconstitutional viewpoint-based discrimination, per se.

(often quite the opposite), but because "their content embodies a particularly intolerable (and socially unnecessary) mode of expressing whatever idea the speaker wishes to convey." *Iancu*, 588 U.S. at 419 (Sotomayor, J., concurring in part) (*citing R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992)). To treat a restriction on vulgarity, profanity, or obscenity as viewpoint discrimination would upend decades of precedent.[6] .

The majority in *Iancu* held that a restriction on trademark registration under the Lanham Act prohibiting "immoral or scandalous" trademarks was substantially overbroad and thus violative of the First Amendment. *Iancu*, 588 U.S. at 399. Though the court declined to interpret the statute with a limiting construction that would remove its viewpoint bias, several separate opinions signaled that a statute narrowly tailored to proscribe the vulgar or profane would not be constitutionally infirm. *See, e.g., Iancu*, 588 U.S. at 400 (Alito, J., concurring)) ("Our decision does not prevent Congress from adopting a more carefully focused statute that precludes the registration of marks containing vulgar terms that play no real part in the expression of ideas."); *id.* at 401 (Roberts, C.J., concurring in part and dissenting in

---

[6] *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 n.7 (2019) (Sotomayor, J., concurring) ("It would also risk destabilizing government practice in a number of other contexts. Governments regulate vulgarity and profanity, for example, on city-owned buses and billboards, e.g., *American Freedom Defense Initiative v. Massachusetts Bay Transp. Auth.*, 989 F.Supp.2d 182, 183 (D. Mass. 2013) (noting such a prohibition), on registered vessels, 46 C.F.R. § 67.117(b)(3) (Coast Guard regulations), and at school events, e.g., *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 677–678 (1986) (upholding discipline of high school student).")

part) (stating that "refusing registration to obscene, vulgar, or profane marks does not offend the First Amendment. *Iancu*, 588 U.S. at 401 (2019). Contrary to Grisham's assertion, the decorum rules' prohibition on profanity does not implicate the First Amendment, as the district court found. ROA.529. The enforcement of decorum rules, including a prohibition on profanity, within a limited public forum is not a First Amendment violation. ROA.529.

### 5. Whether the TCCC Is a "Juridical Forum" Is Irrelevant

Lastly, Grisham devotes six pages of his brief attempting to construe two sentences from the district court's Order Granting O'Hare's Motion to Dismiss as a "foundational categorial mistake" because "it treated the Tarrant County Commissioners Court meeting as a 'juridical forum' subject to courtroom-style decorum rules." Grisham Br. 19–25. Grisham's attempt to distinguish the Commissioners' Court from a juridical forum is a red herring. ROA.280. The district court stated that "rules of decorum are axiomatic in juridical forums" after a full analysis of the First Amendment issues involved in this case, and where both parties agree that the TCCC is a limited public forum. ROA.350, 443. Whether functioning in a legislative or judicial capacity, a presiding officer retains the authority to regulate speech for the purpose of ensuring orderly proceedings. *Wenthold*, 2012 WL 467325 at *9. This includes enforcing time, place, and manner restrictions such as prohibitions on profanity and irrelevant commentary. *Steinburg*, 527 F.3d at 385.

Grisham knowingly used profanity. Under the clearly established law in the Fifth Circuit, O'Hare's conduct was not only appropriate but constitutionally permissible and objectively reasonable. *Gjemre*, 2015 WL 433506 at *6.

## II. O'Hare is Entitled to Qualified Immunity

### A. Standard of Review for Qualified Immunity

Qualified immunity is a defense available to government officials sued for constitutional violations pursuant to § 1983. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994). Public officials sued in their personal capacities are presumed to enjoy qualified immunity, which is immunity from suit rather than from liability. *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022). A defendant's entitlement to qualified immunity must be determined "at the earliest possible stage of litigation." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

There are two aspects to qualified immunity: whether the plaintiff has alleged a violation of a constitutional right and whether the right at issue was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). Courts retain flexibility as to which step of the two-

step process they consider first. *Id*. at 236. Still, often "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 (1998).

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). The Supreme Court has "repeatedly told courts…not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (per curiam) (internal quotations and citations omitted). "Unless existing precedent squarely governs the conduct at issue, an official will be entitled to qualified immunity." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)) (internal quotation marks omitted). "Generally, to satisfy this standard, the plaintiff must identify a case in which [a public official] acting under similar circumstances was held to have violated the Constitution and explain why the case clearly proscribed the conduct of that [public official]." *Id*. at 205 (quoting *Joseph ex rel. Estate of Joseph Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)) (internal

brackets and punctuation omitted). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 740. The Supreme Court has called it a demanding standard [that] "protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). As the Supreme Court has stressed,

> In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases. The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial. Today, it is again necessary to reiterate the longstanding principle that clearly established law should not be defined at a high level of generality. As this Court explained decades ago, the clearly established law must be particularized to the facts of the case.

*White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and citations omitted).

Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004). If reasonable officials could differ on the lawfulness of the defendant's conduct, the defendant is entitled to qualified immunity. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407–08 (5th Cir. 2007). The touchstone of the qualified immunity analysis is the "objective legal

reasonableness" of the public official's conduct. *Anderson v. Creighton*, 483 U.S. at 635, 639 (1987). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *al-Kidd*, 563 U.S. at 744. It applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231 (citation omitted).

## B. Grisham Does Not Allege a Violation of Clearly Established Law

Grisham has failed to produce a modicum of case law showing that, based on what Grisham has plausibly alleged, O'Hare violated a clearly established constitutional right. ROA.530. First, as argued above, Grisham fails to plausibly allege that O'Hare violated Grisham's First Amendment rights as the controlling precedents permit a presiding officer of a limited public forum to exercise his discretion in enforcing reasonable time, manner, and place restrictions that maintain the meeting's order and civility. See *Stein*, 2023 WL 2700720, at *5; *Steinburg*, 527 F.3d at 385; *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 803 (11th Cir. 2004); *Wenthold*, 2012 WL 467325, at *9; and *Gjemre*, 2015 WL 433506, at *1. Considering Grisham's conduct during the hearings, O'Hare's decision to cancel his speaking time and eject Grisham is not objectively unreasonable in light of clearly established law. ROA.530.

If O'Hare violated Grisham's First Amendment rights, Grisham failed to plausibly allege that a reasonable presiding officer in O'Hare's position would know that he was violating any constitutional rights. *Anderson*, 483 U.S. at 639 (applying a reasonable officer standard). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments" and "protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). As the presiding officer, O'Hare made a split-second decision to eject Grisham in order to efficiently stay on topic and prevent further disruptions to the agenda. *Steinburg*, 527 F.3d at 385 (holding that a presiding officer may set subject matter agendas and cut off speech which they reasonably believe to be a disruption to the orderly and fair progress of the meeting).

Further, Grisham does not demonstrate that his rights under these particular circumstances were clearly established such that all officials in O'Hare's position would know immediately that silencing and ejecting him from the meeting would have violated his constitutional rights. *Morrow v. Meacham*, 917 F.3d at 874 (5th Cir. 2019) (quotations and citations omitted) ("The dispositive question is whether the violative nature of the particular conduct is clearly established."). Any alleged unconstitutionality of O'Hare's conduct was not "beyond debate" for the purposes of the qualified immunity analysis. *Id.*

It is difficult to fathom that O'Hare would consider himself obligated to allow Grisham, or any member of the public, to speak on irrelevant topics, use disruptive profanity, and hinder the orderly and efficient administration of the Commissioners Court, which would also prevent other citizens with relevant comments from exercising their First Amendment rights. *Steinburg*, 527 F.3d at 385 (the government has substantial interest in having meetings conducted with relative orderliness and fairness to all). As such, O'Hare is entitled to qualified immunity from Grisham's First Amendment claims. *Stein*, 2023 WL 2700720, at *5; *Steinburg*, 527 F.3d at 385; *Rowe*, 358 F.3d at 803; *Wenthold*, 2012 WL 467325, at *9; and *Gjemre*, 2015 WL 433506, at *1.

## III. The District Court Properly Dismissed Grisham's *Monell* Claim Against O'Hare

Grisham also brings a claim of "*Monell* Liability" against Defendants Tarrant County and O'Hare. ROA293-294. The District Court's dismissal of Grisham's *Monell* claim against Grisham was proper because *Monell* is a vehicle for municipal liability, not individual. *Monell v. Dep't of Soc. Services of City of New York,* 436 U.S. 658, 695 (1978).[7] Further, Grisham has not raised the issue on appeal, so it has been waived or abandoned.

---

[7] Regarding *Monell* liability against O'Hare, the court said "The law does not provide a cause of action imputing municipal liability against Tim O'Hare as an individual—either in his individual capacity or his official capacity. This claim fails as a matter of law." ROA.525.

## IV. Grisham's Section 1985 Claim is Barred by the Intracorporate Conspiracy Doctrine

Grisham, in his First Amended Complaint, alleged that all Defendants "conspired by using force, intimidation, or threat to directly prevent him from exercising his First and Second Amendment protected rights, which deprived him of the equal protection of the laws, or of equal privileges and immunities under the laws." ROA.293. With regard to O'Hare, Grisham's specific allegations are that "[d]efendants prepared for and planned their actions against Plaintiff and other citizens should Defendant O'Hare give the word or signal to arrest or threaten anyone for engaging in protected speech to which Defendant O'Hare disagreed." ROA.293. Finally, Grisham alleges that "[a]ll Defendants willfully engaged and participated in the conspiracy to deprive Plaintiff of his rights by enforcing the unconstitutional 'rules of decorum.'" ROA.293.

The district court, citing this Court's precedent in *Cinel v. Connick*, found that because Grisham failed to adequately plead a deprivation of his First Amendment rights, his conspiracy claim also failed. *See Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir. 1994). On appeal, Grisham argues that, because his predicate constitutional violations are adequately pleaded, both prongs of the conspiracy claim warrant reexamination on remand. Grisham Br. 43. This Court must affirm the district court's dismissal of Grisham's § 1985 conspiracy claim because Grisham failed to establish a valid First Amendment violation (as discussed *supra* Part I) and the claim

is legally invalid under the intracorporate conspiracy doctrine, as a single entity cannot conspire with itself.

To state a civil conspiracy claim under § 1983, Grisham must allege both an agreement among the Defendants to commit an illegal act and an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). A conspiracy requires two or more persons or entities. *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1953). Under the intracorporate conspiracy doctrine, a "corporation cannot conspire with itself any more than a private individual can," and "the acts of the agents are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (citing *Nelson Radio*, 200 F.2d at 914). "[B]ecause the acts of corporate agents are attributable to the corporation itself, a corporation lacks the multiplicity of actors required to form a conspiracy." *Young v. City of Irving*, No. 3:23-CV-1423-D, 2025 WL 888430, at *10 (N.D. Tex. Mar. 21, 2025) (quoting *Walters v. McMahen*, 795 F. Supp. 2d 350, 358 (D. Md. 2011).

The Fifth Circuit and its district courts permit the doctrine's application to public entities and to civil rights conspiracies under § 1983. *Collins v. Bauer*, No. 3:11-CV-00887-B, 2012 WL 443010, at *7 (N.D. Tex. Jan. 23, 2012), *rec. adopted*, 2012 WL 444014 (N.D. Tex. Feb. 10, 2012); see also *Swilley v. City of Houston*,

33

457 F. App'x 400, 404 (5th Cir. 2012) (per curiam); *Thompson v. City of Galveston*, 979 F. Supp. 504, 512 (S.D. Tex. 1997).

The doctrine would not apply if the corporate employees acted "for their own personal purposes" or "personal motives." *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998), *cert. denied sub nom.*, *Benningfield v. Nuchia*, 526 U.S. 1065 (1999). However, each individual Defendant was acting under color of law, as alleged by Grisham. ROA.292. All the individual Defendants' actions are attributable to the County, and Tarrant County cannot conspire with itself. *See Young*, 2025 WL 888430, at *10. Therefore, Grisham's conspiracy claim under 42 U.S.C. § 1985(3) is barred by the intracorporate conspiracy doctrine and was properly dismissed. *Hilliard*, 30 F.3d at 653; *Iqbal*, 556 U.S. at 678; Fed R. Civ. P. 12(b)(6).

## V. Grisham is Not Entitled to Amend His First Amended Complaint

Grisham contends that he should be allowed to amend his complaint to address his pleading deficiencies if the district court's judgment is not reversed. Grisham Br. 46–47. ROA.553. However, Grisham never asked the trial court for leave to amend, not even as alternative relief in his responses to the separate motions to dismiss. ROA.432-433; ROA.456-457; ROA.487-488. He also never presented a proposed Second Amended Complaint that would address his pleading deficiencies. Fed. R. Civ. P. 15(a); U.S. Northern District Loc. Civ. R. 15.1; *Stripling v. Jordan Prod.*

*Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) (denial of leave proper when amendment would be futile); *Hernandez v. Dallas County Sheriff*, No. 3:23-CV-01583-E, 2024 WL 4202381, at *13–14 (N.D. Tex. Sept. 16, 2024) (denial of leave to amend proper when plaintiff failed to attach proposed amended complaint).

Significantly, the district court previously ordered Grisham to amend his original complaint to address the assertion of qualified immunity by O'Hare and the Deputies. ROA.254 ("Plaintiff shall file an amended complaint . . . alleging with particularity all material facts establishing his right to recovery as to the individual defendants, including detailed facts supporting any contention that the plea of qualified immunity cannot be sustained."). Grisham could not correct those deficiencies in his first amended complaint, and the district court granted dismissal based on Grisham's inability to defeat the individual Defendants' qualified immunity. ROA.530; ROA.549-550. Therefore, it follows that Grisham already has pleaded his best case, and any further amendment would be futile. "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014).

The futility of further amendment is revealed in Grisham's plea for another opportunity to address his excessive force claim against Defendant Deputy Michael Jauss (which Grisham unequivocally abandoned, ROA.215), his LEOSA exception (any error by Defendant Chief Deputy Craig Driskell was reasonable), and a vague

de facto custom against Tarrant County. Grisham Br. 47. Grisham has not articulated how further amendment would be productive, Fed. R. Civ. P. 7(b)(1)(B), and these threadbare issues have no chance of affecting the district court's judgment against O'Hare. ROA.520-531. As a result, Grisham's request for leave to amend should be denied as being futile. *See Stripling*, 234 F.3d at 872-73; Fed. R. Civ. P. 15(a).

## VI.  Grisham Waived Additional Claims by Failing to Brief Them

Grisham has waived additional claims by failing to include them in his brief. Two of the waived claims concern O'Hare; other waived claims concern the other Defendants. First, Grisham waived his claim against O'Hare seeking punitive damages. Second, Grisham has waived his claim that the Rules of Decorum enforced by O'Hare, which have since been revised by the TCCC and are no longer in effect, were facially unconstitutional. Because these issues were not included in the Brief, Grisham has waived them. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument ... by failing to adequately brief the argument on appeal."); *Strong v. United Petroleum Transports, Inc.*, No. 24-10701, 2025 WL 2238570, at *1 (5th Cir. Aug. 6, 2025); *Indigenous Peoples of Coastal Bend v. United States Army Corps of Engineers*, 132 F.4th 872, 883 (5th Cir. 2025); Fed. R. App. P. 28(a)(8)(A). Further, the District Court was correct in dismissing Grisham's claims, as discussed below.

## A. Grisham Cannot Recover Punitive Damages

Even if the Court found that Grisham did not waive his claim to punitive damages by failing to brief the issue, Grisham still failed to state a claim for punitive damages from O'Hare. The district court found that there were no factual allegations within Grisham's amended complaint that plausibly alleged O'Hare acted with malicious intent toward Grisham's constitutional rights, citing *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994). ROA.525. Punitive damages may only be warranted "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Because Grisham has not pleaded any allegations as to O'Hare (or any other individual defendant) on these elements, this Court should affirm the district court's judgment dismissing Grisham's claim for punitive damages against O'Hare and all other individual defendants.

## B. Grisham's Facially Unconstitutional Challenge Is Insufficient

Even if the Court found that Grisham did not waive his facially unconstitutional challenge to the rules of decorum by failing to brief the issue, Grisham still failed to state a claim that the rules of decorum were facially unconstitutional. Grisham alleged that "Defendant O'Hare knew or should have known that his 'rules of decorum' were facially unconstitutional." ROA.278. A party

seeking to challenge the constitutionality of a statute generally must show that the statute violates the party's own rights. *New York v. Ferber*, 458 U.S. 747, 767 (1982). Facial challenges to a statute or, in this case, a purported policy, are "disfavored" by the courts. *Moody,* 603 U.S. at 723. Even in a facial challenge under the First Amendment, challengers face a heavy burden. *Id*. at 723. A proper First Amendment facial challenge proceeds in two steps. The first step is to determine every hypothetical application of the challenged law. *Id*. at 724–25. The second step is "to decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id*. at 725. If the law's unconstitutional applications substantially outweigh its constitutional ones, then, and only then, is the law facially unconstitutional. *Id*. at 725–26.

Grisham made no attempt to undertake this two-step analysis or to explain how the rules of decorum are facially unconstitutional. See generally ROA.285-287, 293–294. To the contrary, Tarrant County's Rules of Decorum are consistent with permissible restrictions on speech in a limited public forum. *See supra* Argument Section I.B.

## VII. The District Court's *Valenciano* Reference Was Not Reversible Error

In its Order Granting Defendant Deputies' Motion to Dismiss, the district court noted that Grisham completely failed to cite *Grisham v. Valenciano*, a binding Fifth Circuit precedent decided just one year prior. ROA.549. The court found this

omission particularly curious given that Grisham was the plaintiff in that prior action, which also involved his own disorderly conduct. ROA.549. The court observed that the omitted case appeared to preclude the very legal challenges Grisham now raises against all defendants. *Grisham v. Valenciano*, 93 F.4th 903, 901 (5th Cir. 2024). ROA.549. Consequently, in footnote 6, the court referenced Local Civil Rule 83.8(e), which defines unethical behavior, and Texas Disciplinary Rule of Professional Conduct 3.03(a)(4), which governs an attorney's duty of candor to the tribunal. The district court's brief two-sentence ethical rules discussion constitutes nonbinding judicial dictum at most and does not amount to reversible error. See *Autobahn Imports, L.P. v. Jaguar Land Rover N. Am., L.L.C.*, 896 F.3d 340, 346 (5th Cir. 2018) (judicial dictum is a statement made deliberately after careful consideration and for future guidance in the conduct of litigation). Alternatively, the court's comment is *obiter dictum*, which is a statement not necessary to the determination of the case and is neither binding nor precedential. *Autobahn*, 896 F.3d at 346 (a comment in a footnote is not necessary to the opinion's holding). Further, the district court independently and correctly dismissed the operative claims on their merits. ROA.538-550.

## CONCLUSION

This Court should affirm the district court's dismissal of Grisham's claims against O'Hare. Grisham did not suffer a constitutional injury because the

enforcement of the rules of decorum's restriction on profanity is permissible in a limited public forum under the First Amendment. O'Hare is entitled to qualified immunity because his conduct in enforcing the rules of decorum was within the parameters of clearly established law and his conduct was objectively reasonable. Grisham's *Monell* claim against O'Hare was properly dismissed since *Monell* liability only attaches to municipalities, not individuals. Grisham's § 1985 conspiracy claim was properly dismissed because Grisham failed to establish a valid First Amendment violation and the claim is legally invalid under the intracorporate conspiracy doctrine. Grisham is not entitled to leave to amend his pleadings because he did not seek leave to amend in the trial court. The district court dismissed claims which Grisham has either waived or abandoned on appeal since he did not brief them, and the court's judgment on those claims should be therefore affirmed. Finally, the district court's reference to a binding 5th Circuit case in a footnote of its dismissal order, which also referred Grisham to rules concerning ethical behavior and candor, was not reversible error but merely judicial dictum, at worst.

The district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6) should be affirmed. Accordingly, Defendant Tim O'Hare respectfully requests that this Court deny Appellant's issues on appeal and affirm the District Court's dismissal of Grisham's claims against O'Hare and the District Court's Final Judgment.

Respectfully submitted,

s/ *Katherine E. Owens*

**KATHERINE E. OWENS**
State Bar No. 24081683
keowens@tarrantcountytx.gov
**CRAIG M. PRICE**
State Bar No. 16284170
cmprice@tarrantcountytx.gov
Assistant Criminal District Attorneys

**PHIL SORRELLS**
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS
Tarrant County District Attorney's Office
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor
Fort Worth, Texas 76196
817-884-1233 – Telephone
817-884-1675 – Facsimile
**ATTORNEYS FOR THE DEFENDANT**

# CERTIFICATE OF SERVICE

I certify that, on July 2, 2026, a true and correct copy of the above and foregoing document was served via email and the Court's CM/ECF Document Filing System upon the following counsel:

CJ Grisham
Law Offices of CJ Grisham, PLLC
3809 S. General Bruce Dr., Ste 103-101
Temple, Texas 76502
Telephone: 254-405-1726
cj@cjgrisham.com
Pro Se Counsel for Appellant; and

to Mr. Lyle W. Cayce, Clerk of the United Stated Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System.

*s/ Katherine E. Owens*
**KATHERINE E. OWENS**

# CERTIFICATE OF COMPLIANCE

### With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

The undersigned counsel certifies this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains **9,712** words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), as computed by the word-processing system used to prepare this brief.

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows 365, version 2604 in 14-point Century Schoolbook typeface (other than footnotes, which are in 12-point Century Schoolbook typeface per 5TH CIR. R. 32.1).

s/ *Katherine E. Owens*
**KATHERINE E. OWENS**

Dated: July 2, 2026