Case No. 26-10335

# United States Court of Appeals
# for the Fifth Circuit

C. J. Grisham,

*Plaintiff – Appellant,*

v.

Tim O'Hare, In his personal and official capacities; Chief Deputy Craig Driskell, In his supervisory, official, and personal capacities; Chief Deputy Jennifer Gabbert, In her personal and official capacities; Sergeant Orville George, In his personal and official capacities; Sergeant Michael Jauss, In his personal and official capacities; Tarrant County,

*Defendants – Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

## BRIEF FOR DEFENDANT-APPELLEE TARRANT COUNTY

PHIL SORRELLS
Tarrant County Criminal
District Attorney

KATHERINE E. OWENS
Texas State Bar No. 24081683
CRAIG M. PRICE
Texas State Bar No. 16284170
Assistant Criminal District Attorneys
401 W. Belknap, 9th Floor – Civil
Fort Worth, Texas 76196
817-884-1233 – Telephone
817-884-1675 – Facsimile
keowens@tarrantcountytx.gov
cmprice@tarrantcountytx.gov

COUNSEL FOR DEFENDANT - APPELLEE

## STATEMENT REGARDING ORAL ARGUMENT

Tarrant County Appellee does not believe that oral argument is necessary because this appeal can be decided by the application of well-established precedent to the record on appeal. Therefore: (1) the dispositive issues already have been authoritatively decided, and (2) the facts and legal arguments are adequately presented in the briefs and record, so the decisional process would not be significantly aided by oral argument. Fed. R. App. P. 34(a)(2)(B), (C).

**TABLE OF CONTENTS**

PAGE

STATEMENT REGARDING ORAL ARGUMENT ............................................... ii

TABLE OF CONTENTS.................................................................................. iii

TABLE OF AUTHORITIES ...............................................................................v

STATEMENT OF JURISDICTION....................................................................1

SUMMARY OF THE ARGUMENT ..................................................................1

STATEMENT OF THE CASE.............................................................................1

STATEMENT OF FACTS ...................................................................................2

STANDARD OF REVIEW .................................................................................5

I.      Motion to Dismiss...................................................................................5

II.     *Monell* liability.......................................................................................6

ARGUMENT .......................................................................................................8

I.      Grisham Failed to Adequately Allege a *Monell* Violation Against
        Tarrant County....................................................................................8

        A.      The district court properly dismissed Grisham's First Amendment
                Claim based on the actions of County Judge Tim O'Hare ..................9

                1.  Grisham waived any claim that the Rules of Decorum were
                    facially unconstitutional .................................................................9

                2.  Grisham erroneously conflates a *traditional* public forum with
                    a *limited* public forum .................................................................11

                    a.  *Traditional public forum vs. Limited public forum* ..................12

                    b.  *Prohibitions on profanity are constitutionally permissible
                        in a limited public forum*.........................................................13

        B.      District court properly dismissed Grisham's First Amendment
                claims based on the Deputies' conduct ..............................................19

C.    District court properly dismissed Grisham's Second Amendment claims based on the Deputies' conduct on January 14, 2025 .............20

D.    District court properly dismissed Grisham's Second Amendment claims based on the Deputies' conduct on January 28, 2025 .............23

E.    Grisham failed to plausibly allege a policy or custom as a moving force....................................................................................................24

F.    Grisham failed to allege a policymaker .............................................27

II.    District Court's reference to *Grisham v. Valenciano* was not error..............31

III.    Section 1985(3) conspiracy claims are barred by the Intracorporate Conspiracy Doctrine ...................................................................................34

IV.    Grisham waived additional claims by failing to brief them ..........................35

V.    Grisham is not entitled to amend his complaint ...........................................36

PRAYER.................................................................................................................37

CERTIFICATE OF SERVICE ...............................................................................38

CERTIFICATE OF COMPLIANCE ......................................................................39

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Alexander v. S. Health Partners, Inc.*,
No. 3:22-CV-0395-X, 2023 WL 3961704 (N.D. Tex. June 12, 2023) .............5, 9

*Anderson v. U.S. Dep't of Hous. & Urban Dev.*,
554 F.3d 525 (5th Cir. 2008) ...................................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................ passim

*Autobahn Imports, L.P. v. Jaguar Land Rover N. Am., L.L.C.*,
896 F.3d 340 (5th Cir. 2018) ........................................................ 31, 32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................5

*Bennett v. Pippin*,
74 F.3d 578 (5th Cir. 1996) ..............................................................28

*Benningfield v. City of Houston*,
157 F.3d 369 (5th Cir. 1998) ............................................................34

*Blackburn v. City of Marshall*,
42 F.3d 925 (5th Cir. 1995) .............................................................5, 6

*Bolton v. City of Dallas, Tex.*,
541 F.3d 545 (5th Cir. 2008) ............................................................31

*Bryan Cnty. v. Brown*,
520 U.S. 397 (1997)........................................................................25

*Cass v. City of Abilene*,
814 F.3d 721 (5th Cir. 2016) ........................................................ 18, 23

*Chaplinsky v. New Hampshire*,
315 U.S. 568 (1942)........................................................................19

*Chiu v. Plano Indep. Sch. Dist.*,
260 F.3d 330 (5th Cir. 2001) ........................................................ 12, 13

*City of St. Louis v. Praprotnik,*
485 U.S. 112 (1988)...................................................................... 28, 29

*Cohen v. California,*
403 U.S. 15 (1971)...............................................................................17

*Culbertson v. Lykos,*
790 F.3d 608 (5th Cir. 2015) ...........................................................25

*Daves v. Dallas Cnty.,*
22 F.4th 522 (5th Cir. 2022) .............................................................28

*Doe AW v. Burleson Cnty.*
No. 1:20-CV-00126-SH, 2022 WL 875912, at *4 (W.D. Tex. Mar. 24, 2022)...30

*Doe v. Burleson Cnty., Tex.,*
86 F.4th 172 (5th Cir. 2023) .............................................................29

*Ex Parte Poe,*
491 S.W.3d 348 (Tex. App.—Beaumont 2016, pet. ref'd) ...............33

*Fairchild v. Liberty Indep. Sch. Dist.,*
597 F.3d 747 (5th Cir. 2010) ....................................................... 12, 13

*Familias Unidas v. Briscoe,*
619 F.2d 391 (5th Cir. 1980) ....................................................... 28, 29

*Finger v. Garza,*
No. SA–02–CA–0956–RF, 2003 WL 22768236 (W.D. Tex. Oct.7, 2003).. 15, 26

*Florida v. Royer,*
460 U.S. 491 (1983).............................................................................21

*Gjemre v. Leffingwell,*
No. A-13-CA-729-SS, 2015 WL 433506 (W.D. Tex. Feb. 2, 2015) ........... 16, 18

*Gonzalez v. Kay,*
577 F.3d 600 (5th Cir. 2009) ..............................................................6

*Good News Club v. Milford Cent. Sch.,*
533 U.S. 98 (2001)..............................................................................12

*Grisham v. State*,
No. 03-14-00137-CR, 2017 WL 1130371 (Tex. App.—Austin Mar. 23, 2017,
no pet.) ......................................................................................................33

*Grisham v. Valenciano*,
93 F.4th 903 (5th Cir. 2024) ................................................................ 8, 18, 33

*Haines v. Kerner*,
404 U.S. 519 (1972)......................................................................................6

*Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*,
543 F.3d 221 (5th Cir. 2008) ......................................................................6

*Hare v. City of Corinth, Miss.*,
135 F.3d 320 (5th Cir. 1998) ....................................................................23

*Heaney v. Roberts*,
846 F.3d 795 (5th Cir. 2017) ............................................................. 13, 16

*Hernandez v. Dallas Cnty. Sheriff*,
No. 3:23-CV-01583-E, 2024 WL 4202381 (N.D. Tex. Sept. 16, 2024)..............36

*Hershey v. City of Bossier City*,
156 F.4th 555 (5th Cir. 2025) ...................................................................18

*Hicks-Field v. Harris Cnty, Texas*,
860 F.3d 803 (5th Cir.2017) ........................................................ 7, 25, 27, 31

*Hilliard v. Ferguson*,
30 F.3d 649 (5th Cir. 1994) ................................................................. 34, 35

*Holcomb & Christopher John Grisham v. McCraw*,
262 F. Supp. 3d 437 (W.D. Tex. 2017) .........................................................33

*Indigenous Peoples of the Coastal Bend v. U.S. Army Corps of Eng'rs*,
132 F.4th 872 (5th Cir. 2025) ................................................... 11, 20, 36

*Jett v. Dall. Indep. Sch. Dist.*,
7 F.3d 1241 (5th Cir. 1993) ...................................................... 30, 31

*Jimerson v. Lewis*,
94 F.4th 423 (5th Cir. 2024) ...................................................................9

*Johnson v. Harris Cnty.*,
 83 F.4th 941 (5th Cir. 2023) ...............................................................25

*Justice v. Hoesemann*,
 771 F.3d 285 (5th Cir. 2014) ...............................................................11

*Leffall v. Dallas Indep. Sch. Dist.*,
 28 F.3d 521 (5th Cir. 1994) .............................................................8, 18

*LIA Network v. City of Kerrville, Texas,*
 163 F.4th 147 ............................................................................... 11, 18

*Marucci Sports, L.L.C. v. NCAA*,
 751 F.3d 368 (5th Cir. 2014) ...............................................................37

*Meadours v. Ermel*,
 483 F.3d 417 (5th Cir. 2007) ......................................................... 18, 23

*Mendenhall v. Riser*,
 213 F.3d 226 (5th Cir. 2000) ...............................................................23

*Merriott v. City of Bossier City*,
 No. 25-30325, 2026 WL 1830752 (5th Cir. June 25, 2026) ............................7, 10

*Monell v. Dep't of Soc. Servs. of City of New York*,
 436 U.S. 658, (1978)............................................................... 2, 6, 7

*Moody v. NetChoice, LLC*,
 603 U.S. 707 (2024)...........................................................................10

*Navarette v. California*,
 572 U.S. 393 (2014)...........................................................................23

*Nelson Radio & Supply Co. v. Motorola, Inc.*,
 200 F.2d 911 (5th Cir. 1952) ...............................................................34

*New York v. Ferber*,
 458 U.S. 747 (1982)...........................................................................10

*Pahls v. Thomas*,
 718 F.3d 1210 (10th Cir. 2013) ...........................................................13

*Pearson v. Callahan*,
555 U.S. 223 (2009)..................................................................................8

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986)................................................................................30

*Pena v. City of Rio Grande City*,
879 F.3d 613 (5th Cir. 2018) ...............................................................7, 25

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
460 U.S. 37 (1983)...................................................................................12

*Pineda v. City of Houston*,
291 F.3d 325 (5th Cir. 2002) ....................................................................7

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001) ...............................................................6, 25

*Ratliff v. Aransas Cnty, Texas*,
948 F.3d 281 (5th Cir. 2020) ............................................................ 26, 27

*Ream v. City of Heath*,
No. 14–4338, 2015 WL 4393307 (N.D. Tex. Jul. 16, 2015)................................13

*Rivera v. Houston Indep. Sch. Dist.*,
349 F.3d 244 (5th Cir. 2003) ....................................................................7

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
515 U.S. 819 (1995)...................................................................................13

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
509 F.3d 673 (5th Cir. 2007) ....................................................................6

*Stein v. Dallas Cnty.*,
No. 3:22-CV-1255-D, 2023 WL 2700720 (N.D. Tex. March 29, 2023) .............16

*Steinburg v. Chesterfield Cnty. Planning Comm'n*,
527 F.3d 377 (4th Cir. 2008) ............................................................ 15, 18

*Stripling v. Jordan Prod. Co., LLC*,
234 F.3d 863 (5th Cir. 2000) ............................................................ 36, 37

*Strong v. United Petroleum Transports, Inc.*,
No. 24-10701, 2025 WL 2238570 (5th Cir. Aug. 6, 2025) ...................... 11, 20, 36

*Sweetin* v. *City of Texas City, Texas*,
48 F.4th 387 (5th Cir. 2022) ..................................................................27

*Terry v. Ohio*,
392 U.S. 1 (1968) ..................................................................................21

*Turner v. Driver,*
848 F.3d 678, 693 (5th Cir. 2017) ................................................. 20, 21

*United States v. Abdo*,
733 F.3d 562 (5th Cir. 2013) ................................................................21

*United States v. Arvizu*,
534 U.S. 266 (2002) ....................................................................... 21, 23

*United States v. Cortez*,
449 U.S. 411 (1981) ..............................................................................21

*United States v. Hensley,*
469 U.S. 221 (1985) ..............................................................................21

*United States v. Sanders*,
994 F.2d 200 (5th Cir. 1993) ......................................................21, 22, 23

*United States v. Sokolow*,
490 U.S. 1 (1989) ..................................................................................21

*Valle v. City of Houston*,
613 F.3d 536 (5th Cir. 2010) .................................................................7

*Verastique v. City of Dallas*,
106 F.4th 427 (5th Cir. 2024) ...................................................... 26, 27

*Walters v. McMahen*,
795 F. Supp. 2d 350 (D. Md. 2011) .....................................................34

*Webb v. Town of Saint Joseph*,
925 F.3d 209 (5th Cir. 2019) ........................................................ 7, 26, 30

*Wenthold v. City of Farmers Branch*,
No. 3:11–CV–0748–B, 2012 WL 467325 (N.D. Tex. Feb. 14, 2012) ......... passim

*White v. City of Norwalk*,
900 F.2d 1421 (9th Cir. 1990) .................................................................17

*Wright v. McCain,*
703 F. App'x 281 (5th Cir. 2017) .............................................................6

*Young v. City of Irving,*
No. 3:23-CV-1423-D, 2025 WL 888430 (N.D. Tex. Mar. 21, 2025) ........... 34, 35

*Zarnow v. City of Wichita Falls, Tex.*,
614 F.3d 161 (5th Cir. 2010) ...................................................................31

**Statutes**

42 U.S.C. § 1983 ................................................................... 2, 6, 7, 8

42 U.S.C. § 1985(3) ....................................................................35

Tex. Const. Art. V, § 18(b) .............................................................28

Tex. Gov't Code § 411.205(1) .........................................................22

Tex. Gov't Code § 411.207(a) .................................................... 22, 24

Tex. Local Gov't Code § 81.001(b) ..................................................28

Tex. Occ. Code § 1701.051 .............................................................3

Tex. Penal Code § 46.15(a)(5) .......................................................22

Tex. Penal Code § 46.15(b)(6) .......................................................22

**Rules**

Fed. R. App. P. 28(a)(8)(A) ...................................................... 11, 20, 36

Fed. R. Civ. P. 7(b)(1)(B) ..............................................................37

Fed. R. Civ. P. 8 ...........................................................................5

Fed. R. Civ. P. 8(a)(2) ................................................................5, 9

Fed. R. Civ. P. 12(b)(6)............................................................................ passim

Fed. R. Civ. P. 15(a)................................................................................ 36, 37

Tex. Disciplinary Rule of Prof'l Conduct R. 3.03(a)(4) ..........................................31

**Other Authorities**

Katlyn E. DeBoer*, Clash of the First and Second Amendments: Proposed
    Regulation of Armed Protests*, 45 Hastings Const. L. Q. 333 (2018) ..................32

C.J. Grisham, *A Gun Owner Speaks:  My Case for Open Carry,*
    The Daily Beast (Jun 12, 2014, 5:45 AM), https://www.thedailybeast.com/a-
    gun-owner-speaks-my-case-for-open-carry..........................................................33

C. J. Grisham, YouTube channel,
    https://www.youtube.com/c/CJGrishamLaw......................................................34

COMES NOW, Appellee Tarrant County ("Tarrant County"), by and through the undersigned counsel, and files this its Brief of Appellee Tarrant County, and respectfully shows this Court the following:

## STATEMENT OF JURISDICTION

Tarrant County agrees with Plaintiff-Appellant's jurisdictional statement. Grisham Br. 1.

## SUMMARY OF THE ARGUMENT

The district court properly dismissed all of Appellant's claims against the individual Defendants — County Judge Tim O'Hare and the four Sheriff's Deputies — because he failed to plausibly allege constitutional violations against the individual Defendants that would defeat their assertion of qualified immunity. ROA.531; ROA.549-550. Fed. R. Civ. P. 12(b)(6). Therefore, the district court properly dismissed Appellant's derivative *Monell* claims against Tarrant County. ROA.550 (opinion); ROA.553 (judgment).

## STATEMENT OF THE CASE

Tarrant County agrees generally with Appellant's Statement of the Case. Furthermore, Appellant has sued Tarrant County for: (1) failure to train (i.e., deliberate indifference); and (2) *Monell* liability only for First and Second Amendment violations. *See* ROA.260, ¶ 11; ROA.288-292, ¶¶ 176-190 (Count IV — failure to train); ROA.293-295, ¶¶ 198-211 (Count VI – *Monell* liability). *See*

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

Appellant did not assert a *Monell* claim against Tarrant County for any alleged

Fourth Amendment violation. ROA.288-292.

## STATEMENT OF FACTS

Appellant-Plaintiff C. J. Grisham ("Grisham") has sued Chief Deputy Craig

Driskell, Sergeant Orville George, Sergeant Michael Jauss, and Chief Deputy

Jennifer Gabbert (collectively "Deputies" or individually named), Tim O'Hare, and

Tarrant County, a political subdivision of the State of Texas, under 42 U.S.C. § 1983

for an alleged civil rights conspiracy and denial of his First, Second, Fourth, Ninth,

and Fourteenth Amendment rights under the United States Constitution. ROA.257-

258, ROA.282-85, ¶¶ 1, 126-211. Appellees are the five individual Defendants and

Tarrant County.

On January 14, 2025, Grisham was in the audience of a Tarrant County

Commissioners Court ("Commissioners Court") meeting when he left the courtroom

for a restroom break.[1]  ROA.263, ¶¶ 23-24. Grisham attempted to return to the

meeting while carrying a handgun. ROA.263-264, ¶¶ 23-27. Defendant Chief

Deputy Craig Driskell ("Driskell"), relying on guidance from the Texas Commission

---

[1] The Court must accept as true only *well-pleaded* facts, but Tarrant County, by identifying Grisham's alleged facts herein for purposes of this motion, do not admit Grisham's alleged facts.

on Law Enforcement[2] ("TCOLE") that Grisham was *not* a qualified law enforcement officer, denied him entry with a weapon. ROA.264, ¶¶ 28-31. During a subsequent heated verbal exchange while surrounded by an agitated crowd, Grisham used profanity and failed to provide verifiable credentials allowing him to openly carry a handgun into the Commissioners Court. ROA.265, ¶¶ 36-37 *(see* photo at ROA.269 – Grisham with arms raised and wearing light-colored baseball cap). Grisham alleged he and Driskell, but no other Defendants, "were arguing over whether Plaintiff was who he claimed to be." ROA.267, ¶ 45. Grisham alleged that Driskell told Grisham TCOLE did not consider him to be a licensed peace officer. ROA.264, ¶¶ 30-31. Grisham also alleged that Defendant Driskell doubted his credentials, saying "I don't care. You can [generate] your own little badge and that's fine." ROA.264, ¶ 31; *see also* ROA.264, ¶ 30 (Driskell also expressed doubt about Grisham's retired law enforcement status).

After Grisham was handcuffed, Defendant Chief Deputy Jennifer Gabbert ("Gabbert") ordered deputies to escort Grisham away from the crowd and into a room, where the deputies were able to view his state license to carry a handgun ("LTC"). ROA.270, ¶¶ 54-58. However, Grisham does not allege that he showed his credentials to the Deputies at that time or that they actually saw his credentials; he

---

[2] Texas Commission on Law Enforcement ("TCOLE") is the State agency that licenses peace officers. https://www.tcole.texas.gov/; s*ee also* Tex. Occ. Code § 1701.051.

only alleges that the Deputies "were *able to view* his LTC and retired law enforcement credentials since they are kept together in his wallet." ROA.270, ¶¶ 56-57 (emphasis added). After forty minutes, Grisham was released without any charges being filed against him. ROA.270, ROA.272, ¶¶ 59, 65. Grisham did not return to the Commissioners Court meeting that day.[3] ROA.272, ¶¶ at 65-67.

On January 28, 2025, Grisham, again while carrying a handgun, visited the Commissioners Court for another public meeting. ROA.273, ¶¶ 72-73. After ignoring Defendant Sergeant Orville George ("George") outside of the courtroom, Grisham alleges he was physically blocked and restrained by George until he produced his LTC, after which he was allowed entry into the public meeting. ROA.274-277, ¶¶ 78-84, 97.

Later that same meeting, while speaking to Commissioners Court during public comments before a vote on the adoption of proposed rules of decorum, Grisham addressed another matter and used profanity. ROA.277, ROA.279, ¶¶ 98, 106-10. Defendant County Judge Tim O'Hare ("O'Hare") ordered Grisham to be removed immediately for using vulgar profanity in a limited public forum. ROA.279-280, ¶¶ 109, 117 ("Plaintiff was escorted out of the chambers under threat of arrest for repeating what he told the Sheriff in an expressive way.").

---

[3] Grisham asserted no specific facts regarding Defendant Jauss at the meeting on January 14, 2025, including whether he was even present. ROA.262-273, ROA.287-288, ¶¶ 19-71, 166-75.

**STANDARD OF REVIEW**

## I. Motion to Dismiss

Federal Rule of Civil Procedure 8's notice pleading standard requires a plaintiff "to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Alexander v. S. Health Partners, Inc.*, No. 3:22-CV-0395-X, 2023 WL 3961704, at *8-9 (N.D. Tex. June 12, 2023); Fed. R. Civ. P. 8(a)(2). Grisham has failed to adequately allege any claims against the Defendant-Appellees according to the well-established pleading standard.

To avoid a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This demands more than alleging that "the-defendant-unlawfully-harmed-me ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). Claims must include enough factual allegations "to raise a right to relief above the speculative level ...." *Twombly*, 550 U.S. at 555.

"Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "Threadbare recitals of the elements of

5

a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

*Pro se* plaintiff complaints are liberally construed in the plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, as a licensed attorney who represents himself in this matter, Grisham is held to a higher standard than an unlicensed or uneducated *pro se* litigant. *Wright v. McCain,* 703 F. App'x 281, 284 (5th Cir. 2017).

The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79; *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

## II. *Monell* liability

Municipalities, including counties, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 224 (5th Cir. 2008). It is well-settled that a municipality cannot be liable under a theory of respondeat superior. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). Rather, a municipality may be liable under § 1983 only if the execution of one of its customs or policies deprives a plaintiff's constitutional rights. *Monell*, 436 U.S. at

690-91. *See also Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). Municipal liability under § 1983 requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom. *Monell*, 436 U.S. at 690-91; *Hicks-Field v. Harris Cnty, Texas*, 860 F.3d 803, 808 (5th Cir.2017). *See also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

Official municipal policy includes the decisions of the government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691-95. There are three ways to show an "official policy":

(1)     "written policy statements, ordinances, or regulations";

(2)     a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents" the city's policy; or

(3)     under "rare circumstances," a single act can be considered a policy if done by an official or entity with "final policymaking authority."

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (citations and quotations omitted); *see also Merriott v. City of Bossier City*, No. 25-30325, 2026 WL 1830752, *10 (5th Cir. June 25, 2026) (citing *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)).

**ARGUMENT**

**I.     Grisham Failed to Adequately Allege a *Monell* Violation Against Tarrant County.**

The district court correctly stated that, "[t]o recover a judgment against a [municipality,] under § 1983, a plaintiff must allege and establish that he sustained a deprivation of a constitutional or federally protected right because some official policy, practice, or custom of that governmental entity." ROA.552 (quoting *Grisham v. Valenciano*, 93 F.4th 903, 912 (5th Cir. 2024)); *see also Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994) (the first inquiry is whether the plaintiff has alleged a violation of a constitutional right).

Having dismissed all claims asserted against Judge O'Hare and the four Deputies, the district court determined that, "Grisham has failed to establish there were any constitutional violations based on the conduct in question; 'thus, [Tarrant County] is not liable.'" ROA.552 (quoting *Grisham*, 93 F.4th at 912). ROA.531 (O'Hare's dismissal); ROA.547-549 (Deputies' dismissal). The district court correctly held that Grisham failed to defeat the individual Defendants' assertion of qualified immunity, and there was no constitutional violation that would support Monell liability against Tarrant County. ROA.530-531, ROA.547-550, ROA.551-552; *see Pearson v. Callahan*, 555 U.S. 223, 244 (2009); *see also Grisham*, 93 F. 4th at 912. As a result, the district court's dismissal of Tarrant County pursuant to Rule 12(b)(6) should be affirmed. ROA.552; ROA.553. *Iqbal,* 556 U.S. at 678;

*Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024); *Alexander*, 2023 WL 3961704, at *8-9. Fed. R. Civ. P. 8(a)(2).

**A.     The district court properly dismissed Grisham's First Amendment claim based on the actions of County Judge Tim O'Hare.**

Grisham failed to adequately allege that Judge O'Hare committed a violation of his First Amendment rights. ROA.531; ROA.547-549; ROA.552.

**1.     Grisham waived any claim that the Rules of Decorum were facially unconstitutional.**

The gravamen of Grisham's First Amendment claim arises from Judge O'Hare's removal of Grisham from Commissioners Court following his vulgar statement during public comment. ROA.277, ROA.279, ¶¶ 98, 106-110; ROA.547-549. Grisham wanted to speak at the January 28, 2025, meeting about his opinions on the "new rules of decorum." ROA.277, ROA.279, ROA.285, ¶¶ 98, 106-110, 152. During the course of his public comment, Grisham made the following statement:

> "I came here last time [January 14, 2025] because my good friend, Mason Yancy, was murdered in the jail… But . . . the thugs that you have outside the door there assaulted me, . . . Thankfully, Sheriff Waybourne [sic] thought the better of valor and listened to me when I told him to read the *fucking* law."

ROA.279, ¶ 108 (emphasis added). As soon as Grisham uttered the vulgar profanity, Judge O'Hare interrupted him and instructed the Deputies to "remove him immediately for that comment." ROA.279, ¶ 109.

Grisham alleged that "Defendant O'Hare knew or should have known that his 'rules of decorum' were *facially unconstitutional*." ROA.278, ¶ 101 (emphasis added); *see also* ROA.278, ROA.280, ROA.285, ROA.286-287, ¶¶ 102, 104, 119, 152, 161-65 (alluding to constitutional violation of free speech). A party seeking to challenge the constitutionality of a statute generally must show that the statute violates the party's own rights. *New York v. Ferber*, 458 U.S. 747, 767 (1982). Facial challenges to a statute or, in this case, a purported policy, are "disfavored" by the courts. *Moody. v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). Even in a facial challenge under the First Amendment, challengers face a heavy burden. *Id*. at 723. A proper First Amendment facial challenge proceeds in two steps. The first step is to determine every hypothetical application of the challenged law. *Id*. at 724-25. The second step is "to decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id*. at 725. If the law's unconstitutional applications substantially outweigh its constitutional ones, then, and only then, is the law facially unconstitutional. *Id*. at 725-26. *See Merriott*, 2026 WL 1830752, at *6 (city may restrict speech in a limited public forum, but must do so reasonably).

Grisham made no attempt to undertake this two-step analysis or to explain how the rules of decorum are facially unconstitutional, either in his First Amended Complaint or in his responses to the Defendant-Appellees' separate motions to dismiss. *See generally* ROA.285-287, ROA.294-295, ¶¶ 148-65, 199-211; ROA.399-433; ROA.435-

457; ROA.449-489. As a result, the district court did not conduct a facially unconstitutional analysis in its opinions regarding O'Hare or the four Deputies, and Grisham did not invoke it as an issue in his brief. Grisham Br. 2 (first Issue); ROA.520-531; ROA.532-550. Instead, Grisham appears to assert only an "as applied" argument. *See* Grisham Br. 2, 11, 15-25. *See also LIA Network v. City of Kerrville, Texas*, 163 F.4th 147, 161 and 161, n.38 (5th Cir. 2025) ("the distinction between facial and as-applied challenges . . . is murky: 'confusion abounds' over the attributes and analysis necessary for each type of cha3 F.4th 926lenge.") (citing *Justice v. Hoesemann*, 771 F.3d 285, 292 (5th Cir. 2014)). By failing to address his "facially unconstitutional" claim in his brief, Grisham has waived any argument that the rules of decorum were facially unconstitutional. *See Strong v. United Petroleum Transports, Inc.*, No. 24-10701, 2025 WL 2238570, at *1 (5th Cir. Aug. 6, 2025) (per curiam) (failure to brief); *Indigenous Peoples of the Coastal Bend v. U.S. Army Corps of Eng'rs*, 132 F.4th 872, 884 (5th Cir. 2025) (any issue not raised in appellant's opening brief is forfeited); Fed. R. App. P. 28(a)(8)(A).

### 2. Grisham erroneously conflates a *traditional* public forum with a *limited* public forum.

Grisham argues that O'Hare's removal of him from the January 28, 2025, Commissioners Court violated his First Amendment right to express himself as he wished in the Commissioners Court meeting. Grisham Br. 2, 17. Grisham admits that the Commissioners Court is a limited public forum, but he attempts to impose

the strictures of a traditional public forum to show that his rights have been violated. ROA.443; Grisham Br.16.

### a. *Traditional public forum vs. Limited public forum*

A traditional public forum includes "streets and parks which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 757-58 (5th Cir. 2010) (quoting *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344-45 (5th Cir. 2001) (per curiam)). The government's efforts to restrict speech in traditional and designated public forums must withstand strict scrutiny, i.e., show that a content-based prohibition serves a compelling state interest and is narrowly tailored. See *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

Limited public forums, in contrast, are "for public expression of particular kinds or by particular groups." *Fairchild*, 597 F.3d at 758 (quoting *Chiu*, 260 F.3d at 346). In a limited public forum, the government "is not required to and does not allow persons to engage in every type of speech." *Fairchild*, 597 F.3d at 758 (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001)). The government may restrict speech in these limited public forums, such as the commissioners court, as long as the regulation "(1) does not discriminate against speech on the basis of

viewpoint and (2) is reasonable in light of the purpose served by the forum." *Fairchild*, 597 F.3d at 758 (quoting *Chiu*, 260 F.3d at 346). "Viewpoint discrimination exists when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Heaney v. Roberts*, 846 F.3d 795, 801-02 (5th Cir. 2017) (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)). *See Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013) (plaintiff must show the defendant acted with a viewpoint discriminatory purpose).

In a limited public forum, the government "may properly limit discussions during its meetings to specified agenda items and impose reasonable, viewpoint-neutral restrictions on speech to preserve the civility and decorum necessary to further the purpose of the meeting." *Ream v. City of Heath*, No. 14–4338, 2015 WL 4393307, at *3 (N.D. Tex. Jul. 16, 2015) (internal quotations omitted). "Restrictions on speech in a limited public forum are subject to a lower level of scrutiny than those in a traditional or designated public forum." *Wenthold v. City of Farmers Branch*, No. 3:11–CV–0748–B, 2012 WL 467325, at *7 (N.D. Tex. Feb. 14, 2012), aff'd, 532 F. App'x 474 (5th Cir. 2013) (per curiam).

> **b.** ***Prohibitions on profanity are constitutionally permissible in a limited public forum.***

Grisham presents a fundamentally flawed understanding of the First Amendment that ignores the well-established balance between free speech and the

government's authority to maintain order and civility in a limited public forum. Grisham Br. 16. He incorrectly asserts that profanity in a limited public forum cannot be restricted, but this claim misapplies First Amendment protections and disregards controlling precedents. ROA.285. In a limited public forum, like the January 28, 2025 Commissioners Court meeting, Grisham's First Amendment rights have limits. The Northern District of Texas previously held that:

> Courts discussing public comment periods at government meetings have routinely found that the governing body may…prevent disruptions of the meeting…[A governing body's] legitimate interest in conducting efficient, orderly meetings…[permits the] ejection of disruptive citizens from a meeting under decorum regulations[, and a]…'great deal of discretion'…must be left to the governing entity.

*Wenthold*, 2012 WL 467325, at *9. In *Wenthold*, the court held that ejecting a disruptive citizen from a city council meeting for violating decorum rules, including speaking on irrelevant matters, is constitutionally permissible. *Id*. at 10. There is "no authority that a presiding officer's response to a speaker's off-topic remarks necessarily opens the First Amendment floor to discussion of that topic." *Id*. at 10. A presiding officer may stop the speaker if the speech becomes irrelevant or repetitious. *Id*. at 9.

For public meetings to function properly, a citizen's First Amendment rights must be balanced with the need to conduct orderly public meetings. *Id*. at 9. Courts have therefore held that governmental bodies, like the TCCC, are justified:

> . . . in imposing reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business. . . . Because of government's substantial interest in having such meetings conducted with relative orderliness and fairness to all, officials presiding over such meetings must have discretion, under the 'reasonable time, place, and manner' constitutional principle, to set subject matter agendas, and to cut off speech which they *reasonably* perceive to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion, whether by virtue of its irrelevance, its duration, or its very tone and manner . . . . [D]isruption of the orderly conduct of public meetings is indeed one of the "substantive evils that [government] has a right to prevent."

*Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 385 (4th Cir. 2008) (internal quotations omitted), *cert. denied*, 555 U.S. 1046 (2008) (emphasis in original). In *Steinburg*, the Fourth Circuit held that a content-neutral policy against personal attacks is not facially unconstitutional, so long as that policy serves a legitimate public interest in that limited public forum and is "unrelated to the content of expression…even if it has an incident[al] effect on some speakers or messages but not others." *Id.* at 387 (citation omitted). A government body has a legitimate government interest in conducting orderly, efficient meetings. *Finger v. Garza*, No. SA–02–CA–0956–RF, 2003 WL 22768236, at *2 (W.D. Tex. Oct.7, 2003) (granting summary judgment in favor of the city), *aff'd*, 98 F. App'x 326 (5th Cir. 2004). In *Gjemre v. Leffingwell*, the district court granted qualified immunity to the defendant-mayor, who ejected a public speaker during a public comment session in which the speaker strayed off the agenda item at issue and exhibited disruptive behavior. The court held that, "While *Gjemre* has a legally protected right to address the City

Council, that right is subject to the City's interest in conducting orderly meetings via its rules of procedure and decorum." *Gjemre v. Leffingwell*, No. A-13-CA-729-SS, 2015 WL 433506, at *6 (W.D. Tex. Feb. 2, 2015) (granting dismissal under Rule 12(b)(6) and summary judgment).

Grisham fails to plausibly allege that O'Hare was motivated by Grisham's ideology, perspective, or opinion. *See Heaney*, 846 F.3d at 802. Grisham was allowed to speak on issues in the Tarrant County Jail, as well as issues he faced with TCSO deputies on January 14, 2025, during the previous Commissioners Court meeting. ROA.279. It was not until Grisham uttered a profane adjective that O'Hare exercised his discretion to maintain the civility of the meeting and request Grisham's removal. ROA.279; ROA.521.

The only plausible allegation in Grisham's pleadings is that O'Hare's primary motivation was to maintain civility by disallowing profanity during the public meeting. ROA.285; *Wenthold*, 2012 WL 467325 at *10. Grisham admits to using profanity, and he states no other reason for which he was dismissed from the meeting. ROA.279; ROA.521. *See Stein v. Dallas Cnty.*, No. 3:22-CV-1255-D, 2023 WL 2700720 at *5 (N.D. Tex. March 29, 2023); *Gjemre*, 2015 WL 433506, at *6 (granting dismissal under Rule 12(b)(6) and summary judgment and holding that the action of the city mayor (and presiding officer) to eject the plaintiff was objectively reasonable after plaintiff violated the rules of a decorum in a limited public forum);

16

*White v. City of Norwalk*, 900 F.2d 1421, 1426 (9th Cir. 1990) (holding prohibition of profanity in a limited public forum is not unconstitutionally overbroad).

As evidenced by the Supreme Court precedent that Grisham relies on, he is conflating two different legal standards for First Amendment speech: traditional public forum v. limited public forum. Grisham cites *Cohen v. California*, 403 U.S. 15 (1971), but both its pertinent facts and relevant holding are readily distinguishable from the events of January 28. Grisham Br. 24-25. In *Cohen*, the defendant was criminally convicted for disturbing the peace by silently walking through a courthouse corridor wearing a jacket that read "Fuck the Draft." *Id*. at 16. There, the Supreme Court held that criminalizing the public display of a "single four-letter expletive" is unconstitutional. *Id*. at 26 (emphasis added). Here, Grisham was not silently displaying a word on his clothing or even a sign, but rather, he was vocally directing profanity at elected officials during a public meeting convened to discuss adopting rules of decorum. Unlike *Cohen*, where no disruption to court proceedings occurred, Grisham's conduct did not occur in a hallway but inside the Commissioners Court courtroom during a meeting (a limited public forum) with an established agenda and during a discussion explicitly focused on maintaining order and civility. *Cohen* does not support Grisham's claim that he is permitted to utter profanities in a public meeting of a government body.

Grisham's attempt to distinguish the Commissioners Court from a juridical forum is misplaced. ROA.280; Grisham Br. 21-22, 24-25. Whether functioning in a legislative or juridical capacity, a presiding officer retains the authority to regulate speech for the purpose of ensuring orderly proceedings. *Wenthold*, 2012 WL 467325 at *9. This includes enforcing time, place, and manner restrictions such as prohibitions on profanity and irrelevant commentary. *Steinburg*, 527 F.3d at 385. O'Hare's conduct was not only appropriate but constitutionally permissible and objectively reasonable. *Gjemre*, 2015 WL 433506 at *6; ROA.530.

Furthermore, Grisham has not clearly established on materially identical facts that removing a speaker from a public meeting for uttering profanity will constitute a violation of the speaker's First Amendment rights. *See Hershey v. City of Bossier City*, 156 F.4th 555, 560 (5th Cir. 2025) (per curiam), *reh'g denied en banc*, 163 F.4th 926 (5th Cir. 2026) (Ho, J., concurring) (alleged violation of First Amendment requires clearly established law on material identical facts to defeat qualified immunity); *Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007).

Accordingly, Grisham's First Amendment claims against O'Hare cannot support a *Monell* claim against Tarrant County, and the dismissal of Tarrant County was proper. ROA.530; ROA.551-552; *Wenthold*, 2012 WL 467325 at *10; *Grisham*, 93 F.4th at 912; *Leffall*, 28 F.3d at 524.

**B.** **District court properly dismissed Grisham's First Amendment claims based on the Deputies' conduct.**

The district court framed the First Amendment claim against the Deputies on January 14, 2025, as arising from the Deputies' allegedly "unlawful arrest." ROA.540. The court held that "it does not appear that the Deputies interfered with Grisham's First Amendment rights at the January 14 meeting." ROA.547. Grisham asserts in his brief that his "invocation of profanity in the context of asserting a legal right to a law enforcement officer falls squarely within the zone of protected speech . . . ," suggesting that his cursing in the hall outside the Commissioners Court on January 14, 2025, constitutes the basis of his First Amendment claim against the Deputies. Grisham Br. 34.

However, Grisham never alleged this conduct as being protected speech before asserting it for the first time in his brief. ROA.285-287, ¶¶ 148-165. In his reply to the Deputies' Motion to Dismiss First Amended Complaint, Grisham specifically focused on Judge O'Hare's order that Grisham be removed after cursing during his public comment on January 28, 2025, as the basis of his First Amendment claim, not his cursing on January 14, 2025. *See* ROA.469-475, ROA.540, ROA.547. Additionally, Grisham's profanity-laced tirade on January 14, 2025, is not entitled to First Amendment protection. *Chaplinksky v. New Hampshire*, 315 U.S. 568, 571-72 (1942). Therefore, this last-ditch argument should be rejected. ROA.547.

Grisham arguably asserted a First Amendment claim against the Deputies from January 14, 2025, related to an alleged prohibition against filming public officials in the course of their public duties, but that claim was never plausibly alleged.[4] ROA.270, ROA.286, ¶¶ 58, 158, 160.  In any event, Grisham has waived that claim by not including it in his brief. *See Strong*, 2025 WL 2238570, at *1; *Indigenous Peoples*, 132 F.4th at 884; Fed. R. App. P. 28(a)(8)(A).

As a result, the district court's dismissal of Grisham's First Amendment claims against the Deputies was proper, and the court's dismissal of Grisham's derivative *Monell* claim against Tarrant County based on the First Amendment should be affirmed. ROA.547; ROA.551-552.

### C. District court properly dismissed Grisham's Second Amendment claims based on the Deputies' conduct on January 14, 2025.

Grisham's primary Second Amendment *Monell* claim against Tarrant County arose out of the January 14, 2025, meeting when he was stopped for carrying a handgun into the Commissioners Court. Grisham Br. 27-33; ROA.273-281, ROA.287-288, ROA.294, ¶¶ 72-125, 166-75, 199.

The police may stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that a crime "may

---

[4] In *Turner v. Driver*, the Fifth Circuit recognized that citizens have a First Amendment right to record *police* but not necessarily *public officials*. 848 F.3d 678, 689-90 (5th Cir. 2017).

be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The court must look to the totality of circumstances to determine whether the detaining officer has a "particularized and objective basis" to suspect legal wrongdoing, while considering only the information available to the officers at the time of detention. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)) (citations omitted).

An investigative detention must be temporary and last no longer than necessary to effectuate the stop's purpose. *Turner v. Driver,* 848 F.3d 678, 693 (5th Cir. 2017) (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983)). "The police may take reasonable actions under the circumstances to ensure their own safety, as well as the safety of the public, during an encounter with a suspect." *United States v. Abdo*, 733 F.3d 562, 565 (5th Cir. 2013) (quoting *Terry*, 392 U.S. at 30). *See also United States v. Hensley,* 469 U.S. 221, 235 (1985) (officers are "authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop."). Whether an investigative stop amounts to an arrest is determined on a case-by-case basis, and it is "always one of reasonableness under the circumstances." *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993).

The Deputies' actions in prohibiting Grisham from entering the Commissioners Court meeting with a handgun on January 14, 2025, did not violate

his Second Amendment rights because the Deputies' actions were reasonable under the totality of the circumstances, including the good faith belief by Driskell, who previously had sought verification from TCOLE, that Grisham was not a retired federal law enforcement officer.[5]

Accordingly, the district court "finds that Grisham has failed to plausibly allege facts that assist the Court in determining that [the individual Deputies] are not entitled to qualified immunity." ROA. 546. Section 411.205(1) imposes no requirement that a peace officer must have reasonable suspicion of any offense before asking an LTC holder to show his license. *See* Tex. Gov't Code § 411.205(1). ROA.547. Additionally, Section 411.207 provides that "[a] peace officer who is acting in the lawful discharge of the officer's official duties *may disarm a license holder at any time the officer reasonably believes it is necessary* for the protection of the license holder, officer, or another individual." *See* Tex. Gov't Code § 411.207(a) (emphasis added). Therefore, "Driskell was not objectively unreasonable in believing that Grisham was violating the laws prohibiting the carrying of firearms into the meeting [on January 14, 2025]." ROA. 548. *See Sanders*, 994 F.2d at 206 (reviewing detention according to circumstances).

Based on the totality of the circumstances surrounding their encounter with Grisham outside of the Commissioners Courtroom on January 14, 2025, the Deputies

---

[5] A retired federal law enforcement officer -- "LEOSA," in Grisham's parlance – is allowed to carry a handgun into a public meeting pursuant to Tex. Penal Code § 46.15(a)(5). An LTC holder is allowed to carry a handgun into a public meeting pursuant to Tex. Penal Code § 46.15(b)(6).

were justified in detaining Grisham and temporarily placing him in handcuffs to determine if he was violating Chapter 411 or any criminal laws. ROA.263-265, ROA.272, ¶¶ 25, 27-33, 35-36, 65-67 (including photo on ROA.269). *See Sanders*, 994 F.2d at 206; *see also Navarette v. California*, 572 U.S. 393, 397 (2014) (courts must consider the totality of circumstances to determine whether an officer could infer that a particular suspect acted or was about to act unlawfully); *Arvizu*, 534 U.S. at 273. *See Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (officers entitled to qualified immunity even if they were mistaken but acted reasonably).

Grisham failed to identify any authorities to establish that the Deputies' actions would violate his constitutional rights. *Cass*, 814 F.3d at 730-31; *Meadours*, 483 F.3d at 421-22. Even if the Deputies were mistaken, they were reasonable in believing their actions were justified. *See Mendenhall*, 213 F.3d at 230; *Hare v. City of Corinth, Miss.,* 135 F.3d 320, 325 (5th Cir. 1998). Because the district court properly dismissed Grisham's Second Amendment claims against the Deputies that arose from the encounter on January 14, 2025, the court's dismissal of the derivative *Monell* claim against Tarrant County also was proper. ROA.546-547; ROA.551-552

**D. District court properly dismissed Grisham's Second Amendment claims based on the Deputies' conduct on January 28, 2025.**

Grisham did not plausibly allege a Second Amendment violation from the encounter on January 28, 2025, that will support a *Monell* claim against Tarrant County,

and this claim was properly dismissed. Grisham Br. 42; ROA.547; ROA.551-552. *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

Grisham failed to assert any Second Amendment injury at the meeting on January 28, 2025, because Grisham eventually produced his LTC at that meeting, as requested by the Deputies. ROA.274, ROA.276, ROA.277, ¶¶ 78, 84-85, 97. Then, Grisham was allowed into the meeting with his handgun. ROA.277, ¶ 97. *See* Tex. Gov't Code § 411.207(a).

Grisham argues only that the Deputies had no reasonable suspicion to request his LTC. Grisham Br. 42. However, the district court correctly held that the Deputies did not need any predicate stop to request that Grisham show his LTC license. ROA.547; Tex. Gov't Code § 411.207(a). Under the totality of circumstances, the Deputies' actions on January 28, 2025, were objectively reasonable and did not violate clearly established law. ROA.548-549. Therefore, the district court properly dismissed Grisham's derivative Second Amendment *Monell* claim against Tarrant County based on the January 28, 2025, encounter. ROA.551-552.

### E. Grisham failed to plausibly allege a policy or custom as a moving force.

Grisham sued Tarrant County pursuant to *Monell* only for his alleged First and Second Amendment violations. ROA. 293-295, ¶¶ 198-211. To establish municipal liability under *Monell,* Grisham must identify a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or

custom. *Hicks-Field*, 860 F.3d at 808; *Piotrowski*, 237 F.3d at 578. Tarrant County has previously addressed herein the lack of any First and Second Amendment constitutional violations. *See supra*, Tarrant County Br. 7-24. Grisham also has failed to: (1) adequately allege a policy or custom, or (2) identify a policymaker. Therefore, he has failed to adequately allege a *Monell* violation against Tarrant County. *Hicks-Field*, 860 F.3d at 808; *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

To advance beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain *specific* facts." *Peña,* 879 F.3d at 622 (emphasis added) (quotation and alterations omitted); *Johnson v. Harris Cnty.*, 83 F.4th 941, 946-47 (5th Cir. 2023). This ensures a plaintiff does not saddle government entities with vicarious liability for the alleged actions of its agents not in accord with policy. *Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997). A pleading that only offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not suffice. *Iqbal,* 556 U.S. at 678. Furthermore, allegations "limited to the events surrounding the plaintiff" himself cannot constitute "an allegation of a *de facto* policy." *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015).

Grisham merely alleged, in conclusory statements, that on multiple occasions the individual law enforcement defendants "have detained, arrested, or otherwise charged First and Second Amendment activists for speaking," only to have such

charges dropped prior to trial "in hopes to curtail the activists from exercising their First and Second Amendment Rights." ROA.294-295, ¶¶ 200-04, 206, 210. Grisham also claimed that these unknown and unspecified "actions and inactions constitute an impermissible policy, practice, or custom that deprive Plaintiff" of his constitutional rights. *Id.* at ¶ 204. *See Ratliff v. Aransas Cnty, Texas*, 948 F.3d 281, 284-85 (5th Cir. 2020) ("*Monell* pleadings must contain sufficient factual matter.").

Grisham alluded to Tarrant County's Rules of Decorum in his First Amended Complaint, but he did not identify what the rules stated, so there is no allegation of what was prohibited by the Rules of Decorum. ROA.294-295, ¶¶ 203, 206, 207, 209, 210. Additionally, Grisham did not allege whether Judge O'Hare was enforcing a specific Rule of Decorum when he ordered Grisham removed, or whether O'Hare was simply maintaining an orderly meeting in the face of Grisham's impermissible outburst of profanity. *Wenthold*, 2012 WL 467325, at *9; *Finger*, 2003 WL 22768236, at *2. As a result, Grisham failed to adequately allege that a specific policy or custom was the moving force of a constitutional violation. ROA.294, ¶ 206. *Ratliff*, 948 F.3d at 284-85.

Grisham also failed to allege a *de facto* policy or custom. *Webb*, 925 F.3d at 214. The Fifth Circuit has affirmed the dismissal of a pleading containing conclusory allegations lacking factual enhancement that "[we]re patently incapable of showing the existence of any pattern of conduct." *Verastique v. City of Dallas*, 106 F.4th 427,

432 (5th Cir. 2024). In *Verastique*, which concerned a use-of-force *Monell* claim, the plaintiffs pleaded about nineteen prior incidents. *Id*. at 433. In affirming the trial court's Rule 12(b)(6) dismissal, the Fifth Circuit held those incidents lacked "similarity and specificity" and did not "point to the specific violation in question." *Id.* at 433.

Grisham did not identify a single specific example of a previous instance of alleged misconduct that was similar to what Grisham experienced, which defeats any finding of a custom or policy. ROA.294-295, ¶¶ 199-211; *Ratliff*, 948 F.3d at 284-85. Therefore, Grisham failed to plead sufficient facts with similarity and specificity to constitute a *de facto* policy or custom under the First Amendment. *Verastique*, 106 F.4th at 432 (5th Cir. 2024). Furthermore, Plaintiff's pleading is insufficient to state a *Monell* claim against Tarrant County for a Second Amendment violation. *See* ROA.285-287, ¶¶ 148-65, 199-211.

**F.     Grisham failed to allege a policymaker.**

Grisham also failed to adequately allege a policymaker, as required for *Monell* liability. *Hicks-Field*, 860 F.3d at 808. A final policy maker is responsible for making law or setting policy in any given area of a local government's business, and it is the individual who establishes the goals for the municipality and devises the means of achieving those goals. *Sweetin* v. *City of Texas City, Texas*, 48 F.4th 387, 392 (5th Cir. 2022) (cleaned up). "When a final policy maker makes the relevant decision,

and when that decision is within the sphere of the policy maker's final authority, the existence of a well-established, officially adopted policy will not insulate the municipality from liability." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

Grisham alleged that "Defendant O'Hare is a final policymaker for Defendant County."[6] ROA.295, ¶ 208. As the elected Tarrant County Judge, O'Hare is the statutory presiding officer of the Commissioners Court responsible for maintaining order of its public meetings. Tex. Local Gov't Code § 81.001(b). However, O'Hare is *not* the final policymaker on whether to officially adopt the rules of decorum for Tarrant County, and Grisham did not otherwise identify a final policymaker. *See* Tex. Const. Art. V, § 18(b) (county judge presides over commissioners' court); *Daves v. Dallas Cnty.,* 22 F.4th 522, 535 (5th Cir. 2022). "[W]hether a particular official has 'final policymaking authority' is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

There are many actions of a county judge that may justifiably be considered to constitute or represent county "policy" under *Monell. Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980). However, in the instant case, the policy that presumably forms the basis of Grisham's complaint against O'Hare, *i.e.*, the

---

[6] Grisham does not allege how O'Hare is the policymaker for the actions of the Sheriff's Deputies, nor does he identify a specific Tarrant County policy that relates to his Second Amendment *Monell* claim. Grisham Br. 31 ("The only purported 'regulation' Defendants have produced is the **Smith County** Sheriff's internal policy.").

Commissioners Court Rules of Decorum, was not formed or enacted by O'Hare alone, but rather by the Commissioners Court as a governing body.[7] In examining the circumstances in which a county judge can be considered a final policymaker for a county, the court in *Doe AW v. Burleson Cnty.* recognized that Fifth Circuit precedent in *Familias Unidas* "does not hold that county judges are responsible for administration of all county business; rather, it supports a finding that county judges have final policymaking authority over the areas entrusted to them by the state constitution and statutes." *Doe AW v. Burleson Cnty.*, No. 1:20-CV-00126-SH, 2022 WL 875912, at *4 (W.D. Tex. Mar. 24, 2022), *aff'd sub nom. Doe v. Burleson Cnty., Tex.*, 86 F.4th 172 (5th Cir. 2023) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)).

Here, Grisham has identified no such relevant statute or provision of Texas law delegating to O'Hare, as Tarrant County Judge, final policymaking authority over the Rules of Decorum. The court in *Doe* also examined Article 5 of the Texas Constitution, Section 18(b), and found that:

> This provision does not establish that [the county judge] had final policymaking authority over administration of [the] County's business; rather, it states that it is the county commissioners, with the county judge as presiding officer, that 'shall compose the County Commissioners Court, which shall exercise such powers and

---

[7] Grisham did not allege that O'Hare was following a specific Rule of Decorum that prohibits profanity, nor did he allege the content of the Rules of Decorum of which he complains. ROA.294-295, ¶¶ 199-211.

jurisdiction over all county business' conferred by the Texas Constitution and laws.

*Doe AW*, 2022 WL 875912, at \*4.

In *Pembaur v. City of Cincinnati,* the court held that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for *establishing* final policy with respect to the subject matter in question. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (emphasis added). O'Hare, as presiding officer of the Commissioners Court, is charged with making instant decisions to ensure that the Rules of Decorum are followed to effectuate orderly and efficient meetings of the Commissioners Court. A true policymaker must "decide the goals for a particular city function and devise the means of achieving those goals." *Webb*, 925 F.3d at 217. Municipal liability under *Monell* attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. *Pembaur*, 475 U.S. at 481.

The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. *Id.* at 481–482. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. *Id.* at 482–83. There is a fine distinction between a policymaker and a decisionmaker. *Jett v. Dall. Indep. Sch.*

*Dist.,* 7 F.3d 1241, 1247 (5th Cir. 1993). The fact that an official's decisions are final is insufficient to demonstrate policymaker status. *Id.* at 1248. *See also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010). The Fifth Circuit has maintained that "neither complete discretionary authority nor the unreviewability of such authority automatically results in municipal liability. There must be more." *Bolton v. City of Dallas, Tex.,* 541 F.3d 545, 551 (5th Cir. 2008).

Grisham failed to plausibly allege that O'Hare is a final policymaker for Tarrant County with respect to the policy—written or unwritten—that led to Grisham's removal from Commissioners Court. Absent an underlying constitutional violation by O'Hare or the Deputies, the dismissal of Grisham's *Monell* claims should be affirmed. ROA.530-531, ROA.549-550, ROA.551-552. *Hicks-Field*, 860 F.3d at 808; *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

## II. District Court's reference to *Grisham v. Valenciano* was not error.

The district court's reference in footnote 6 to Local Civil Rule 83.8(e) and Texas Disciplinary Rule of Professional Conduct 3.03(a)(4) in light of Grisham's failure to cite *Grisham v. Valenciano*, in which he also was the plaintiff and engaged in disorderly conduct, constituted *judicial dictum*, at most, and certainly did not result in reversible error. ROA.549, n.6. *See Autobahn Imports, L.P. v. Jaguar Land Rover N. Am., L.L.C.*, 896 F.3d 340, 346 (5th Cir. 2018) (*judicial dictum* is a statement made deliberately after careful consideration and for future guidance in the conduct of litigation). Alternatively,

the court's comment constituted *obiter dictum*, which is a statement not necessary to the determination of the case and is neither binding nor precedential. *Autobahn*, 896 F.3d at 346. The court's footnote was not necessary to the opinion's holding. ROA.549, n.6.

It is also plausible that the district court cited *Grisham v. Valenciano* to suggest that Grisham cannot deny culpability for breaching the peace in light of his well-deserved reputation across the state for aggressively testing the public boundaries of the Second Amendment. Grisham, as the Founder of Open Carry Texas, a Second Amendment advocacy group, has repeatedly engaged in a clear pattern of organizing open carry demonstrations on public property to spread his personal beliefs about the Second Amendment. According to one periodical, "[C.J.] Grisham explained that "[t]he point is to engage with the public, explain to them that you know it's not the guns people need to be afraid of, it's the person, and *to show the lighter side and **the friendlier side** of gun owners*." Katlyn E. DeBoer, *Clash of the First and Second Amendments: Proposed Regulation of Armed Protests*, 45 Hastings Const. L. Q. 333, 347 (2018) (citing Mike DeBonis, *"Open-Carry Gun Protesters Greet President Obama in Texas*," WASH. POST (March 11, 2016) (emphasis added)).

In reality, Grisham's methods are not so friendly; in fact, they often require police involvement. Grisham even stated in an affidavit in support of a fellow protester that, "*[Open Carry Texas] members have been arrested more than two dozen times* for the

lawful carry of their firearms openly as an expression of our mission to educate Texans on gun rights and secure more meaningful legislation that recognizes our right to keep and bear arms." *Ex Parte Poe*, 491 S.W.3d 348, 351 (Tex. App.—Beaumont 2016, pet. ref'd) (emphasis added).

Grisham's actions in Tarrant County on January 14, 2025, and January 28, 2025, were not isolated incidents; rather, he followed his own modus operandi precisely. *See, e.g., Holcomb & Christopher John **Grisham** v. McCraw*, 262 F. Supp. 3d 437, 443 (W.D. Tex. 2017) ("As the officers tried to get the handcuffs on **Grisham**, he shouted, "Don't f---ing break my arm, a----.""); *Holcomb*, 262 F. Supp. 3d at 444 ("While the officers continued to secure **Grisham**, the crowd jeered at the officers."); ***Grisham** v. State*, No. 03-14-00137-CR, 2017 WL 1130371, *5 (Tex. App.—Austin Mar. 23, 2017, no pet.) ("Officer Ermis's testimony . . . established that during his encounter with [**Grisham**, **the appellant**]: (1) appellant grabbed his weapon and tried to keep the officer from disarming him; (2) appellant did not put his hands behind his back when asked, and refused to comply with that instruction at least six time; and (3) appellant physically resisted when the officer tried to grab appellant's hands to place them behind his back to handcuff him."); *Grisham v. Valenciano*, 93 F.4th 903, 906-07 (5th Cir. 2024) ("Officer Viera then approached **Grisham** with handcuffs and reached for his hands, but **Grisham** backed away several feet, pulled his hands away, and continued to retreat from the officer."). *See also* CJ **Grisham**, *A Gun Owner Speaks: My Case for Open Carry*, The Daily

Beast (Jun. 12, 2014, 5:45 AM), https://www.thedailybeast.com/a-gun-owner-speaks-my-case-for-open-carry.

Grisham documents his numerous Second Amendment protest encounters with police on his YouTube channel, which suggests that he orchestrates such confrontations to generate content for social media. *See* https://www.youtube.com/c/CJGrishamLaw. As a result, the district court did not err in acknowledging Grisham's previous instance of disorderly conduct, and the dismissal of Tarrant County should be affirmed. ROA.549, n.6; ROA.551-552.

## III. Section 1985(3) conspiracy claims are barred by the Intracorporate Conspiracy Doctrine.

Under the Intracorporate Conspiracy Doctrine, a "corporation cannot conspire with itself any more than a private individual can," and "the acts of the agents are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (citing *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952). "[B]ecause the acts of corporate agents are attributable to the corporation itself, a corporation lacks the multiplicity of actors required to form a conspiracy." *Young v. City of Irving,* No. 3:23-CV-1423-D, 2025 WL 888430, at *10 (N.D. Tex. Mar. 21, 2025) (quoting *Walters v. McMahen*, 795 F. Supp. 2d 350, 358 (D. Md. 2011).

The doctrine would not apply if the corporate employees acted "for their own personal purposes" or "personal motives." *Benningfield v. City of Houston*, 157 F.3d

369, 379 (5th Cir. 1998), *cert. denied sub nom.*, *Benningfield v. Nuchia*, 526 U.S. 1065 (1999). However, each individual Defendant was acting under color of law, as alleged by Grisham. ROA.260, ROA.292, ¶¶ 12, 192. All the individual Defendants' actions are attributable to the county, and Tarrant County cannot conspire with itself. *See Young*, 2025 WL 888430, at *10. Therefore, Grisham's conspiracy claim under 42 U.S.C. § 1985(3) is barred by the Intracorporate Conspiracy Doctrine and was properly dismissed. *Hilliard*, 30 F.3d at 653; *Iqbal*, 556 U.S. at 678; Fed R. Civ. P. 12(b)(6). ROA.525-526; ROA.540-541; ROA.551-552

## IV. Grisham waived additional claims by failing to brief them.

Grisham has waived the following claims against Tarrant County by failing to include them in his brief:

- Facially unconstitutional challenge to Rules of Decorum. Grisham Br. 2 (Issue 1).

- Failure to train or supervise against Tarrant County. ROA.288 (Count IV).

- Supplemental state court claims. ROA.524-525; ROA.539.

- Ninth and Fourteenth Amendment claims. ROA.258, ROA.287, ¶¶ 1, 164.

- *Monell* claim against Judge O'Hare. ROA.525.

- First Amendment claim for prohibiting recording of public officials. ROA.270, ROA.286, ¶¶ 58, 160.

- *Pro se* attorney's fees. ROA.524.

*See Strong,* 2025 WL 2238570, at *1; *Indigenous Peoples*, 132 F.4th at 884; Fed. R. App. P. 28(a)(8)(A).

**V.      Grisham is not entitled to amend his complaint.**

Grisham contends that he should be allowed to amend his complaint to address his pleading deficiencies if the district court's judgment is not reversed. Grisham Br. 46-47; ROA.553. However, Grisham never asked the trial court for leave to amend, not even as alternative relief in his responses to the separate motions to dismiss. ROA.432-433; ROA.456-457; ROA.487-488. He also never presented a proposed Second Amended Complaint that would address his pleading deficiencies. Fed. R. Civ. P. 15(a); U.S. Northern District Loc. Civ. R. 15.1; *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) (denial of leave proper when amendment would be futile); *Hernandez v. Dallas Cnty. Sheriff*, No. 3:23-CV-01583-E, 2024 WL 4202381, at *13-14 (N.D. Tex. Sept. 16, 2024) (denial of leave to amend proper when plaintiff failed to attach proposed amended complaint).

Significantly, the district court previously ordered Grisham to amend his original complaint to address the assertion of qualified immunity by O'Hare and the Deputies. ROA.254, ¶ 1 ("Plaintiff shall file an amended complaint . . . alleging with particularity all material facts establishing his right to recovery as to the individual defendants, including detailed facts supporting any contention that the plea of qualified immunity cannot be sustained."). Despite this specific instruction from the

district court, Grisham could not correct those deficiencies in his first amended complaint. Therefore, the district court granted dismissal based on Grisham's inability to defeat the individual Defendants' qualified immunity. ROA.530; ROA.549-550.

It follows that Grisham already has pleaded his best case, and any further amendment would be futile. *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014) ("An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."). The futility of further amendment is revealed in Grisham's plea for another opportunity to address his excessive force claim against Deputy Jauss (which Grisham unequivocally abandoned, ROA.215), his LEOSA exception (any error by Driskell was reasonable), and a vague de facto custom against Tarrant County. Grisham Br. 47. Grisham has not articulated how further amendment would be productive, Fed. R. Civ. P. 7(b)(1)(B), and these threadbare issues have no chance of affecting the district court's judgment against Tarrant County. ROA.551-552; ROA.553. As a result, Grisham's request for leave to amend should be denied as futile. *See Stripling*, 234 F.3d at 872-73; Fed. R. Civ. P. 15(a).

**PRAYER**

Appellant Grisham failed to allege with specificity any facts that will establish a *Monell* claim or a claim for deliberate indifference related to failure to train or supervise against Appellee Tarrant County. As a result, the district court properly

dismissed Grisham's claims against Tarrant County pursuant to Fed. R. Civ. P. 12(b)(6), and the dismissal should be affirmed. ROA.551-552; ROA.553 (judgment).

Respectfully submitted,

s/ *Katherine E. Owens*
**Katherine E. Owens**
State Bar No. 24081683
keowens@tarrantcountytx.gov
**Craig M. Price**
State Bar No. 16284170
cmprice@tarrantcountytx.gov
Assistant Criminal District Attorneys

**PHIL SORRELLS**
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS
Tarrant County District Attorney's Office
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor
Fort Worth, Texas 76196
817-884-1409 – Telephone
817-884-1675 – Facsimile
**ATTORNEYS FOR APPELLANT**
**TARRANT COUNTY, TEXAS**

## CERTIFICATE OF SERVICE

On July 2, 2026, I served a copy of the above document on all counsel of record via ECF.

s/ *Katherine E. Owens*

# CERTIFICATE OF COMPLIANCE

### With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

The undersigned counsel certifies this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains **8,904** words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), as computed by the word-processing system used to prepare this brief.

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 10 in 14-point Times New Roman typeface (other than footnotes, which are in 12-point Times New Roman typeface per 5TH CIR. R. 32.1).

*s/ Katherine E. Owens*

Dated: July 2, 2026