# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

**C.J. GRISHAM,**
**Plaintiff-Appellant,**

**v.**

**TIM O'HARE, IN HIS PERSONAL AND OFFICIAL CAPACITIES; CHIEF DEPUTY CRAIG DRISKELL, IN HIS SUPERVISORY, OFFICIAL, AND PERSONAL CAPACITIES; CHIEF DEPUTY JENNIFER GABBERT, IN HER PERSONAL AND OFFICIAL CAPCITIES; SERGEANT ORVILLE GEORGE, IN HIS PERSONAL AND OFFICIAL CAPACITIES; SERGEANT MICHAEL JAUSS, IN HIS PERSONAL AND OFFICIAL CAPACITIES; TARRANT COUNTY,**
**Defendants-Appellees.**

---

**On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division**

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT C.J. GRISHAM**

---

Respectfully submitted,

*/s/ C.J. Grisham*
C.J. GRISHAM
State Bar No. 24124533
GFA LAW, PLLC
3809 S. General Bruce Dr., Suite 103-101
Temple, Texas 76502
Ph: 254-405-1726
cj@gfalaw.us

*Counsel for Plaintiff-Appellant C.J. Grisham*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................2

TABLE OF AUTHORITIES ...........................................................................3

INTRODUCTION............................................................................................5

ARGUMENT ...................................................................................................6

  I.  TARRANT COUNTY MISCHARACTERIZES THE FORUM AND THE FIRST AMENDMENT STANDARD...............................................6

    *A.  The Commissioners Court Public Comment Period Warrants Heightened Scrutiny.* ..................................................................................6

    *B.  Even Under the Limited-Forum Standard, O'Hare's Removal Was Not Reasonable or Viewpoint-Neutral.*................................................9

    *C.  Cohen v. California Controls and Is Not Distinguishable on the Facts That Matter.*.......................................................................................11

    *D.  The District Court's "Juridical Forum" Characterization Was a Foundational Category Error.* ..................................................................13

  II.  THE SECOND AMENDMENT CLAIMS WERE IMPROPERLY DISMISSED..............................................................................................15

    *A.  LEOSA Authorized Grisham's Carry on January 14 and Driskell's TCOLE Inquiry Was Not a Reasonable Basis for Disarmament.*..................15

    *B.  The January 28 Stop Was an Unconstitutional Predicate-Free Seizure.*.18

    *C.  The Sufficiency of the Posted Signage Under Tex. Penal Code §§ 30.06 and 30.07 Is a Factual Question Not Resolvable at the Pleading Stage.* .......19

    *D.  Bruen Required Historical Analysis That the District Court Never Conducted.*..............................................................................................21

  III. GRISHAM ADEQUATELY PLEADED MONELL LIABILITY. ........22

    *A.  The Pattern Allegations Are Sufficient at the Pleading Stage.*.................22

    *B.  O'Hare Is a Final Policymaker Over the Rules of Decorum.*....................24

  IV.  THE DISTRICT COURT'S *VALENCIANO* FOOTNOTE WAS REVERSIBLE ERROR. ..................................................................................26

**V. SECTION 1985(3) CLAIMS ARE NOT BARRED BY THE INTRACORPORATE CONSPIRACY DOCTRINE.** ....................................28

**VI. LEAVE TO AMEND SHOULD BE GRANTED.**....................................29

**CONCLUSION**....................................31

**CERTIFICATE OF SERVICE** ....................................32

**CERTIFICATE OF COMPLIANCE** ....................................33

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Wood*, 137 Tex. 201, 152 S.W.2d 1084, 1087-88 (1941)....................13

*Avery v. Midland County*, 390 U.S. 474, 482 (1968) ....................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)....................................23

*Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344-45 (5th Cir. 2001) ....................7

*Cohen v. California*, 403 U.S. 15 (1971)....................................11

*Ex parte Maddison*, 518 S.W.3d 630 (2017) ....................................7

*Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 757-58 (5th Cir. 2010).......6, 7

*Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980) ....................................25

*FCC v. Pacifica Foundation*, 438 U.S. 726 (1978)....................................14

*Florida v. Royer*, 460 U.S. 491, 500 (1983) ....................................17

*Graham v. Connor*, 490 U.S. 386 (1989) ....................................30

*Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 329 (5th Cir. 2002)....................................29

*Grisham v. Valenciano*, 93 F.4th 903 (5th Cir. 2024) ....................................26

*Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017)....................7, 10, 15

*Hershey v. City of Bossier City*, 156 F.4th 555, 560 (5th Cir. 2025) ....................12

*Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) ....................................28

*Illinois v. Allen*, 397 U.S. 337 (1970) ....................................14

*Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)....................23

*Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)....................................16

*Merriott v. City of Bossier City*, No. 25-30325, 2026 WL 1830752, *6 (5th Cir. June 25, 2026) ....................................7

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)....................................23

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)....................21

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ....................................25

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)........7, 8

*Rogers v. Jarrett*, 63 F.4th 971, 974-75 (5th Cir. 2023) (Willett, J., concurring)...24
*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ......8, 9
*State v. Stubbs*, 502 S.W.3d 218 (2016) ...............................................................7
*Tennessee v. Garner*, 471 U.S. 1 (1985)..............................................................30
*Terry v. Ohio*, 392 U.S. 1, 16 (1968) ..................................................................18
*United States v. Arvizu*, 534 U.S. 266, 273 (2002) .............................................18
*Verastique v. City of Dallas*, 106 F.4th 427 (5th Cir. 2024)................................22
*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019)......................23
*Wenthold v. City of Farmers Branch*, 2012 WL 467325 (N.D. Tex. Feb. 14, 2012)
    ..............................................................................................................................10

**Statutes**
18 U.S.C. §§ 926B-926C ......................................................................................15
42 U.S.C. § 1983 ...................................................................................................22
Tex. Gov't Code § 411.207(a)...............................................................................16
Tex. Gov't Code § 551.007(b) ..............................................................................13
Tex. Gov't Code § 551.007(e)...............................................................................13
Tex. Local Gov't Code § 236.002(b) .....................................................................20
Tex. Local Gov't Code § 81.001(b) .................................................................. 23, 24
Texas Penal Code §§ 30.06 and 30.07 ...................................................................18

**Other Authorities**
Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev. 201 (2023)..22

**Rules**
Fed. R. Civ. P. 15(a)..............................................................................................28
Local Civil Rule 83.8(e)........................................................................................24
Texas Disciplinary Rule 3.03(a)(4).......................................................................24

# INTRODUCTION

Tarrant County's Appellee Brief attempts to salvage the district court's dismissal through three interlocking moves: (1) mischaracterize the nature of the forum and the First Amendment standard that applies to it; (2) paper over the absence of any lawful basis for disarming a LEOSA-qualified retired federal law enforcement officer; and (3) reduce Grisham's *Monell* allegations to boilerplate by ignoring the specific pattern pleading in the First Amended Complaint. None of these moves succeeds.

Appellee's brief also doubles down on the district court's improper citation to *Grisham v. Valenciano* in footnote 6, characterizing Grisham's decades of Second Amendment advocacy as evidence of "disorderly conduct" and a "modus operandi." That characterization is not only factually wrong, it is constitutionally offensive. Engaging in lawful First and Second Amendment activity cannot be used to strip a citizen of the right to bring a civil rights claim when officers violate those same rights.

The district court's dismissal should be reversed and the case remanded for further proceedings.

# ARGUMENT

## I. TARRANT COUNTY MISCHARACTERIZES THE FORUM AND THE FIRST AMENDMENT STANDARD.

### A. *The Commissioners Court Public Comment Period Warrants Heightened Scrutiny.*

Tarrant County concedes that Grisham was removed during public comment at a Commissioners Court meeting and that he was addressing a matter of public concern, specifically, the conduct of deputies who assaulted him at the prior meeting and the Sheriff's response. Appellee Br. 9. The County then leaps to the conclusion that the Commissioners Court is a limited public forum and that, therefore, prohibitions on profanity are automatically constitutional. That syllogism omits the controlling inquiry.

Public comment periods at government legislative meetings occupy a more protective stratum than generic government-controlled spaces. The Fifth Circuit recognizes that a governmental body "can also intentionally create designated public forums on other state property for the same widespread use as traditional public forums. Regulation of speech in traditional or designated public forums must pass strict scrutiny with a compelling state interest and narrow tailoring." *Fairchild v.*

*Liberty Indep. Sch. Dist.*, 597 F.3d 747, 757-58 (5th Cir. 2010). When a public body establishes a limited public forum of this sort, that body may restrict the expression that takes place within the forum so long as the restriction (1) does "not discriminate against speech on the basis of viewpoint" and (2) is "reasonable in light of the purpose served by the forum." *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001)(quoting *Good News Club v. Milford Central School*, 121 S. Ct. 2093, 2100 (2001)). Even content-neutral restrictions in a limited public forum must satisfy reasonableness review, and a restriction is not rendered reasonable merely by labeling it a "decorum" rule. *Merriott v. City of Bossier City*, No. 25-30325, 2026 WL 1830752, *6 (5th Cir. June 25, 2026).

Tarrant County's brief collapses the two-part test by focusing entirely on the label "limited public forum" while omitting the reasonableness analysis. Appellee Br. 11-18. But the County bears the burden of demonstrating that "the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). As a general constitutional principle, a regulation is content-based if it distinguishes between favored and disfavored speech based on the idea, subject matter, or message expressed. *State v. Stubbs*, 502 S.W.3d 218 (2016); *Ex parte Maddison*, 518 S.W.3d 630 (2017). A limited public forum is a forum that the government has opened for public expression of particular kinds or

by particular groups . *Heaney v. Roberts*, 846 F.3d 795 (2017); *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747 (2010). Because the government may reserve a limited public forum for its intended communicative purposes, it is not bound by the strict scrutiny standard that typically governs content-based restrictions in traditional public forums. A content-based restriction—such as a subject-matter restriction on profanity—is constitutionally permissible in a limited public forum if it satisfies a two-part test: It has done neither.

1. <u>Viewpoint Neutrality</u>: The regulation must not discriminate against speech on the basis of viewpoint . *Heaney*, Supra; *Fairchild*, SUPRA. Viewpoint discrimination is "a subset" and "an egregious form of content discrimination" that is presumptively unconstitutional. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829-31, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995). A government "may reserve [a limited public] forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n,* 460 U.S. 37, 46, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983).

2. <u>Reasonableness</u>: "The regulation on speech [must be] reasonable and not an effort to suppress expression merely because public officials oppose the

speaker's view." *Id*, at 46. A restriction based on subject matter is permissible if it preserves the intended purposes of that limited forum. *Fairchild,* SUPRA.

## B. Even Under the Limited-Forum Standard, O'Hare's Removal Was Not Reasonable or Viewpoint-Neutral.

Tarrant County argues that O'Hare's motivation was solely to maintain civility by disallowing profanity, and that no viewpoint discrimination occurred because Grisham was allowed to speak until he uttered one word. Appellee Br. 16-17. That framing ignores the context that the First Amended Complaint actually alleges.

Grisham was speaking about the conduct of Tarrant County Sheriff's Deputies who had physically assaulted him weeks earlier, and about the Sheriff's subsequent acknowledgment that those deputies had acted unlawfully. ROA.279, ¶ 108. The public comment was directed at specific governmental misconduct. The single word that triggered O'Hare's removal order was used as an adjective to describe Grisham's instruction to the Sheriff to follow the law. *Id.* At the pleading stage, the Court must accept that a reasonable factfinder could conclude that O'Hare's decision to remove Grisham at precisely that moment, on the eve of a vote on new decorum rules Grisham opposed, reflected viewpoint hostility rather than viewpoint-neutral civility enforcement.

Viewpoint discrimination does not require explicit targeting. "[T]he government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Where a speaker is removed for using a single word while criticizing government actors, and where the presiding officer being criticized has a direct interest in silencing that criticism, the inference of viewpoint discrimination is at minimum plausible under *Iqbal*. The County cites *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017), for the proposition that Grisham failed to show O'Hare was motivated by his ideology. Appellee Br. 16. But *Heaney* addressed summary judgment, not a 12(b)(6) motion. At this stage, Grisham need only allege facts supporting a plausible inference of viewpoint discrimination. He has done so.

Tarrant County's reliance on *Wenthold v. City of Farmers Branch*, 2012 WL 467325 (N.D. Tex. Feb. 14, 2012), is unavailing. In *Wenthold*, the plaintiff was removed for speaking off-topic and being repetitious, as well as for speaking outside of his allotted time. The court held that a presiding officer may cut off irrelevant or repetitious speech. *Id.* at *9. Grisham was not removed for irrelevance or repetition. He was removed for a single word while addressing matters directly related to the meeting's agenda, which included the adoption of new decorum rules he was critiquing. The distinction is material.

Additionally, Tarrant County's brief concedes that Grisham was permitted to describe the deputies as "thugs" before uttering the word that triggered removal. Appellee Br. 9. If civility and decorum were O'Hare's genuine concern, removing Grisham for the profanity while allowing characterizations such as "thugs" undermines the County's viewpoint-neutrality claim and raises, at minimum, a plausible inference of selective enforcement based on the message rather than the manner.

### C. *Cohen v. California Controls and Is Not Distinguishable on the Facts That Matter.*

Tarrant County attempts to distinguish *Cohen v. California*, 403 U.S. 15 (1971), by arguing that Grisham was speaking *inside* a government meeting rather than walking through a courthouse corridor. Appellee Br. 17. That distinction does not carry the weight the County places on it.

The *Cohen* Court's holding was not limited to the courthouse-corridor context. The Court's constitutional principle was that "the state has no right to cleanse public debate to the point where it is grammatically palatable to the most squeamish among us." 403 U.S. at 25. The Court specifically addressed whether the government could punish the use of a single vulgar word as a means of controlling the content of public expression. *Id.* at 24. The answer was no. That principle does not disappear when the speaker stands at a public comment podium.

The County argues that the disruption to government proceedings distinguishes *Cohen*. Appellee Br. 17-18. But disruption is not evaluated by the mere fact of removal. The First Amended Complaint alleges that Grisham did not shout, did not repeat the word, and was speaking within his allocated time when O'Hare immediately ordered removal. ROA.279, ¶¶ 108-109. A single uttered word in the course of substantive public comment does not constitute the kind of disruption that the limited-forum doctrine authorizes a government body to suppress. In fact, it is no disruption at all because it was Grisham's time. The only person who could be disrupted was he himself. The County has offered no authority holding that a speaker's one-time use of a profane word during on-topic public comment, without any evidence of actual disruption to the meeting, constitutes a permissible basis for removal under the First Amendment. Its failure to do so is telling.

Tarrant County also invokes qualified immunity for O'Hare, arguing that no clearly established law would have told him that removing Grisham was unconstitutional. Appellee Br. 18. But *Cohen* was decided in 1971. A government official is charged with knowledge that the First Amendment prohibits punishing the use of a single profane word as a mechanism for controlling the content of public expression. The County has not identified any circuit authority permitting the removal of a public-comment speaker for a one-time, non-repeated use of a profane adjective while making substantive, on-topic comments about government conduct.

In the absence of such authority, qualified immunity is not available. *Hershey v. City of Bossier City*, 156 F.4th 555, 560 (5th Cir. 2025).

### D. The District Court's "Juridical Forum" Characterization Was a Foundational Category Error.

Tarrant County's brief does not squarely defend the district court's core analytical premise: that a Tarrant County Commissioners Court open meeting is a "juridical forum" subject to courtroom-style decorum rules. That premise was error, and it infected every other aspect of the First Amendment analysis below.

A Texas Commissioners Court is not a court in the constitutional sense. It is the principal governing and administrative body of a Texas county, exercising functions that are overwhelmingly legislative and executive: setting tax rates, adopting budgets, managing county property, appointing department heads, and overseeing county operations. The Texas Supreme Court recognized long ago that a commissioners court does not exercise judicial functions in the ordinary constitutional sense. *Anderson v. Wood*, 137 Tex. 201, 152 S.W.2d 1084, 1087-88 (1941). The United States Supreme Court confirmed in *Avery v. Midland County*, 390 U.S. 474, 482 (1968), that Texas commissioners courts "perform[] general governmental functions" that are "more legislative or executive than judicial in nature." That characterization was the foundation for applying the one-person, one-vote rule, which by definition applies to legislative bodies, not to courts.

The January 28, 2025, meeting was not a judicial proceeding by any measure. There were no parties. There were no pleadings. There was no evidence taken under oath. There were no adverse litigants whose rights were being adjudicated. There was no jury whose impartiality might be compromised. There was a presiding officer, a public agenda, and a public comment period. These are the hallmarks of administrative governance, not adjudication. Calling such a meeting a "juridical forum" is a category error that the County's brief does not and cannot correct.

The Texas Open Meetings Act makes this even clearer. Chapter 551 of the Texas Government Code governs commissioners court meetings. It affirmatively guarantees the public's right to address the body on agenda items. Tex. Gov't Code § 551.007(b). It expressly prohibits the governmental body from prohibiting "public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service." Tex. Gov't Code § 551.007(e). Those provisions describe a forum designed for citizen participation in self-government. That is the direct opposite of a courtroom where the public is a spectator and speech is circumscribed by the demands of adversarial adjudication. The very statute that brought the public into the room forecloses treating that room as a courtroom.

The authorities the district court cited do not support the "juridical forum" theory. *Illinois v. Allen*, 397 U.S. 337 (1970), addressed a criminal defendant who repeatedly disrupted his own jury trial by threatening the trial judge with violence.

Its holding rests on Sixth Amendment fair-trial concerns wholly absent from a county commissioners open meeting. There is no jury at the TCCC. There is no criminal defendant. There are no witnesses under oath. There is no risk of mistrial. *FCC v. Pacifica Foundation*, 438 U.S. 726 (1978), addressed administrative sanctions on broadcast licensees under the FCC's unique regulatory authority over the public airwaves, and the Court expressly disclaimed any intent to displace *Cohen*'s protection of profanity in public dialogue. *Id.* at 745-46. Neither case supports importing courtroom-style decorum standards into an open administrative meeting governed by the Texas Open Meetings Act.

The Fifth Circuit's own precedent confirms the correct framework. In *Heaney*, this Court analyzed a Louisiana parish council meeting as a limited public forum subject to ordinary forum analysis, not as a "juridical forum" with enhanced decorum prerogatives. 846 F.3d at 801-02. That is the controlling framework here. Because the district court applied the wrong framework from the outset, its entire First Amendment analysis fails and must be reversed.

## II.  THE SECOND AMENDMENT CLAIMS WERE IMPROPERLY DISMISSED.

### A.  LEOSA Authorized Grisham's Carry on January 14 and Driskell's TCOLE Inquiry Was Not a Reasonable Basis for Disarmament.

Tarrant County's defense of the January 14 disarmament rests almost entirely on Driskell's purported reliance on a TCOLE inquiry indicating that Grisham was

not a "licensed peace officer." Appellee Br. 21-22. This defense fundamentally misapprehends the applicable law and Grisham's actual legal status.

Grisham's authority to carry was derived from the Law Enforcement Officers Safety Act, 18 U.S.C. §§ 926B-926C, which authorizes a *qualified retired law enforcement officer* to carry a concealed firearm in any jurisdiction in the United States, including locations otherwise prohibited by state law. LEOSA is a federal statute that preempts state-law carrying restrictions and operates independently of Texas Commission on Law Enforcement licensure. A TCOLE database check of current Texas peace officer licensure is categorically irrelevant to LEOSA eligibility, which is determined by federal criteria tied to federal retirement status, not state licensure.

Tarrant County argues that Driskell acted in good faith by relying on TCOLE guidance. Appellee Br. 22. But objective reasonableness under the Fourth Amendment is not measured by an officer's subjective reliance on a query that, as a matter of law, could not answer the relevant question. An officer who disarms a person carrying on the authority of a federal statute, based on the results of a state licensing database that does not track federal retirement status, has not acted in an objectively reasonable manner regardless of his subjective belief. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (mistake must be reasonable). Additionally, at no time does Driskell or other Defendants accuse Grisham of presenting false,

fictitious, or fraudulent documents that identify him as both a qualified retired law enforcement officer and showing his annual TCOLE certification. They merely rely on a supposed phone call made to TCOLE and "confirmed" by some anonymous TCOLE representative.

The First Amended Complaint alleges that Grisham identified himself as a retired federal law enforcement officer qualifying under LEOSA, and that Driskell acknowledged his credentials but proceeded to disarm him anyway based on the TCOLE result. ROA.264, ¶¶ 28-31. Those allegations, accepted as true under Rule 12(b)(6), state a plausible Second Amendment and Fourth Amendment claim. The county's argument that Driskell was entitled to additional verification before crediting a LEOSA claim has force at the summary judgment stage, not at the pleading stage.

Furthermore, Tex. Gov't Code § 411.207(a), which authorizes a peace officer to disarm a license holder when the officer "reasonably believes it is necessary for the protection" of any individual, does not authorize the indefinite detention and disarmament of a person carrying under a federal statute for the purpose of verifying state licensure status. Grisham was handcuffed and held for forty minutes. ROA.272, ¶ 65. That is not an investigative stop. It is a de facto arrest requiring probable cause, which was absent. *Florida v. Royer*, 460 U.S. 491, 500 (1983).

Even setting the LEOSA issue aside, Grisham appropriately argued in his complaint that he was also an LTC holder. Orig. Compl. 7:27, 31. Even if Driskell were given qualified immunity for his "error" regarding the LEOSA, he is still not excused under Grisham's second exemption as an LTC holder. Tex. Penal Code § 46.15(a)(6) exempts LTC holders from the Tex. Pen. Code § 46.03(a)(14) ban on the carry of a handgun into an open meeting. Grisham was legal to carry armed on two independent bases.

### B. The January 28 Stop Was an Unconstitutional Predicate-Free Seizure.

Tarrant County defends the January 28 LTC demand by arguing that Tex. Gov't Code § 411.207(a) does not require predicate reasonable suspicion before an officer may demand to see a license to carry. Appellee Br. 23-24. The County is wrong on both the law and the constitutional implications.

Section 411.207(a) governs disarming a license holder; it does not authorize a suspicionless seizure of a person's physical movement for the purpose of demanding production of a license. The stop the First Amended Complaint describes is a physical blocking of Grisham's movement into the meeting by Sergeant George. ROA.274, ¶¶ 78-84. That is a seizure within the meaning of the Fourth Amendment regardless of whether it is characterized as an LTC check. *Terry v. Ohio*, 392 U.S. 1, 16 (1968). A seizure without articulable reasonable suspicion of criminal activity is unconstitutional. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Tarrant County argues that Grisham produced his LTC and was then admitted to the meeting, so no constitutional injury occurred. Appellee Br. 23-24. That argument proves too much. Under that reasoning, a police officer could constitutionally stop any person entering a courthouse and demand identification as a precondition of entry, as long as the person produces the ID and is ultimately admitted. No court has so held. The constitutional injury is the unlawful stop itself, not solely any downstream consequence.

The Second Amendment also independently protects the right to bear arms in public against unreasonable interference. The deputies' practice of stopping Grisham for LTC verification each time he appeared at a public meeting, without individualized suspicion, and without any written policy authorizing such checks, constitutes precisely the kind of official harassment that the Second Amendment's public-carry protection was designed to prevent. Additionally, no one else was subjected to such a search besides Grisham. That Grisham was ultimately admitted on January 28 does not moot the constitutional violation; it demonstrates the deputies' assumption that they possessed de facto authority to condition entry on their own ad hoc inspection regime.

### C. The Sufficiency of the Posted Signage Under Tex. Penal Code §§ 30.06 and 30.07 Is a Factual Question Not Resolvable at the Pleading Stage.

Tarrant County's brief defends the district court's conclusion that the posted signage lawfully prohibited LTC holders from carrying. Appellee Br. 22-23. That conclusion cannot stand at the 12(b)(6) stage.

Texas Penal Code §§ 30.06 and 30.07 impose exacting requirements on signs that purport to prohibit license holders from carrying. The statutes specify mandatory language, minimum letter height, color contrast requirements, and the requirement that the notice appear in both English and Spanish. These are not mere formalities. The Legislature imposed them to ensure that citizens receive legally adequate notice before criminal liability can attach.

The First Amended Complaint alleged that the posted signage was insufficient to satisfy these statutory requirements. The district court characterized that allegation as conclusory. But whether specific posted signs actually comply with specific statutory specifications is a factual question, not a legal conclusion. It requires examination of the signs themselves, including their dimensions, language, color contrast, and bilingual compliance. That factual inquiry cannot be resolved against a plaintiff on a Rule 12(b)(6) motion. At the pleading stage, Grisham was entitled to have the allegation accepted as true and to develop the factual record through discovery. The court's resolution of that contested factual question against him violated the Twombly/Iqbal standard and requires reversal.

Tarrant County also fails to provide any analysis or explanation for why they were prohibiting an LTC holder from carrying into the meeting. As explained above, Texas law specifically prohibits the county from regulating carrying into an open meeting by LTC holders. The signage is irrelevant as to them. Grisham is one of them.

**D. Bruen Required Historical Analysis That the District Court Never Conducted.**

Under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the government may regulate the right to carry only consistent with the Nation's historical tradition of firearm regulation. The district court applied the general *Bruen* "sensitive places" framework without conducting the specific historical analysis *Bruen* requires. That was legal error.

Tarrant County's brief does not attempt to supply the missing historical analysis. It simply asserts that government buildings are sensitive places. But *Bruen* was explicit: "expanding the category of sensitive places simply to all places of public congregation that are not isolated from law enforcement defines the category of sensitive places far too broadly." 597 U.S. at 31. A county commissioner's public meeting room may or may not fall within the historical core of sensitive-place prohibitions that *Bruen* identified, namely legislative assemblies, polling places, and courthouses. That question requires historical analysis, not assumption.

Furthermore, Texas law forecloses the County's position independently. Tex. Local Gov't Code § 236.002(b) expressly strips counties of the power to adopt or enforce policies restricting firearms in a manner inconsistent with state law, and declares any such policy void. A void policy cannot supply the historical or legal pedigree that *Bruen* requires. The sensitive-places doctrine permits legislatures to legislate; it does not authorize officers to enforce their own ad hoc policies in place of legislation. Where Texas's Legislature has affirmatively recognized LTC holders' carry rights, no county policy can override that legislative judgment. The Texas Legislature has specifically identified open meetings as NOT being sensitive places where guns are to be banned. The *Bruen* analysis only applies to sensitive places the State of Texas has identified to be such. The district court never addressed this argument, and the County's brief does not cure that omission.

## III. GRISHAM ADEQUATELY PLEADED MONELL LIABILITY.

### A. *The Pattern Allegations Are Sufficient at the Pleading Stage.*

Tarrant County argues that Grisham's *Monell* allegations are conclusory and lack the similarity and specificity required by *Verastique v. City of Dallas*, 106 F.4th 427 (5th Cir. 2024). Appellee Br. 25-27. That reliance is misplaced for two reasons.

First, *Verastique* addressed nineteen alleged prior incidents in a use-of-force context, all of which the Fifth Circuit found to lack similarity and specificity to the plaintiff's particular injury. 106 F.4th at 433. The *Monell* policy Grisham alleges is

not a pattern of individual officer misconduct, but rather two identified written or unwritten policies: (1) the Rules of Decorum authorizing removal for profanity in public comment, and (2) a de facto county practice of treating open carry advocates as presumptive violators requiring heightened scrutiny at public meetings. It also identifies as Defendant O'Hare as the final policy maker, something that allows Grisham to overcome *Monell* claims. The written-policy avenue to *Monell* liability requires no pattern showing at all. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

Second, Grisham alleged that Tarrant County deputies have on multiple occasions detained, arrested, or charged First and Second Amendment activists for exercising their rights, and that such charges are routinely dismissed. ROA.294-295, ¶¶ 200-204. That allegation is sufficient at the 12(b)(6) stage to put Tarrant County on notice of the de facto policy claim. *Monell*, 436 U.S. at 690-91. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), does not require a plaintiff to name every prior incident at the pleading stage; it requires only that the factual allegations, accepted as true, make the claim plausible. Grisham's own two encounters, occurring two weeks apart, with the same county actors, and resulting in the same pattern of temporary detention and release without charges, are themselves facts supporting an inference of de facto policy.

Tarrant County has never denied the existence of a written Rules of Decorum. It concedes O'Hare enforced whatever rule existed when he ordered Grisham removed. Appellee Br. 9. The County's complaint is that Grisham did not quote the specific rule. At 12(b)(6), a plaintiff is not required to possess or plead the specific text of a governmental policy. That information is within the County's exclusive control and is discoverable. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994).

This Court should also note that the 1871 Civil Rights Act's original text, which Congress enacted as the precursor to 42 U.S.C. § 1983, included the phrase "notwithstanding any such law, ordinance, regulation, custom, or usage of the State to the contrary" between "shall" and "be liable." That language was omitted without explanation or substantive debate in the 1874 codification. The absence of that language formed the predicate for *Pierson v. Ray*'s assertion that Congress did not abrogate the common-law immunity background. But if Congress expressly displaced it in 1871, then the entire premise of modern qualified immunity doctrine rests on a codification error, not legislative intent. *See Rogers v. Jarrett*, 63 F.4th 971, 974-75 (5th Cir. 2023) (Willett, J., concurring); Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev. 201 (2023). Grisham preserves this argument for en banc or Supreme Court review.

## B.  O'Hare Is a Final Policymaker Over the Rules of Decorum.

Tarrant County argues that the Commissioners Court as a whole, not O'Hare individually, is the final policymaker over the Rules of Decorum. Appellee Br. 27-31. That argument conflates the adoption of general decorum rules by the full court with O'Hare's exclusive and unreviewable authority as presiding officer to enforce those rules in real time during a meeting.

The relevant policymaking authority for *Monell* purposes is the authority over the specific governmental function at issue. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). The function at issue is the real-time enforcement of decorum rules during a Commissioners Court meeting. That function is assigned by statute exclusively to the presiding officer. Tex. Local Gov't Code § 81.001(b) (county judge presides over commissioners court). No other Commissioners Court member has authority to countermand the presiding officer's ruling on a decorum matter during a live meeting.

The Tarrant County Commissioners Court as a body can adopt, amend, or repeal the written decorum rules. But it cannot, while in session, overrule O'Hare's decision to remove a speaker in real time. That decision was O'Hare's alone, was final and unreviewable in the moment, and was taken in his capacity as the statutory authority over meeting conduct. Under *Pembaur*, a single decision by an official possessing final authority over a particular governmental function constitutes municipal policy. 475 U.S. at 480-81.

Tarrant County's reliance on *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980), and its progeny for the proposition that a county judge is a final policymaker only in areas specifically delegated by statute, actually supports Grisham's position. *Id.* at 404. The presiding function over Commissioners Court meetings, including enforcement of decorum, is specifically delegated to the county judge by Tex. Local Gov't Code § 81.001(b). Grisham has identified both the relevant statute and the relevant governmental function. That is the analysis *Familias Unidas* requires.

## IV.  THE DISTRICT COURT'S *VALENCIANO* FOOTNOTE WAS REVERSIBLE ERROR.

Tarrant County defends the district court's footnote 6 as "judicial dictum" and alternatively characterizes it as the court's observation about Grisham's "well-deserved reputation." Appellee Br. 31-34. Neither characterization saves the footnote from being reversible error.

The district court cited *Grisham v. Valenciano*, 93 F.4th 903 (5th Cir. 2024) in the context of noting that Grisham had failed to disclose it under Local Civil Rule 83.8(e) and Texas Disciplinary Rule 3.03(a)(4). ROA.549, n.6. Those are candor-to-the-tribunal rules. Invoking them against a litigant on a 12(b)(6) motion, with no briefing and no opportunity to respond, and using a prior case in which Grisham was the prevailing plaintiff on some claims as evidence that he "cannot deny culpability

for breaching the peace," is not judicial dictum. It is an adverse credibility determination made without evidence, in a pleading-stage proceeding, about a party who has admitted nothing.

The County's brief goes further, explicitly arguing that Grisham "orchestrates" confrontations to generate social media content and that his Second Amendment advocacy is a pattern of non-"friendly" conduct requiring police intervention. Appellee Br. 33-34. That argument is constitutionally impermissible. The First and Second Amendments protect the right to engage in expressive advocacy, including organized open carry demonstrations. The fact that Grisham's advocacy has resulted in police encounters does not establish that he caused those encounters through wrongful conduct. The fact that he has never been convicted based on those encounters is also instructive that Grisham obeys the law, even when the law enforcers don't like it. Many of those encounters are the subject of successful civil rights litigation. Using his protected advocacy as a basis for discounting his claims in this case is precisely the kind of viewpoint-based reasoning the First Amendment prohibits.

The district court's reference to *Valenciano* also injected an irrelevant and unpled factual matter into a 12(b)(6) ruling. At minimum, the footnote created the appearance that the district court's view of the merits was shaped by its view of Grisham's character, not by the allegations of the First Amended Complaint. That

requires reversal and reassignment on remand, or at minimum a clear instruction that the *Valenciano* history plays no role in the analysis of the claims at issue here.

## V. SECTION 1985(3) CLAIMS ARE NOT BARRED BY THE INTRACORPORATE CONSPIRACY DOCTRINE.

Tarrant County argues that the intracorporate conspiracy doctrine bars Grisham's section 1985(3) claim because all individual defendants are agents of Tarrant County and a corporation cannot conspire with itself. Appellee Br. 34-35. That argument applies the doctrine too broadly in the constitutional rights context.

The Fifth Circuit recognizes an exception to the intracorporate doctrine when individual employees act pursuant to personal motives rather than the entity's interests. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). The First Amended Complaint alleges that O'Hare acted to protect his own political interests and to silence criticism of his conduct and the conduct of his appointees. ROA.278-280. A county judge who retaliates against a critic of his own administration is acting, at least in part, from a personal motive to suppress opposition. That falls within the *Hilliard* exception.

The coordinated nature of the conduct across two separate meetings independently supports a plausible inference of agreement. The same core group of deputies was present at both meetings. On January 28, George positioned himself in front of the meeting room door and Driskell demanded the LTC immediately upon

Grisham's arrival, before any disruption had occurred, suggesting pre-arranged coordination. O'Hare's instruction to the same deputies who confronted Grisham on January 14 to remove him again on January 28 demonstrates a sequence of concerted acts by multiple individuals directed at the same constitutional rights. These allegations, accepted as true under Rule 12(b)(6), plausibly describe coordinated action sufficient to support a section 1985(3) claim.

Moreover, the intracorporate doctrine has been questioned in the context of section 1985(3) constitutional conspiracy claims, where the purpose of the statute is precisely to address coordinated governmental action to deprive citizens of constitutional rights. Applying the doctrine mechanically in that context immunizes exactly the behavior the statute targets. This Court should apply the exception and allow the section 1985(3) claim to proceed.

## VI. LEAVE TO AMEND SHOULD BE GRANTED.

Tarrant County argues that further amendment would be futile because Grisham already pleaded his best case. Appellee Br. 36-37. That argument ignores the procedural posture and the specific issues the court identified.

If this Court agrees with Tarrant County that Grisham's *Monell* pattern allegations lack sufficient specificity, the remedy is not dismissal with prejudice on a first amended complaint. The Fifth Circuit's policy strongly favors allowing plaintiffs at least one opportunity to amend to cure pleading deficiencies identified

in a dismissal order. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 329 (5th Cir. 2002). The district court's dismissal without prejudice and without granting leave to amend effectively operates as a final judgment on claims that Grisham has not had a full opportunity to develop through discovery.

A proposed second amended complaint would identify by name and date the specific prior incidents of alleged First and Second Amendment retaliation by Tarrant County officials that form the basis of the de facto policy claim, add allegations specifically identifying the text of the Rules of Decorum that O'Hare enforced, and elaborate the LEOSA authority basis for the January 14 carry. None of those amendments would be futile. Fed. R. Civ. P. 15(a).

The excessive force claim against Sergeant Jauss also warrants leave to amend. The First Amended Complaint alleges that Jauss grabbed Grisham's arm with sufficient force to leave bruises and placed his arm behind his back. The district court's Footnote 4 acknowledged these allegations but treated references to excessive force as conclusory because Grisham had not formally articulated a separate Fourth Amendment excessive force claim. The proper remedy for an inadequately articulated but factually supported claim is leave to amend, not dismissal with prejudice. The underlying facts describe physical restraint causing documented injury. A second amended complaint would formally state the excessive force claim and invoke the proper analysis under *Graham v. Connor*, 490 U.S. 386

(1989), and *Tennessee v. Garner*, 471 U.S. 1 (1985). That amendment is precisely the kind of curative pleading that Rule 15(a)'s liberal amendment policy exists to permit.

## CONCLUSION

For the foregoing reasons, Appellant C.J. Grisham respectfully requests that this Court reverse the district court's dismissal of all claims against Tarrant County and the individual defendants, and remand for further proceedings, including the opportunity to file a Second Amended Complaint addressing any pleading deficiencies the Court identifies.

Respectfully submitted,

*/s/ C.J. Grisham*
C.J. GRISHAM
State Bar No. 24124533
GFA LAW, PLLC
3809 S. General Bruce Dr., Suite 103-101
Temple, Texas 76502
Ph: 254-405-1726
cj@gfalaw.us

*Counsel for Plaintiff-Appellant C.J. Grisham*

# CERTIFICATE OF SERVICE

On _____, 2026, I served a copy of the above document on all counsel of record via ECF.


*/s/ C.J. Grisham*
C.J. Grisham

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains no more than 7,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as computed by the word-processing system used to prepare this brief.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

*/s/ C.J. Grisham*
C.J. Grisham
Dated: _____, 2026